EVANS LAW FIRM, INC.
Ingrid M. Evans (CA St. Bar No. 179094)
Elliot Wong (CA St. Bar No. 285540)
3053 Fillmore St. #236
San Francisco, CA 94123
Ingrid@evanslaw.com
PH: 415-441-8669/888-503-8267

FRANCIS & MAILMAN, P.C.
James A. Francis (*Pro Hac Vice forthcoming*)
John Soumilas (*Pro Hac Vice forthcoming*)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Telephone:      (215) 735-8600
Facsimile:      (215) 940-8000
Email  jfrancis@consumerlawfirm.com
            jsoumilas@consumerlawfirm.com
Attorneys for Plaintiff and Putative Class
AMIT PATEL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CV 14 0522

| | |
|---|---|
| AMIT PATEL, on behalf of himself and all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>TRANS UNION, LLC, in its own name and t/a TRANS UNION RENTAL SCREENING SOLUTIONS, INC. and TRANSUNION BACKGROUND DATA SOLUTIONS,<br>and<br>TRANS UNION RENTAL SCREENING SOLUTIONS, INC.  in its own name and t/a TRANSUNION BACKGROUND DATA SOLUTIONS,<br><br>Defendants. | Case No. 14-<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

This is a consumer class action based upon the Defendants' widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA"), and the California Consumer Credit Reporting Agencies Act ("CCRAA"), CAL. CIV. CODE §§ 1785.1 *et seq*.

1. Defendants operate as a single consumer reporting agency ("CRA") under the FCRA, as well as a consumer credit reporting agency ("CCRA") under the CCRAA. TransUnion, LLC has structured itself so as to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history (employment and landlord-tenant purposed) consumer reports in a second entity. However, it freely transfers data between units and operates without any impediments of corporate structure. In almost every regard, the above Defendants operate as if they are one and the same, a single "consumer reporting agency."

2. The rights of consumers to inspect and correct consumer information sold about them are at the heart of the FCRA and the California state law. Defendants deprive consumers of these rights by willfully failing to comply with the laws, refusing to adopt procedures to assure maximum possible accuracy and refusing to provide consumers with all information they sell about them to third parties. As a result, Defendants deprive consumers of rights afforded to them by the FCRA and the California statute to obtain a copy of and review the information that the Defendants sell about them, to dispute and to have corrected any inaccurate or incomplete information that the Defendants are reporting, and to require that the Defendants maintain reasonable procedures to assure the maximum possible accuracy of that information before they sell it to any third party in a consumer report.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331 and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.

4. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.     Plaintiff Amit Patel is an adult individual who resides in Monterey, California, and a "consumer" as defined by the FCRA.

6.     Defendants are TransUnion LLC, in its own name and trading as TransUnion Rental Screening Solutions, Inc., and TransUnion Background Data Solutions, as well as TransUnion Rental Screening Solutions, Inc. in its own name and trading as TransUnion Background Data Solutions (together, "Defendants" or "TransUnion").

7.     TransUnion claims that it can offer paying customers "[a] database of more than 200 million files, which profile nearly every market-active consumer in the United States." http://www.transunion.com/corporate/business/solutionsbyneed.page?.

8.     Its best known product is conventional credit reporting. "This database contains information provided by more than 85,000 credit-granting institutions and is updated, audited and monitored on a regular basis." http://www.transunion.com/corporate/business/solutionsbyneed/credit-reporting.page?

9.     TransUnion also maintains marketing websites that it uses to promote its services in providing criminal record background information on tenants and other consumers.

## INDEPENDENT RENTAL OWNERS

10.     For its tenant screening business, TransUnion markets its services as follows:

Whether you have a couple hundred units or just one, you now have access to the same tenant screening used by the largest property management companies. It's all online in a solution designed to fit your needs.

TransUnion SmartMove gives you all the tenant screening tools you need with none of the hassle including long approval processes or minimum use requirements.

- Credit report and criminal history
- Leasing recommendation
- Suggested deposit amount
- Joint recommendation for multiple tenants and co-signers
- No paperwork or long approval process
- Use it only when you need it and pay as you go
- Landlord decides who pays for the service

1    *See* http://www.transunion.com/corporate/business/propertymgt/independent-rental-

2    owners.page

3        11.    For its data reselling business, TransUnion describes its business as follows:

4        **Background Data Resellers**

5

6        With one of the world's largest privately maintained criminal databases,

7        TransUnion Background Data Solutions helps you offer higher-quality data to

8        expand your profit margin.  Access more than 1 billion criminal and eviction

9        records updated weekly from more than 400 data sets across the country.

10    *See*http://www.transunion.com/corporate/business/solutionsbyneed/data-resellers.page.

11        12.    TransUnion represents that it can:

12

13        Access instant criminal history data across 46 states, plus non-instant data from

14        other states within 48 hours.  That includes felonies and misdemeanors from local

15        and state jurisdictions, and instant results from the crucial federal databases.

     *Id.*

16

17        13.    TransUnion explains on its website that its customers will be able to obtain

18    "criminal and eviction histories from one trusted source":

19        The quality of your data solutions may be what differentiates you from the

20        competition.  Sure, quantity is important.  But the real key to providing valuable

21        data is how much your customers can actually do with the information you

22        provide.

     *Id.*

23        14.    TransUnion encourages its customers to:

24

25        Stand out among other data providers with TransUnion Background Data

     Solutions:

26

27

1   • Advanced delivery methods
    • User-friendly reporting format
2   • Fewer false positives
    • Consumer-friendly file management
3
    Offer your customers more:
4
    With background data from TransUnion, you can offer access to one of the
5   industry's most comprehensive criminal and eviction databases. You'll be able to
6   return your customers' data requests more efficiently with fewer false positives,
7   and provide a custom report that combines all rap sheets into a single format and
8   filters any of your customers' variables.

9   *Id.*

10      15.     TransUnion also utilizes audio/video presentations to promote its abilities to

11  provide immediate information to its customers from its extensive criminal and eviction

12  databases, and it cross-uses its credit and criminal record databases. *See*

13  http://www.youtube.com/watch?v=yXZZI9jO27Q; and

14  http://www.youtube.com/watch?v=HR2oAl8N5XY&list=UU2KeLg4EXenj_9JcUAxKs_w&ind

15  ex=2&feature=plpp_video.

16      16.     By their own repeated admissions, Defendants are regularly engaged in the

17  business of assembling, evaluating, and disbursing information concerning consumers for the

18  purpose of furnishing consumer reports to third parties.

19      17.     The data and reports TransUnion sells are used and expected to be used for

20  multiple purposes governed by 15 U.S.C. § 1681b and the public records data included in each

21  report bears on the credit history, credit worthiness, reputation, personal characteristics and mode

22  of living of each respective consumer.

23      18.     By their own admission, each of the TransUnion entities is integrated as a single

24  national consumer reporting agency, with all databases marketed and made available to each of

25  TransUnion's customers regardless of structure or category of content. For example, a tenant

26  screening user can obtain a single report that contains both credit reporting data and criminal

27  history data. Employer customers can receive all of the data in the public records database as

Class Action Complaint
5

1  well as the conventional credit history data.

2      19.      Accordingly, Defendants operate collectively and jointly as a national
3  "consumer reporting agency," as defined in section 1681a(f) of the FCRA, a "consumer credit
4  reporting agency" under section 1785.3(d) of the CCRAA and an "investigative consumer
5  reporting agency" under the ICRAA.

6      20.      Defendants operate as one of the "big three" credit reporting agencies (singular
7  "CRA") in the U.S.

8      21.      Defendants sell consumer reports (commonly called "credit reports") about
9  millions of consumers annually.

10     22.      Defendants are regulated by the FCRA, and its state analogue the CCRAA.

11     23.      The FCRA is intended "to protect consumers from the transmission of inaccurate
12  information about them, and to establish credit reporting practices that utilize accurate, relevant,
13  and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*,
14  617 F.3d 688, 706 (3d Cir. 2010).

15     24.      In furtherance of that goal, the FCRA mandates that each CRA provide
16  consumers with access to the information sold about them to third parties and also provide
17  consumers with an opportunity to review and dispute any inaccuracies in their credit files. *See*
18  15 U.S.C. §§ 1681g(a) and 1681i(a).

19     25.      Specifically, each CRA is required by the FCRA to provide consumers with
20  copies of their consumer files without charge every twelve months, after a credit denial and in
21  other limited circumstances. *See* 15 U.S.C. § 1681g(a).

22     26.      The term "file," when used in connection with information on any consumer,
23  means "*all*" of the information on that consumer recorded and retained by a consumer reporting
24  agency regardless of how the information is stored." *See* 15 U.S.C. § 1681a(g) (emphasis
25  added).

26     27.      "Congress clearly intended the protections of the FCRA to apply to all
27  information furnished or that might be furnished in a consumer report" and an FCRA " 'file'

1   denotes all information on the consumer that is recorded and retained by a consumer reporting
2   agency that might be furnished, or has been furnished, in a consumer report on that consumer."
3   *Cortez*, 617 F.3d at 711-12 (*citing Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir.
4   2007)).

5      28.    After obtaining and reviewing a copy of their files, consumers have the right to
6   dispute any inaccurate information in their credit files, and to have errors corrected by the CRA,
7   usually within 30 days of their disputes. *See* 15 U.S.C. § 1681i(a).

8      29.    In a seminal decision against these very Defendants, the Third Circuit held that
9   criminal terrorist alerts are part of a consumer's Trans Union credit file and must be included in a
10  file disclosure provided to the consumer.  "We hold that information relating to the [terrorist]
11  alert is part of the consumer's 'file' as defined in the FCRA."  *Cortez*, 617 F.3d at 712.

12     30.    In *Cortez*, these same Defendants had contended that they did not need to
13  reinvestigate or correct erroneous terrorist alerts that they placed on consumer reports allegedly
14  because such alerts were not part of the consumer's file.  *Id.* at 713.  The Third Circuit rejected
15  these arguments by Defendant.  *Id.*

16     31.    The Third Circuit in *Cortez* found Trans Union liable for failing to disclose
17  government terrorist alerts in consumer files and for failing to reinvestigate and correct a terrorist
18  alert erroneously attributed by Trans Union to the wrong consumer.  *Id.* at 712-13.

19     32.    Nonetheless, despite this clear Third Circuit precedent directed to the same
20  Defendant, Trans Union continues to compile and sell reports about consumers that include
21  terrorist alerts, without including the same alerts in the consumer file disclosures Defendant
22  provides to those same consumers.

23     33.    In addition, even though Defendants routinely report information about criminal
24  court records to landlords, employers and lenders, Defendants will not disclose these records to
25  consumers who request their files.

26

27

1      34.    Defendants further misinform consumers about their rights to dispute inaccurate
2  terrorist alert information and have it corrected pursuant to the FCRA, and in fact fail to
3  reinvestigate and correct such errors.

4      35.    At all times relevant to this action, Defendants, as a matter of their normal course
5  and practice, and despite the Third Circuit's decision in *Cortez*, fail to include the terrorist and
6  criminal records that they report about consumers to third parties in the disclosures they send to
7  consumers, which consumers, as of right, are entitled to request and obtain from the Defendants.

8      36.    Also as a matter of common practice, Defendants do not advise consumers that
9  they may dispute inaccurate terrorist and criminal records, and thus does not reinvestigate such
10 disputes or correct such errors.

11     37.    Defendants also fail to maintain reasonable procedures to assure the maximum
12 possible accuracy of the terrorist alert information they sell about consumers in the first place.
13 *See* 15 U.S.C. § 1681e(b).

14     38.    One of the most well-known and prevalent inaccuracies that occurs in Trans
15 Union's consumer files is a "mixed file."

16     39.    A mixed file is a consumer report in which some or all of the information in the
17 report pertains to a person other than the person who is the subject of the report.

18     40.    Defendants have known since entering into a Consent Order agreeing to correct
19 the mixed file problem on October 26, 1992, in *The State of Alabama, et al. v. Trans Union*
20 *Corp.*, 92-C-7101 (N.D. Ill.), that they have a widespread problem of reporting one consumer's
21 information in the credit report of another.

22     41.    In the above-referenced litigation brought by the Attorney Generals of seventeen
23 states, Defendants agreed to take affirmative action to remedy the "mixed file" problem,
24 specifically by using "full identifying information" to properly identify each individual
25 consumer.

26

27

1    42.    Indeed, the main cause of the mixed file problem is Defendants' failure to use full

2    identifying information to match credit records on its database to the information of consumers

3    actually applying for credit, insurance or employment.

4    43.    In *The State of Alabama, et al. v. Trans Union Corp.*, 92-C-7101 (N.D. Ill.),

5    Defendants agreed to collect and use "full last name and first name; middle initial; full street

6    address; zip code; year of birth; any generational designation; and social security number" in

7    preparing any report about any given consumer. *Id.* at ¶ F(8) (emphasis added).

8    44.    Despite those representations by Defendants, to date more than a hundred

9    thousand possible mixed files are known to occur every year in Defendants' credit reporting

10   databases.

11   45.    Despite those representations by Defendants, to date Defendants' common

12   practice is to use only partial matching, and not full identifying information, in preparing

13   consumer credit reports.

14   46.    Indeed, Defendants' practice is to prepare and sell a consumer credit report using

15   only the name and address of the consumer purportedly applying for credit.

16   47.    Defendants' practice is not to require a match to "full last name and first name;

17   middle initial; full street address; zip code; year of birth; any generational designation; and social

18   security number" before preparing a report that it will attribute to a particular consumer and sell

19   about that same particular consumer.

20   48.    Terrorist alert information, as part of the consumer's file and report, is also

21   subject to the maximum possible accuracy standard, as the Third Circuit has specifically advised

22   Trans Union: "[Terrorist Alert] information included in a consumer report and sold about a

23   consumer falls within the purview of the FCRA, and the 'maximum possible accuracy standard.'

24   Trans Union remains responsible for the accuracy in its reports under the FCRA and it cannot

25   escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that

26   credit reporting agencies exercise care when deciding to associate information with a given

27

1  consumer, and the record clearly supports the jury's determination that Trans Union did not
2  exercise sufficient care here." *Cortez*, 617 F.3d at 710.

3      49.    In *Cortez*, Defendants had mixed the plaintiff in the case with the OFAC terrorist
4  records of a person with a similar, but not identical name, who was some twenty years younger
5  than that plaintiff.

6      50.    Despite the abundant notice they have   regarding the unlawfulness of their
7  practices, Defendants continue to use a "name only" match in determining whether a given
8  consumer will be reported on his/her Trans Union consumer credit report as an alleged criminal
9  and/or terrorist.

10     51.    Moreover, not even the name-only match needs to be an exact match between the
11 actual name of the alleged criminal on a terrorist list and the actual name of the innocent
12 consumer applying for credit.

13     52.    Thus, Defendants will place a terrorist alert on a consumer's report based solely
14 on a partial name match.

15     53.    Defendants continue to employ policies and procedures which frequently allow
16 the information belonging to one consumer to appear in the credit file of another.

17     54.    Defendants do so because Defendants always seek to have some credit
18 information available for sale to its customers (accurate or not), in order to maximize its profits.
19 Defendants thus intentionally employ procedures that maximize the likelihood of match between
20 any credit inquiry and some data in its database about one or more consumers. Defendants thus
21 intentionally compromise accuracy in their efforts to increase sales.

22     55.    Defendants' reporting of terrorist alert information is not accidental, nor a result
23 of simply negligence, but instead a result of deliberately designed policies and procedures.

24                          **FACTUAL ALLEGATIONS**

25     56.    In July 2013, Plaintiff Amit Patel applied through CBC Realty, Inc. ("CBC") to
26 rent an apartment in Union City, California.

27

1    57.    At all relevant times, CBC was a party to a Service Agreement with Defendant
2  TransUnion Rental Screening Solutions, Inc. pursuant to which CBC paid a fee to Defendants to
3  use their *SmartMove* product to evaluate applicants for residential leasing.

4    58.    Under the SmartMove product, Defendants provide subscribers such as CBC with
5  a customized credit recommendation and a national background search concerning the tenant
6  applicant.

7    59.    Defendants also provide subscribers such as CBC with a service by which
8  Defendants make a recommendation on an applicant based on criteria provided by the subscriber,
9  and provide the subscriber with a letter containing information as to why the applicant was or
10 was not approved for an apartment.

11   60.    On or about July 16, 2013, CBC applied through SmartMove for information in
12 connection with Plaintiff's application for rental housing.

13   61.    Defendants sold the landlord a Trans Union consumer report purportedly about
14 Plaintiff on the same day for a fee.

15   62.    The report was grossly defamatory and inaccurate in many respects. It stated that
16 Plaintiff was a "Terrorist" from Charlotte, North Carolina. Plaintiff is not a terrorist and has
17 never been to North Carolina.

18   63.    The report falsely communicated that Plaintiff had 17 criminal records from New
19 Mexico and Rhode Island, when, in fact, none of those records belonged to him, and he has
20 never been to either state.

21   64.    The report also included reference to a December 8, 2008 misdemeanor offense of
22 the Plaintiff for driving with a high blood alcohol level. This offense had been vacated by the
23 Superior Court of California, County of Santa Clara, by Order dated July 24, 2012,
24 approximately one year before Defendants sold the report to the landlord that improperly
25 included this criminal record.

26   65.    Defendants failed to search for updated public record information on the vacated
27 offense. The report also failed to contain all information pertaining to the source of the public

1    records obtained, including the specific courts and the dates that the information was originally
2    reported or publicized.

3        66.    Pursuant to its automated programing and process, Defendants notified CBC and
4    Plaintiff that Plaintiff's application should be rejected.    Solely as a result of the derogatory
5    inaccurate information on Defendants' report, CBC denied Plaintiff's rental application.

6        67.    Defendants specifically instruct rental applicants that they are not entitled to a
7    copy of the report from the landlord.  A frequently asked question on the SmartMove website
8    states as follows:

9    **Can I get a copy of the credit report provided to the landlord?**

10           No. Only the landlord is allowed access to the TransUnion SmartMove credit
11           report. As an alternative, we suggest the renter go to
             www.annualcreditreport.com to get a copy of their TransUnion credit report.
12
13   *See* https://www.mysmartmove.com/SmartMove-FAQs/renter-faq.html#q13.

14       68.    Upon being notified that his application for an apartment was rejected, Plaintiff
15   called TransUnion and CBC to dispute TransUnion's erroneous reporting of criminal records not
16   belonging to Plaintiff, the labeling of him as a "Terrorist" and the illegal disclosure of a vacated
17   criminal offense.

18       69.    Plaintiff was at first falsely informed by a TransUnion representative that he did
19   not have the right to see the records.

20       70.    Plaintiff then requested a fax number in order to send his identifying information,
21   and he was told in response he would have to wait for a return call.

22       71.    Plaintiff was not told by TransUnion that he had the right to not only get the file
23   from which the negative reports were derived, but also that he was entitled to obtain a list of the
24   recipients to whom TransUnion provided the derogatory information.

25       72.    Plaintiff made a request to TransUnion for a copy of his complete consumer file.

26       73.    Plaintiff thereafter received a TransUnion file disclosure, dated July 22, 2013.

27

74.     The file disclosure did not include the criminal record information or the terrorist information that was included in the report provided to CBC concerning Plaintiff, and thus, was not a complete or legal file disclosure as required by the FCRA or the CCRAA.

75.     On July 25, 2013, an attorney for Mr. Patel, Michelle Noble McCain, Esquire, wrote a 6 page single-spaced letter to Defendants disputing all of the erroneous information that Defendants had been reporting about Plaintiff, and requesting the information that Defendants had reported. Notwithstanding the McCain correspondence, Defendants never provided the information contained in Plaintiff's file.

76.     As a result of Defendants' failure to provide Plaintiff with all of the information it maintains and/or sells about him, Plaintiff was misled concerning the information that Defendants were reporting about him to third parties and deprived of the opportunity to dispute and correct the inaccurate criminal records and terrorist label that Defendants inaccurately associated with him on the report sold to CBC.

77.     At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## **CLASS ACTION ALLEGATIONS**

78.     Plaintiff brings this action on behalf of the following Classes:

(a)     For Defendants' violation of section 1681g of the FCRA:

All persons residing in the United States of America who, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case, requested their consumer file from TransUnion at a time when TransUnion had reported to a third party and/or also maintained one or more "Terrorist" records attributable to the identifying segments for that consumer. Excluded from the class definition are any employees, officers, directors of TransUnion, any attorney appearing in this case, any consumer who has signed and delivered to TransUnion a general release of claims and any judge assigned to hear this action.

(b)     For Defendants' violation of section 1785.10 and 1785.15 of the CCRAA:

1
2
3
4
5

All persons residing in the State of California who, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case, requested their consumer file from TransUnion at a time that TransUnion had reported to a third party and/or also maintained one or more "Terrorist" records attributable to the identifying segments for that consumer.    Excluded from the class definition are any employees, officers, directors of TransUnion, any attorney appearing in this case, any consumer who has signed and delivered to TransUnion a general release of claims and any judge assigned to hear this action.

6
7

(c)    For Defendants' violations of section 1785.10 and 1785.15 of the CCRAA:

8
9
10
11
12
13

All persons residing in the State of California who, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case, requested their consumer file from TransUnion at a time that TransUnion had reported to a third party and/or also maintained one or more criminal history records attributable to the identifying segments for that consumer.    Excluded from the class definition are any employees, officers, directors of TransUnion, any attorney appearing in this case, any consumer who has signed and delivered to TransUnion a general release of claims and any judge assigned to hear this action.

14
15
16
17
18
19

(d)    For Defendants' violations of section 1681e(b) of the FCRA:

All natural persons residing in the United States who, within two (2) years prior to the filing of this Complaint, were the subjects of background reports in which expunged or vacated criminal records were reported by Defendants.  Excluded from the class definition are any employees, officers, directors of TransUnion, any attorney appearing in this case, any consumer who has signed and delivered to TransUnion a general release of claims and any judge assigned to hear this action.

20
21
22
23
24
25

(e)    For Defendants' violation of section 1785.14 of the CCRAA:

All natural persons residing in the State of California who, within two (2) years prior to the filing of this Complaint, were the subjects of background reports in which expunged or vacated criminal records were reported by Defendants. Excluded from the class definition are any employees, officers, directors of TransUnion, any attorney appearing in this case, any consumer who has signed and delivered to TransUnion a general release of claims and any judge assigned to hear this action.

26
27

(f)    For Defendants' violations of section 1785.18 of the CCRAA:

1

2

3

4

5

All persons residing in the State of California who, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case, had a consumer report sold about them by TransUnion which included a public record. Excluded from the class definition are any employees, officers, directors of TransUnion, any attorney appearing in this case, any consumer who has signed and delivered to TransUnion a general release of claims and any judge assigned to hear this action.

6

7

8

79.     The Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the Classes number in the thousands.

9

10

11

12

13

14

15

16

17

80.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether the Defendants willfully and/or negligently violated the FCRA and/or the CCRAA by failing to provide consumers with access to all information contained in their consumer files, by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' files with respect to vacated or expunged criminal records and by failing to include all information concerning the public records Defendants had reported about them, including the specific source of the public records being reported and the dates that the information was initially reported or publicized.

18

19

81.     Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

20

21

22

23

82.     Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel who are very experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

24

25

26

27

83.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with

1    respect to individual members which would as a practical matter be dispositive of the interests of

2    other members not parties to the adjudications or substantially impair or impede their ability to

3    protect their interests.

4    84.    Defendant has acted or refused to act on grounds generally applicable to the

5    Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief

6    with respect to the CCRAA Classes.

7    85.    Whether Defendant violated the FCRA and/or the CCRAA can be easily

8    determined by Defendant's policies and a ministerial inspection of Defendant's business records.

9    86.    A class action is a superior method for the fair and efficient adjudication of this

10   controversy.    Management of the Classes' claims is likely to present significantly fewer

11   difficulties than those presented in many individual claims. The identities of the Class members

12   may be derived from Defendant's records.

13                                        **CLAIMS**

14                **COUNT I – VIOLATION OF THE FCRA § 1681g (CLASS)**

15   87.    Plaintiff incorporates all paragraphs as though the same were set forth at length

16   herein.

17   88.    Pursuant to section 1681n of the FCRA, Defendants are liable for willfully failing

18   to provide consumers throughout the United States such as Plaintiff, upon request, with all

19   information in the consumer's file in violation of 15 U.S.C. § 1681g.

20   WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the

21   proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff

22   and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class

23   against Defendant for statutory and punitive damages for violation of 15 U.S.C. §1681g,

24   pursuant to 15 U.S.C. § 1681n; that the Court award costs and reasonable attorney's fees,

25   pursuant to 15 U.S.C. § 1681n; and that the Court grant such other and further relief as may be

26   just and proper.

27

1 **COUNT II – VIOLATION OF THE CCRAA §§ 1785.10, 1785.15 (CLASS)**

2    89.    Plaintiff incorporates all paragraphs as though the same were set forth at length
3 herein.

4    90.    The above-mentioned SmartMove report was a "consumer credit report" as that
5 term is defined by CAL. CIV. CODE § 1785.3(c).

6    91.    Pursuant to CAL. CIV. CODE § 1785.31, Defendants are liable for violating the
7 CCRAA by failing to provide California consumers, upon request, with a copy of their
8 disclosure containing all information on that consumer in violation of CAL. CIV. CODE §§
9 1785.10 and 1785.15 with respect to Plaintiff and the Class.

10    WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the
11 proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff
12 and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class
13 against Defendant for damages of $100 to $5,000 per Class member per violation under the
14 CCRAA; that the Court award injunctive relief under the CCRAA; that the Court award costs
15 and reasonable attorney's fees under the CCRAA; and such other and further relief as may be
16 necessary, just and proper.

17 **COUNT III – VIOLATION OF THE FCRA § 1681e(b)(Individual and Class)**

18    92.    Plaintiff incorporates all paragraphs as though the same were set forth at length
19 herein.

20    93.    Pursuant to sections 1681n and 1681o of the FCRA, Defendants are liable for
21 negligently and willfully failing to maintain reasonable procedures to assure maximum possible
22 accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b) to Plaintiff and the
23 Class by selling public records that had been expunged, sealed or otherwise were unreportable
24 by a court. In addition, Defendants are liable to Plaintiff individually under the FCRA for
25 allowing his credit file and report to be mixed with that of unrelated individuals.

26    WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the
27 proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff

1  and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class

2  against Defendant for statutory, actual and punitive damages for violation of 15 U.S.C.

3  §1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o; that the Court award costs and reasonable

4  attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and that the Court grant such other

5  and further relief as may be just and proper.

6

7  **COUNT IV – VIOLATION OF THE CCRAA § 1785.14(b)(Individual and Class)**

8      94.     Plaintiff incorporates all  paragraphs as though the same were set forth at length

9  herein.

10     95.     Pursuant to CAL. CIV. CODE § 1785.14(b), Defendant is liable for violating the

11  CCRAA by failing to follow reasonable procedures to assure "maximum possible accuracy" of

12  the reports it sold, in violation of CAL. CIV. CODE § 1785.14(b) with respect to Plaintiff and the

13  Class by selling public records that had been expunged, sealed or otherwise unreportable by a

14  court.   In addition, Defendants are liable to Plaintiff individually under the CCRAA for

15  allowing his credit file and report to be mixed with that of unrelated individuals.

16     WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the

17  proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff

18  and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class

19  against Defendant for damages of $100 to $5,000 per Class member per violation under the

20  CCRAA; that judgment be entered for Plaintiff and the Class against Defendant for actual

21  damages under the CCRAA; that judgment be entered for Plaintiff and the Class against

22  Defendant for actual damages under the CCRAA; that the Court award injunctive relief under the

23  CCRAA; that the Court award costs and reasonable attorney's fees under the CCRAA; and such

24  other and further relief as may be necessary, just and proper.

25  **COUNT IV – VIOLATION OF THE CCRAA § 1785.18**

26     96.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth

27  at length herein.

1    97.    Pursuant to CAL. CIV. CODE § 1785.18, Defendants are liable for violating the

2  CCRAA by reporting public records without including the specific sources of the information

3  reported as well as the date that such information was initially reported or publicized in

4  violation of CAL. CIV. CODE § 1785.18 with respect to Plaintiff and the Class.

5         WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the

6  proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff

7  and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class

8  against Defendant for damages of $100 to $5,000 per Class member per violation under the

9  CCRAA; that judgment be entered for Plaintiff and the Class against Defendant for actual

10  damages under the CCRAA; that judgment be entered for Plaintiff and the Class against

11  Defendant for actual damages under the CCRAA; that the Court award injunctive relief under the

12  CCRAA; that the Court award costs and reasonable attorney's fees under the CCRAA; and such

13  other and further relief as may be necessary, just and proper.

14                          **JURY TRIAL DEMAND**

15    98.    Plaintiff demands trial by jury on all issues.

16

17                          **PRAYER FOR RELIEF**

18         WHEREFORE, Plaintiff, on behalf of herself, the Class, and/or the general public, prays

19  for judgment against Defendant as follows:

20    • An order certifying this action as a Plaintiff class action under Rule 23 of the Federal
21      Rules of Civil Procedure as set forth herein;

22    • For a temporary, preliminary and permanent order for injunctive relief enjoining
        Defendant from pursuing the practices complained of above;
23

24    • For a temporary, preliminary and permanent order for injunctive relief requiring
        Defendant to undertake an immediate public information campaign to inform members of
25      the general public as to their prior practices and notifying the members of the proposed
        Class of the potential for restitutionary relief;
26

27

---

1   • For an order requiring disgorgement and restitution of Defendant's ill-gotten gains and to
2       pay restitution to Plaintiff, the Class, and the general public all funds acquired by means
        of any practice declared by this Court to be unlawful, deceptive or unfair;

3   • For compensatory, special and general damages according to proof and as the Court
4       deems just and proper;

5   • Assuming certification of the Class pursuant to Rule 23 of the Federal Rules of Civil
        Procedure, for distribution of any moneys recovered on behalf of the general public, or
6       the Class, via fluid recovery or cy pres recovery where necessary to prevent Defendant
7       from retaining any of the profits or benefits of their wrongful conduct;

8   • For punitive and exemplary damages; and as to counts for which they are available under
9       the applicable law in such amount as the Court deems just and proper;

10  • For double and/or treble damages and/or penalties; and as to counts for which they are
        available under the applicable law in such amount as the Court deems just and proper;
11
    • Imposition of a constructive trust, an Order granting recessionary and injunctive relief
12      and/or such other equitable relief, including restitution, disgorgement of ill-gotten profits
13      and an order requiring Defendants to provide corrective notice to Class Members as set
        forth herein and as the Court deems just and proper;
14
15  • An appropriate claims resolution facility to administer the relief in this case;

16  • For reasonable attorneys' fees and costs of investigation and litigation under, among the
        statutes set forth herein, or the common fund doctrine;
17

18

19  ///

20

21

22  ///

23

24

25
    ///
26

27

---
Class Action Complaint
20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

- For costs of lawsuit, pre-judgment, and post-judgment interest; and
- Such other and further relief as the Court may deem necessary or appropriate.

Respectfully submitted,

EVANS LAW FIRM, INC.

Ingrid M. Evans
Elliot Wong
3053 Fillmore St. #236
San Francisco, CA 94123
Ingrid@evanslaw.com
PH: 415-441-8669/888-503-8267


**FRANCIS & MAILMAN, P.C.**
James A. Francis (*Pro Hac Vice forthcoming*)
John Soumilas (*Pro Hac Vice forthcoming*)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Telephone:      (215) 735-8600
Facsimile:      (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Attorneys for Plaintiff and the Putative Class