EVANS LAW FIRM, INC.
Ingrid M. Evans (CA State Bar No. 179094)
3053 Fillmore Street, #236
San Francisco, CA 94123
Ingrid@evanslaw.com
Tel: (415)-441-8669
Tel: (888) 503-8267

FRANCIS & MAILMAN, P.C.
James A. Francis (*Pro Hac Vice*)
John Soumilas (*Pro Hac Vice*)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis @consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Attorneys for Plaintiff
AMIT PATEL and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMIT PATEL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRANS UNION, LLC in its own name and t/a TRANS UNION RENTAL SCREENING SOLUTIONS, INC. and TRANSUNION BACKGROUND DATA SOLUTIONS, and TRANS UNION RENTAL SCREENING SOLUTIONS, INC. in its own name and t/a TRANSUNION BACKGROUND DATA SOLUTIONS,<br><br>Defendants. | Case No. 3:14-cv-00522-LB<br><br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: May 7, 2015<br>Time: 9:30 a.m.<br>Place: Courtroom C |

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**To defendant and its counsel of record**:

Please take notice that on May 7, 2015, at 9:30 a.m., or as soon thereafter as the Court may order, in Courtroom C, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, the Hon. Laurel Beeler presiding, plaintiff Amit Patel will move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**Meet and Confer Certification**:

Pursuant to the Court's standing order, the parties met and conferred before Plaintiff filed this motion, and this motion will be contested.

This motion is based on this notice of motion and motion, the accompanying memorandum, and the declaration of James A. Francis, Esq. and the interrogatory responses, deposition excerpts and exhibits attached thereto, the papers and pleadings on file and such other papers as may be submitted prior to or at the hearing on this motion or argument at the hearing.

Dated:    February 13, 2015

Evans Law Firm, Inc.
and
Francis & Mailman, P.C.


By: */s/James A. Francis*
JAMES A. FRANCIS
Attorney for plaintiffs

Case No. 3:14-cv-00522-LB

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND STATEMENT OF FACTS ........................................1

    A.    Nature Of The Case And Legal Backdrop ..............................................1

    B.    Trans Union And TURSS Operate As A Single Consumer Reporting Agency ......3

    C.    Factual Background ..............................................................................7

        1.    Trans Union's Sale of False Terrorist Records
on SmartMove Reports ..............................................................7

        2.    Trans Union's Failure to Disclose Terrorist Records ...................8

        3.    The Experience of Plaintiff Amit Patel...........................................10

        4.    The Persons Affected by Trans Union's Practices .......................12

        5.    Trans Union's Continuing Disregard
for the Requirements of the FCRA .............................................12

II.    LEGAL STANDARD...............................................................................13

III.    ARGUMENT .........................................................................................15

    A.    The Case Meets The Requirements of Rule 23(a) ...............................15

        1.    The Class and Subclass are Sufficiently Numerous ...................15

        2.    There Are Questions of Law and Fact That Are
Common to the Class and Subclass .............................................16

        3.    Plaintiff's Claims Are Typical of the Proposed Class and Subclass .........17

        4.    Plaintiff and His Counsel Will Adequately Represent the Class and
Subclass......................................................................................17

    B.    The Case Meets The Requirements Of Rule 23(b)(3) .........................18

        1.    Common Questions of Law and Fact Predominate ....................19

        2.    A Class Action is Superior to Other Available Means
of Adjudication ..........................................................................20

    C.    The Class And Subclass Are Ascertainable......................................20

IV.    CONCLUSION......................................................................................22

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3
*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................. 18

4
*Bafus v. Aspen Realty, Inc*.,
    236 F.R.D. 652 (D. Idaho 2006).............................................. 10

5
*Barel v. Bank of America*,
    255 F.R.D. 393 (E.D. Pa. 2009) .............................................. 18

6
*Bellinghausen v. Tractor Supply Co.*,
    ___ F.R.D. ___, No. 13-cv-02377-JSC, 2014 WL 6694011 (N.D. Cal. Nov. 26, 2014)... 15

7

8
*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014)................................................. 19

9
*Berry v. LexisNexis Risk & Information Analytics Group, Inc.*,
    No. 3:11-cv-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014)................. 18

10
*Campbell v. PricewaterhouseCoopers, LLP*,
    253 F.R.D. 586 (E.D. Cal. 2008)............................................ 20

11

12
*Campos v. Choicepoint, Inc.*,
    237 F.R.D. 478 (N.D. Ga. 2006) ............................................ 14

13
*Chakejian v. Equifax Info. Servs., LLC*,
    256 F.R.D. 492 (E.D. Pa. 2009) ........................................ 10, 20

14
*Clark v. Experian Info. Solutions, Inc.*,
    No. 8:00-cv-1217-CMC, Dkt. No. 96 (D. S.C. June 26, 2002)................. 15

15
*Cortez v. Trans Union, LLC*,
    617 F.3d 688 (3d Cir. 2010) ........................................... *passim*

16

17
*Dennis v. Trans Union, LLC*,
    No. 14-2826, 2014 WL5325231 (E.D. Pa. Oct. 20, 2014) .................... 8

18
*Doninger v. Pac. Nw. Bell, Inc.*,
    564 F.2d 1304 (9th Cir.1977).............................................. 14

19
*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ...................................................... 14

20
*Gillespie v. Equifax Info. Servs. LLC*,
    No. 05-138, 2008 WL 4614327 (N.D. Ill. Oct. 15, 2008)................... 14

21

22
*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)......................................... 15, 16

23
*Hanon v. Dataproducts Corp.*,
    976 F.2d 497, 508 (9th Cir. 1992) ......................................... 17

24
*Holman v. Experian Info. Solutions, Inc.*,
    No. 11-0180, 2012 WL 1496203 (N.D. Cal. Apr. 27, 2012) ................ 14

25
*In re Tableware Antitrust Litig.*,
    241 F.R.D. 644 (N.D. Cal. 2007) .......................................... 19

26

27
*LaRocque v. TRS Recovery Services, Inc.*,
    285 F.R.D. 139 (D. Me. 2012) ............................................. 10

28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) .................................................................. 17, 20

*O'Connor v. Boeing N. Am. Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) .................................................................. 21

*Ramirez v. Trans Union, LLC*,
  301 F.R.D. 408 (N.D. Cal. 2014) ........................................................... *passim*

*Robins v. Spokeo, Inc.*,
  742 F.3d 409 (9th Cir. 2014) .......................................................................... 20

*Romero v. Producers Dairy Foods, Inc.*,
  235 F.R.D. 474 (E.D. Cal. 2006) .................................................................. 19

*Sullivan v. Kelly Services, Inc.*,
  268 F.R.D. 356 (N.D. Cal. 2010) .................................................................. 21

*Summerfield v. Equifax Info, Servs. LLC*,
  264 F.R.D. 133 (D.N.J. Sept. 30, 2009) ...................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
  __U.S. __, 131 S.Ct. 2541, 2551 (2011) .................................................. 7, 14

*White v. Experian Info. Solutions*,
  2014 WL 1716154 (C.D. Cal. May 1, 2014) ........................................... 14, 18

*Whiteway v. FedEx Kinko's Office and Print Servs., Inc.*,
  No. 05-2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ...................... 17

*Williams v. LexisNexis Risk Mgmt., Inc.*,
  2007 WL 2439463 (E.D. Va. Aug. 23, 2007) .............................................. 20

## STATUTES

12 C.F.R. § 1022.140 ............................................................................................ 5
15 U.S.C. § 1681a(p) ............................................................................................ 5
15 U.S.C. § 1681e(b) ..................................................................................... *passim*
15 U.S.C. § 1681g ........................................................................................ *passim*
15 U.S.C. § 1681n ............................................................................................. 19
15 U.S.C. § 1681x ............................................................................................... 5
31 U.S.C. §§ 5311-5330 .................................................................................... 10
CAL. CIV. CODE § 1785.18(a) ........................................................................... 11

## RULES

Fed. R. Civ. P. 23 .......................................................................................... *passim*
Fed. R. Civ. P. 23(a) ......................................................................................... 14
Fed. R. Civ. P. 23(a)(2) ..................................................................................... 16
Fed. R. Civ. P. 23(b) .................................................................................... 14, 18
Fed. R. Civ. P. 23(b)(3) ................................................................... 14, 16, 18, 19
Fed. R. Civ. P. 23(c)(1) ..................................................................................... 10

## OTHER

5 James W. Moore, Moore's Federal Practice § 23.21A [1] (2001) ........................... 21

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I.    INTRODUCTION AND STATEMENT OF FACTS

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Amit Patel moves for an order certifying a class consisting of the following people:

> All natural persons residing in the United States who, from February 2012 until December 2013, were the subjects of Trans Union SmartMove reports containing at least one item of "Alert List" information.

Plaintiff also moves for an order certifying a subclass consisting of the following persons:

> All natural persons residing in the United States who, from February 2012 until December 2013, were the subjects of Trans Union SmartMove reports containing at least one item of "Alert List" information who subsequently requested a file disclosure from Trans Union, LLC.

Plaintiff further moves pursuant to Rule 23 for an order appointing him as the class representative and his counsel as class counsel.

### A.    Nature Of The Case And Legal Backdrop

This consumer class action arises out of Defendants Trans Union, LLC and Trans Union Rental Screening Solutions, Inc.'s (collectively Trans Union) [1] practice of misidentifying thousands of consumers nationwide as terrorists on reports delivered to potential landlords, and subsequently compounding such unlawful conduct by failing to disclose to the affected rental applicants the criminal and terrorist records that Trans Union was reporting about them, in violation of the federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x,

This litigation is brought against the backdrop of Trans Union's deliberate decision to ignore a Court of Appeals decision against it handed down more than four years ago.  *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010).  In *Cortez*, Trans Union confused plaintiff Sandra Cortez with a woman named Sandra "Cortes" who was in fact included on a terrorist watch list, the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) list of terrorist, drug traffickers, money launderers, and other enemies of the United States.  *Id.* at 701-

---

[1] As detailed in Section I.B., *infra*, Plaintiff maintains that Trans Union is a single unitary national consumer reporting agency for the purposes of FCRA coverage and liability.  References to "Trans Union" herein reflect this position.  Where appropriate, this brief also individually references Trans Union, LLC as "TU," and Trans Union Rental Screening Solutions, Inc. as "TURSS."

1                                                        Case No. 3:14-cv-00522-LB

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

703.[2]  Mrs. Cortez was denied credit as a result of Trans Union's erroneous reporting, and when she requested a copy of her file, Trans Union sent her a file disclosure that completely omitted the OFAC information.  *Id.* at 696-701.[3]  The jury found that Trans Union's use of name-only matching logic, which caused the erroneous terrorist record to appear on a Trans Union report about the plaintiff, was a willful violation of FCRA section 1681e(b), and the Third Circuit upheld this finding.  *Id.* at 708-11, 721-22.  The Third Circuit also upheld the jury's finding that Trans Union's failure to include the terrorist alert record on Mrs. Cortez's file disclosure was a willful violation of FCRA section 1681g. *Id.* at 711-12, 721-22.

Despite the clear guidance of *Cortez*, Trans Union has continued to misidentify innocent Americans as terrorists, money launderers, and other criminals through the use of faulty name-only matching logic, and has continued to fail to disclose these terrorist records to the affected consumers.  Trans Union's continuing failure to address the deficiencies in its policies and procedures for reporting and disclosing records identifying consumers as terrorists in the context of credit applications was the focus of this Court's recent decision certifying a class of affected consumers.  *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014).

The present case differs from *Ramirez* in that it relates to Trans Union's reporting of terrorist records about consumers in connection with residential lease applications, as opposed to credit applications. However, like the plaintiffs in *Cortez* and *Ramirez*, Plaintiff Amit Patel asserts that Trans Union used flawed name-only matching logic to create a consumer report which misidentified him as a terrorist and a serial criminal, and then failed to disclose this terrorist record to him upon his request.   Because Trans Union uses uniform matching criteria to place terrorist records on the reports it sells to landlords, and maintains uniform policies and procedures

---

[2]   The United States Treasury Department's Office of Foreign Assets Control enforces economic and trade sanctions in part by maintaining a list of individuals who are suspected terrorists, narcotics dealers, money launderers, or other threats to national security.  *See* http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx.[2] The Specially Designated Nationals or "SDNs" on the list have their assets frozen, and are prohibited from conducting any business, including obtaining credit, in the United States.  *Id.*

[3]   The FCRA requires consumer reporting agencies such as Trans Union to provide all information that the agency collects and maintains about a consumer to the consumer upon request. 15 U.S.C. § 1681g(a).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

with respect to the disclosure of terrorist records to consumers, Plaintiff now seeks to represent the thousands of other similarly situated consumers affected by these Trans Union practices.

**B.**    **Trans Union Operates As A Single Consumer Reporting Agency**

Trans Union, LLC is one of the largest consumer reporting agencies (CRA) in the United States, and sells consumer reports about millions of consumers annually to lenders, creditors, debt collectors, employers, insurers, and others. [4] Trans Union gathers public records and financial account information regarding "nearly every credit-active consumer in the United States" and sells reports containing these records to its customers. *Id.* In addition to traditional consumer reports focusing on financial accounts, Trans Union's family of affiliated entities markets and sells "specialty" consumer reports targeted to particular industries including insurance, healthcare, and employment. *Id.* [5]

Among the specialized reports that Trans Union markets and sells are consumer reports directed to landlords and property managers intended to be used to screen prospective tenants for residential housing. [6] In addition to traditional credit information, these SmartMove residential screening reports include criminal records, sex offender records, and terrorist alerts. *Id. See also* Ex. 1, 7/17/2013 Report at PATEL 000033. [7] SmartMove reports are produced and sold by Defendant Trans Union Rental Screening Solutions, Inc. (TURSS), a wholly-owned subsidiary of Trans Union, LLC (TU). *See* Ex. 2 (████████████████████████████████████ ████████████████████. [8] Although no merits discovery has yet been taken in this matter, [9]

---

[4] *See* http://www.transunion.com/corporate/business/solutionsbyneed/credit-reporting.page?

[5] *See also* http://www.transunion.com/corporate/business/resellers/dataresellers.page.

[6] *See* http://www.transunion.com/corporate/business/propertymgt/independent-rental-owners.page.

[7]    References to Exhibits (Ex.) used hereafter refer to the exhibits attached to the simultaneously filed Declaration of James A. Francis, Esq. in Support of Plaintiff's Motion for Class Certification (Francis Decl.).

[8]    TURSS also admits that it is a consumer reporting agency in its own right, subject to the requirements of the FCRA. *See* TURSS Ans. to Am. Compl., Dkt. No. 46 at ¶¶ 20-21.

[9]    Discovery in this matter has been bifurcated, with the first phase of discovery focusing on the requirements of class certification under Fed. R. Civ. P. 23, with discovery on the merits deferred until after a ruling on this motion. *See* Case Mgmt. and Pretrial Order, Dkt. No. 34; Dkt. No. 55.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

discovery to date indicates that TU has substantial involvement in TURSS operations with respect to the production of SmartMove reports and the disclosure to consumers of information contained on the reports, including the terrorist records that are the subject of this litigation.

████████████████████████████████████████████████████████

██████████████████████████ Ex. 3, Klassen Dep. at 48:22-50:5, 52:11-53:13. Indeed, TU provides a centralized technical support function to all of its subsidiaries, including TURSS. *Id.* at 12:1-24.  The TURSS corporate representative who testified regarding TURSS's computer systems is, in fact, paid by TU and reports to TU's Senior Vice President of technology. *Id.* at 9:22-10:5, 13:13-14:12.

Furthermore, SmartMove is marketed as a Trans Union product, and █████████████████ ████████ documents related to the SmartMove service bear Trans Union, LLC copyrights and trademarks.[10] *See* Ex. 1 (SmartMove report prepared and sold about Plaintiff, bearing Trans Union, LLC copyright on the bottom of most pages); Ex. 4 (██████████████████████████████ ██████████████

TU has control and influence over TURSS quality assurance procedures, including those purportedly aimed at compliance with the FCRA.  The dedicated compliance officer for TURSS, who was the individual designated to testify as TURSS's corporate representative regarding the accuracy of terrorist records on SmartMove reports, is a TU employee.  Ex. 5, Colaprete Dep. at 8:15-9:1, 10:11-11:6. ████████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* at 15:24-16:18. ████████████████████████████████████████████████ ███████████████████████████████████Ex. 6.

In addition to controlling the sale and dissemination of SmartMove reports, TU is integrally involved in the processing of consumer correspondence regarding these reports. TURSS directs consumers to send correspondence regarding SmartMove reports to a TU facility, where TU employees perform an initial review of such correspondence.  Ex. 7; Ex. 8, Armbruster Dep. at 94:15-21, 95:24-96:13. Ex. 9, Litwa Dep. at 83:13-84:2, 113:3-114:2████████████ ████████████████████████████████████████████████████████ ███████████████████████ *See* Ex. 10 ██████████████████████████

---

[10] *See* http://www.transunion.com/corporate/business/propertymgt/independent-rental-owners.page "TransUnion SmartMove ® gives you all the tenant screening tools you need").

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■'); Ex. 9, Litwa Dep. at 32:7-24 (confirming that Jean Rudolph is a TU employee).

There can be no doubt that TU is responsible for the production and sale of terrorist records or the disclosure to consumers of such records.  The relevance of TU's significant involvement in the sale of SmartMove reports and the attendant disclosure and dispute process is that such control places responsibility for FCRA compliance squarely at TU's feet.  Contrary to Trans Union's claim in this litigation, TU cannot sidestep responsibility for FCRA compliance for the sale of SmartMove reports and for disclosure of the records on those reports to consumers.

The FCRA specifically prohibits companies from immunizing themselves against FCRA liability by creative corporate structuring, including the use of subsidiaries such as TURSS.  In a section entitled "Corporate and technological circumvention prohibited," the FCRA provides as follows:

> The Commission shall prescribe regulations, to become effective not later than 90 days after December 4, 2003, to prevent a consumer reporting agency from circumventing or evading treatment as a consumer reporting agency described in section 1681a(p) of this title for purposes of this subchapter, including--
>
> (1) by means of a corporate reorganization or restructuring, including a merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency; or
> (2) by maintaining or merging public record and credit account information in a manner that is substantially equivalent to that described in paragraphs (1) and (2) of section 1681a(p) of this title, in the manner described in section 1681a(p) of this title.

15 U.S.C. § 1681x.

The Federal Trade Commission, responsible for enforcement of the FCRA, promulgated regulations almost exactly on point. *See* 12 C.F.R. § 1022.140 (the "FTC Circumvention Rule"). Section 1022.140 is titled "Prohibition Against Circumventing or Evading Treatment as a Consumer Reporting Agency" and in relevant part states:

> (a) A consumer reporting agency shall not circumvent or evade treatment as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis' as defined under section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(p), by any means, including, but not limited to:
>
> (1) Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency[.]

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

*Id.*

The FTC's examples of prohibited activity precisely address and dispose of Defendants' anticipated argument that TURSS, and not TU, is the sole entity responsible for the sale and disclosure of terrorist records.  The examples include "(1) *Circumvention through reorganization by data type.*"  In this illustration of a corporate structuring example that would not be recognized as a bar to FCRA governance, the FTC proposed the following:

> XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603 (p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section. […]

*Id.*  The FCRA expressly cautions that corporate form is irrelevant and that the use of corporate associations and structures to avoid its application is prohibited.

As described at length above, TU is significantly involved in TURSS operations related to SmartMove reports, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ TU furthermore shares resources for receiving and responding to consumer correspondence, and providing centralized compliance and quality control procedures, including procedures for purportedly aimed at compliance with the FCRA.

Thus, for purposes of the FCRA and class certification, TU and TURSS operate as a single consumer reporting agency.  This is relevant to Plaintiff's claim under FCRA section 1681e(b) because Plaintiff asserts that TU bears responsibility for the accuracy of information contained on SmartMove reports, including terrorist records.  With respect to Plaintiff's disclosure claim under FCRA section 1681g, Plaintiff asserts that whenever a consumer requests a file disclosure from TU, TU must disclose information sold by any TU subsidiary, including terrorist records. Although Trans Union may strenuously object to Plaintiff's legal interpretation, whether TU and TURSS are a single consumer reporting agency with respect to the production, sale, and disclosure of SmartMove reports containing terrorist records is a common question eminently suitable for class-wide resolution. Plaintiff therefore seeks to certify both of his FCRA claims

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

against both Defendants.

**C.**     **Factual Background**

In certifying a class, this Court must conduct a rigorous analysis that frequently will entail overlap with the merits of the plaintiff's underlying claim. *Wal-Mart Stores, Inc. v. Dukes,* __U.S. __, 131 S.Ct. 2541, 2551 (2011) (*Dukes*).  Accordingly, Plaintiff will summarize the evidence he has discovered to date that supports his claims.

**1.**     **Trans Union's Sale of False Terrorist Records on SmartMove Reports**

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████ as well as the Office of Foreign Assets Control (OFAC) list, the terrorist list at issue in the *Cortez* and *Ramirez* matters.  *See* Ex. 11 (███████████ █████████████████████████████).[11]
████████████████████████████████████████████████████
████████████████████████████████[12] *Id.* at ███████████████████████ ████████████); Ex. 5, Colaprete Dep. at 48:14-18, 49:5-15. ████████████████████████████████ Ex. 3, Klassen Dep. at 48:22-50:5, 52:11-53:13.

Each time Trans Union prepares a SmartMove report about a particular consumer, it uses computer software to query its databases for public records, including terrorist records, which "match" to the consumer who is the subject of the report.  Ex. 3, Klassen Dep. at 67:4-68:21███████ █████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████ Ex. 5, Colaprete Dep. at 76:1-8, 81:22-82:9; Ex. 1, 7/17/2013 Report. ████████████████

---

[11]     During the pertinent time period, Trans Union placed these records on SmartMove reports under the headings "Terrorist," and "Potential OFAC Hit."  Ex. 5, Colaprete Dep. at 62:15-21. *See also* Ex. 1 at PATEL000033 (SmartMove report about Patel with "terrorist" header). Changes to the heading had no effect on the types of records included. Ex. 5, Colaprete Dep. at 41:10-15, 53:11-19.

[12] ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

████████████████████████████████████ *Cortez*, 617 F.3d at 703-04; *Ramirez*, 301 F.R.D. at 418.[13]  Trans Union takes no additional steps beyond its matching logic to ensure that the terrorist alert records it includes on SmartMove reports in fact pertain to the consumer to whom the report relates.

████████████████████████████████████████████████████████████████

██████████████████████ Ex. 5, Colaprete Dep. at 79:4-18, 81:9-20. ████████████

████████████████████████████████████████████████████████

███████████████████████████████████ *Ramirez*, 301 F.R.D. at 422 ("Trans Union is unable to identify any instance in which a person it identified as a "potential match" was in fact a match.  Indeed, it has not identified a single instance in which the birth date of the person on the OFAC List and the "potential match" matched, or even the address matched; in other words, in which there is something other than the person's name to suggest the person is on the OFAC List.").  Plaintiff here contends that *every* terrorist alert placed on a SmartMove report using name-only matching logic was a false positive, and that *none* of the class members are actually on a government watch lists, despite being labeled as terrorists by Trans Union.

### 2.   Trans Union's Failure to Disclose Terrorist Records

One of the basic and most important rights given to consumers under the FCRA is the right to obtain *all* of the information that a CRA is reporting about them, also known as a "file disclosure."  *See* 15 U.S.C. § 1681g; *Dennis v. Trans Union, LLC*, No. 14-2826, 2014 WL5325231, at *1-2, *5 (E.D. Pa.  Oct. 20, 2014).  Contrary to this fundamental right, Trans Union has deliberately structured its disclosure process so that consumers who are the subject of SmartMove reports containing terrorist records will rarely, if ever, get complete file disclosures.  Rental applicants are directed to Trans Union's centralized portal:

---

[13] ██████████████████████████████████████████████████

██████████████████████████████████████████████████████

Ex. 5, Colaprete Dep. at 76:9-17, 77:1-18. ███████████

██████████████████████████████████████████████████

*Id.* at 79:19-80:12.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**Can I get a copy of the credit report provided to the landlord?**

No. Only the landlord is allowed access to the TransUnion SmartMove credit report. As an alternative, we suggest the renter go to www.annualcreditreport.com to get a copy of their TransUnion credit report.

Dkt. No. 41, Am. Compl. ¶ 67 (quoting SmartMove FAQ as of October 2013); Dkt. No. 45, TU Ans. to Am. Compl. at ¶ 67 (admitting that the quoted language appeared on the SmartMove website) then footnote referencing change); Dkt. No. 46, TURSS Ans. to Am. Compl. at ¶ 67 (same).[14] But when consumers follow these instructions and request their Trans Union file, Trans Union does not include any terrorist records on the file disclosures sent in response. Ex. 9, Litwa Dep. at 116:21-117:1.

TU maintains standard procedures allowing consumers to request the contents of their Trans Union file via mail, telephone, and the internet. *See* http://www.transunion.com/personal-credit/customer-support/contact-us.page. Millions of consumers request file disclosures each year from TU. Consumer Financial Protective Bureau, "Key Dimensions and Processes in the U.S. Credit Reporting System," December 2012, at p. 27, *available at* http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf (44 million consumers obtain copies of their consumer file disclosures from the Big Three consumer reporting agencies each year).

Like the disclosures sent to Ms. Cortez and Mr. Ramirez, the file disclosures TU sends to consumers who were the subject of a SmartMove report containing criminal or terrorist records do not include all of the information Trans Union maintains about them. As a matter of uniform policy and procedure, TU file disclosures *all* omit the terrorist records Trans Union maintains and sells to third parties:

Q: But TransUnion **never** sends information related to criminal or terrorist records to consumers in response to consumer file disclosure requests, correct?

A: Correct.

Ex. 9, Litwa Dep. at 116:21-117:1. Thus, although consumers who are the subject of Trans Union's SmartMove reports contact Trans Union seeking a complete disclosure of the

---

[14] After the filing of this lawsuit, Trans Union changed the wording of its FAQ page. *See* https://www.mysmartmove.com/SmartMove-FAQs/renter-faq.html#q13

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

information in their file, Trans Union uniformly fails to send all of the information it in fact maintains about them.

### 3.     The Experience of Plaintiff Amit Patel

In July 2013, Amit Patel applied to rent an apartment in Union City, California.  Ex. 13, Plaintiff's Dep. at 26:3-27:1.  As part of the application process, his prospective landlord CBC Realty, Inc. (CBC) required Mr. Patel to access Trans Union's SmartMove website to provide information and authorization for CBC to obtain a SmartMove background report about Plaintiff.  *Id.* at 31:6-18.  Mr. Patel agreed and provided the requested information.  *Id.*  Trans Union made the SmartMove report available to CBC through its online portal on July 17, 2013.  Ex. 1, 7/17/2013 Report.

The SmartMove report was grossly inaccurate.  It stated that Mr. Patel had seventeen different criminal records from New Mexico and Rhode Island.  *Id.*  None of the records were accurate; sixteen belonged to unrelated persons, and one was included on the report despite the fact that it had been expunged and removed from the public record nearly a year prior to the production of the report.[15]

The Trans Union SmartMove report also included a record under the heading "Terrorist."  Ex. 1, 7/17/2013 Report at PATEL 000033.  ████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███ Ex. 5, Colaprete Dep. at 49:20-51:1; Ex. 11 ██████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████   Ex. 11. The OCC is responsible for enforcing a variety of federal banking regulations, including the anti-money laundering provisions of the Bank Secrecy Act, 31 U.S.C.

---

[15]     In addition to the two classes and FCRA claims that are the subject of the instant motion, Plaintiff's Amended Complaint references several individual claims and additional proposed class claims which, after discovery, Plaintiff has elected not to seek to certify.  A class representative's decision to seek to certify only some of the claims and proposed classes initially pled (or even different classes) is well-recognized by Fed. R. Civ. P 23.  *See LaRocque v. TRS Recovery Services, Inc.,* 285 F.R.D. 139, 152 (D. Me. 2012) (class representative may seek to certify all or only certain selected claims at her election); *Chakejian v. Equifax Info. Servs., LLC*, 256 F.R.D. 492, 497 (E.D. Pa. 2009) (neither class representative nor court bound by the proposed class definitions set in the complaint); Fed. R. Civ. P. 23(c)(1) (class definitions may change at any time throughout the course of litigation); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 655 (D. Idaho 2006).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

§§ 5311-5330, as amended by the USA PATRIOT act "to detect, deter and disrupt terrorist financing networks." *See* http://www.occ.gov/topics/compliance-bsa/bsa/bsa-regulations/index-bsa-regulations.html. The report Trans Union delivered to CBC, however, makes no reference to the OCC and provides no indication of the nature of the record or its source.[16] Ex. 1, 7/17/2013 Report; Ex.5, Colaprete Dep. at 86:19-87:13, 99:8-100:5. Even the corporate representative specifically designated to testify regarding terrorist records on Trans Union SmartMove reports was unable to identify the record beyond stating that it was from the OCC dataset. Ex. 5, Colaprete Dep. at 100:1-5.

After CBC denied Mr. Patel's rental application on July 17, 2013, Mr. Patel immediately requested a copy of the SmartMove Report from CBC. Ex. 13, Plaintiff's Dep. at 74:17-75:3, 76:1-3; Ex. 14 at P3-4 (correspondence between Plaintiff and CBC). When CBC provided a copy of the report, Mr. Patel was shocked to discover that Trans Union was reporting to CBC that he was a terrorist and serial criminal. Ex. 15 at P3-3 (correspondence between Plaintiff and CBC). In order to get more information about the records Trans Union reported about him, Mr. Patel directly contacted Trans Union through the online portal on July 22, 2013. Ex. 16. The file disclosure he received in response contained no mention of the terrorist record or criminal records Trans Union sold to CBC. Ex. 17 (7/22/2013 file disclosure to Plaintiff).[17] Mr. Patel performed additional research and was able to locate and contact TURSS directly to request a complete copy of the criminal and terrorist records sold about him, and to dispute their accuracy. Ex. 13, Plaintiff's Dep. at 63:16-64:11. TURSS responded by providing a TU mailing address in Woodlyn, Pennsylvania.[18] *Id.*; Ex. 7.

After Mr. Patel's repeated yet unsuccessful efforts to determine what records Trans Union was reporting about him and the sources of the records, Mr. Patel sought the assistance of an

---

[16]    The CCRAA prohibits the sale of a report without identifying the source. Trans Union was, at a minimum, required to identify the OCC as the source of this record. Cal. Civ. Code § 1785.18(a).

[17]    This is a virtually identical chain of events to those experienced by the plaintiffs in the *Cortez* and *Ramirez* cases when seeking a file disclosure from Trans Union. *Cortez*, 617 F.3d at 699; *Ramirez*, 301 F.R.D. at 415.

[18]    TU's Consumer Relations office in Crum Lynne, Pennsylvania, is one of TU's national offices for handling consumer correspondence. Litwa Dep. at 83:5-12. Correspondence directed to the Woodlyn, Pennsylvania address is handled in the Crum Lynne mail room. *Id.* at 113:3-114:2.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

attorney, Michelle McCain.  Ex. 18. 7/25/2013 Letter.   On July 25, 2013,  Ms. McCain sent a detailed, six-page single spaced letter to publicized addresses for both TU and TURSS disputing all of the erroneous information contained in the report sold to CBC and requesting a complete disclosure of all the information Trans Union was reporting about him.  *Id.* (correspondence marked as received by TU on July 29, 2013).  Though TU admits that it received the July 25, 2013 letter, neither TU nor TURSS responded or investigated the disputed information.   Ex. 9, Litwa Dep. at 88:16-22, 94:9-17; Ex. 8, Armbruster Dep. at 93:15-94:5.

**4**.    **The Persons Affected by Trans Union's Practices**

Discovery in this matter has identified 11,048 persons about whom Trans Union sold a SmartMove report containing a terrorist alert, from February 2, 2012 through July 31, 2014.   Ex. 12 at Rog. 3.  For the reports prepared from February 2, 2012 through December 2013, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5, Colaprete Dep. at 76:1-8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5, Colaprete Dep. at 79:19-80:12. ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff asserts that it was inaccurate for Trans Union to sell a terrorist alert about any class member.

As for the file disclosure subclass, while the precise number is unknown, Trans Union has stipulated that the number of consumers who were the subject of SmartMove reports from February 2, 2012 until July 2014 who subsequently requested their file from TU is numerous. Ex. 19.

**5.**    **Trans Union's Continuing Disregard for the Requirements of the FCRA**

For over four years, Trans Union has continued to prepare consumer reports in disregard of the clear guidance of the Third Circuit rendered in *Cortez* regarding the sale and disclosure of terrorist records.  *Cortez* held that information related to government alert lists is subject to the FCRA's section 1681e(b) "maximum possible accuracy" standard.  617 F.3d at 710.  *Cortez* warned Trans Union about the dangers of reporting any information it could not "*confirm* is related to a particular consumer."   *Id.* at 710, emphasis added. *Cortez* affirmed the jury's

12

Case No. 3:14-cv-00522-LB

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

conclusion that Trans Union had violated the maximum possible accuracy requirement of section 1681e(b) because of the "discrepancies" between the information in its database concerning the consumer who was the subject of the report and the information available on government alert list records, including "last name, middle name . . . date of birth . . . [and] citizenship." *Id.* at 710. *Cortez* emphasized that Trans Union must "take the utmost care in ensuring the information's accuracy – at the very least, comparing birth dates when they are available…." *Id.* at 723.

Despite this clear guidance from *Cortez* involving the OFAC government watch list, which is one type of terrorist record placed on SmartMove reports, Trans Union continued to use the exact same first and last name-only matching logic to include terrorist records on reports. Ex. 5, Colaprete Dep. at 76:1-8, 81:22-82:9. *See also Ramirez*, 301 F.R.D. at 414-15 (describing Trans Union's continuing use of name-only matching logic to include terrorist records on consumer reports in the context of credit applications).

Trans Union also disregards the guidance from *Cortez* regarding Trans Union's obligations to include terrorist alert information in consumer file disclosures under FCRA section 1681g. 617 F.3d at 712-13. The court held that OFAC data is part of a consumer's "file" which means that consumers are entitled to "accurately" be provided with "all information" a CRA has about that consumer or can potentially sell about him or her, and the consumer can dispute any inaccuracies in that information. *Id.* The *Cortez* court upheld the jury's finding that that Trans Union's complete failure to include any terrorist alert information on disclosures to consumers was a willful violation of FCRA section 1681g. *Id.* at 722-23. In *Cortez*, both the jury and the court rejected Trans Union's assertion that it had no obligation to include OFAC terrorist alerts on consumer disclosures because the data was housed on servers owned by third party vendor Acuity, Inc. *Id.* at 704, 711-12. Trans Union's obligation to disclose terrorist records in response to consumer requests directed to TU is even clearer here, ███████████████████ █████████████████████████████ Ex. 3, Klassen Dep. at 48:22-50:5, 52:11-53:13. Trans Union's continuing failure to heed the guidance of *Cortez* with respect to the disclosure of terrorist records in the context of credit applications is the subject of the recently certified class claims in *Ramirez*. 301 F.R.D. at 417-18, 421.

## II.    <u>LEGAL STANDARD</u>

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Federal

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Rule of Civil Procedure 23(a), as well as the requirements of one subsection of Rule 23(b).  Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Plaintiff Amit Patel seeks class certification pursuant to Rule 23(b)(3) here, which provides that a case may be certified as a class action if:  "(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b).

Plaintiff bears the burden of demonstrating that each element of Rule 23 is satisfied. A district court may certify a class where it determines that a plaintiff has borne his or her burden. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 158–61 (1982); *Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1308 (9th Cir.1977).  The court must conduct a " ' rigorous analysis,' " which may require it " 'to probe behind the pleadings before coming to rest on the certification question.' " *Dukes, supra*, 131 S.Ct. at 2551. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.*

Judges within this District have certified classes in similar FCRA cases, including the recent *Ramirez* case, in which Judge Corley certified class claims regarding Trans Union's use of name-only matching logic to associate consumers with terrorist records in the context of applications for credit, as well as improper disclosure of one type of terrorist record.  *Ramirez,* 301 F.R.D. at 426.  *See also Holman v. Experian Info. Solutions, Inc.*, No. 11-0180, 2012 WL 1496203, at *17 (N.D. Cal. Apr. 27, 2012) (certifying statutory damages FCRA class involving sale of credit reports to collection agency lacking permissible purpose to obtain most of the reports); *White v. E-Loan, Inc*., No. 05-02080, 2006 WL 2411420, at *1-2 (N.D. Cal. Aug. 18, 2006) (certifying FCRA statutory damage class). Federal judges elsewhere have certified both contested and settled FCRA classes alleging, as in the case at bar, that a consumer reporting agency made an improper disclosure to consumers or prepared consumers reports containing inaccurate information.  *See, e.g.*, *Gillespie v. Equifax Info. Servs. LLC*, No. 05-138, 2008 WL 4614327, at *9 (N.D. Ill. Oct. 15, 2008) (certifying class action under FCRA section 1681g(a));

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*Campos v. Choicepoint, Inc.*, 237 F.R.D. 478, 490 (N.D. Ga. 2006) (same); *Clark v. Experian Info. Solutions, Inc.*, No. 8:00-cv-1217-CMC, Dkt. No. 96 (D. S.C. June 26, 2002) (order certifying class action under FCRA section 1681e(b)).

## III.   ARGUMENT

### A.   The Case Meets the Requirements of Rule 23(a)

#### 1.   The Class and Subclass are Sufficiently Numerous.

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). There is no precise number of consumers that meets the numerosity requirement of Rule 23, but when the class size is unknown, courts may make common sense determinations based upon the facts presented. *See Bellinghausen v. Tractor Supply Co.*, ___ F.R.D. ___, No. 13-cv-02377-JSC, 2014 WL 6694011, at *2 (N.D. Cal. Nov. 26, 2014).

Although the exact number of consumers that Trans Union labeled as terrorists using this flawed name-only matching logic has not yet been determined, the class numbers in the thousands and can be simply ascertained. Trans Union has identified 11,048 individuals about whom it sold a SmartMove report containing a terrorist alert from February 2, 2012 through July 31, 2014. Ex. 12 at Rog. 3. The proposed class here includes those consumers whose reports were sold between February 2, 2012 and December 2013. As described in section I.E., *supra*, even when reports prepared after December 2013 are excluded from the 11,048 figure provided in the interrogatory response, Trans Union prepared and sold thousands of SmartMove reports containing terrorist alerts using name-only matching criteria during the relevant time period.

With respect to the subclass of consumers who were identified as terrorists and who subsequently requested a copy of their file disclosure from TU, the parties have stipulated that this group of consumers is sufficiently numerous to satisfy the requirements of Fed. R. Civ. P. 23(a)(1). Ex. 19. Given that millions of consumers request file disclosures each year, it stands to reason that a significant portion of the thousands of consumers who were reported as terrorists on SmartMove reports also subsequently requested a file disclosure from TU.

Numerosity is therefore met with respect to both the class and subclass.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

2

    **2.**       **There are Questions of Law and Fact That are Common
to the Class and Subclass**

3

    Rule 23 contains two related commonality provisions: Rule 23(a)(2) and Rule 23(b)(3).

4

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," but class

5

certification is not precluded if fewer than all questions of law or fact are common to the class:

6

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the
> companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed

7

> permissively. All questions of fact and law need not be common to satisfy the rule.
> The existence of shared legal issues with divergent factual predicates is sufficient, as

8

> is a common core of salient facts coupled with disparate legal remedies within the

9

> class.

10

*Hanlon,* 150 F.3d at 1019.

11

    The court in *Ramirez* explicitly held that the question of whether the use of name-only

12

matching logic assures maximum possible accuracy as required by FCRA section 1681e(b) was

13

sufficient to satisfy the commonality prerequisite of Rule 23.  301 F.R.D. at 418-19.  The *Ramirez*

14

court additionally found that the question of whether a uniform procedure for responding to

15

consumer file disclosures requests complies with the FCRA is sufficient to satisfy the

commonality requirement.  *Id.* at 417-18.

16

    Here, Trans Union used uniform name-only matching logic to place terrorist alerts on

17

SmartMove reports. Ex. 5, Colaprete Dep. at 76:1-8, 81:22-82:9.  Trans Union also uniformly

18

fails to provide any information regarding terrorist records to consumers who request their file

19

disclosure from TU. Ex. 9, Litwa Dep. at 116:21-117:1.  Therefore, the common questions are

the same as those in *Ramirez*, and for the same reasons as in *Ramirez*, they satisfy the

20

commonality element of Rule 23.  Thus, with respect to the classwide claim under FCRA section

21

1681e(b), the common question is whether Trans Union's use of name-only matching logic to

22

place terrorist alerts on SmartMove reports assured maximum possibly accuracy as required by

23

the FCRA.  For the subclass of consumers who subsequently requested a file disclosure from TU,

24

the common question is whether Trans Union's failure to include the terrorist alert information it

25

previously reported constitutes a violation of FCRA section 1681g.  As in *Ramirez*, therefore,

commonality is satisfied.

26

    Furthermore, as discussed in section I.B., *supra*, any question regarding TU and TURSS's

27

28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

respective responsibilities for the production and sale of SmartMove reports and the disclosure of terrorist records to consumers is an overarching common question.

### 3.  Plaintiff's Claims Are Typical of the Proposed Class and Subclass

Typicality is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality test asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Plaintiff's claims are typical. Like everyone else in the proposed class, Mr. Patel was the subject of a SmartMove report containing a terrorist alert that was prepared using name-only matching criteria.  Ex. 1, 7/17/2013 Report; Ex. 5, Colaprete Dep. at 76:1-8, 81:22-82:9.[19] Additionally, like each member of the proposed subclass, Mr. Patel subsequently requested a copy of his full file disclosure from TU and in response to his disclosure request, Trans Union intentionally omitted all information indicating he had been flagged as a terrorist in its reports. Ex. 16; Ex. 17, Ex. 9, Litwa Dep. at 116:21-117:1, Thus, the typicality requirement is satisfied.

### 4.  Plaintiff and His Counsel Will Adequately Represent the Class and Subclass

Rule 23(a)(4) requires that class representatives – the named plaintiff and his or her counsel – must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Legal adequacy turns on two questions: (1) whether the class representative's interests are common with, and not antagonistic to, the class's interests; and (2) whether the class representative is "able to prosecute the action vigorously through qualified counsel." *Whiteway v. FedEx Kinko's Office and Print Servs., Inc.*, No. 05-2320, 2006 WL 2642528, at *7 (N.D. Cal. Sept. 14, 2006) (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978)).

Plaintiff is familiar with the facts underlying this case, and is aware of his duties as class

---

[19]  Changes to the title of the section of SmartMove reports containing terrorist records do not render Plaintiff atypical.  *Ramirez*, 301 F.R.D. at 420 (finding that claims of plaintiff about whom Trans Union reported a terrorist alert as a "match" were typical of consumers about whom Trans Union reported the same information described as a "potential match").  Regardless of whether the heading above the alert was "Terrorist," or "OFAC," the representation was inaccurate and grossly defamatory.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

representative and agrees to them.  Ex. 13, Plaintiff's Dep. at 18:17-20, 21:3-19, 23:2-6.  Plaintiff has secured representation by counsel with significant experience in this type of litigation. Francis & Mailman handled *Cortez* in the district court and throughout the entire appellate process, and achieved class certification in *Ramirez*.  The firm has also been found to be well-qualified to represent consumer classes by courts in many other districts, and has been certified as class counsel on over thirty (30) occasions.[20]  The firm has been appointed class counsel over objection and competing counsel's challenge in interim appointment litigation.[21]  *See also* Ex. 20, Qualifications of Francis & Mailman, P.C.  Ex. 21, Qualification of Evans Law.

Accordingly, Plaintiff and his counsel will adequately protect the interests of the class and subclass.

**B.      The Case Meets The Requirements of Rule 23(b)(3)**

After satisfying the requirements of Rule 23(a), a plaintiff must also show that at least one of the three requirements of Rule 23(b) is satisfied before the court can certify the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997).  Pursuant to Rule 23(b)(3), the court must find that the questions of law or fact common to the class predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  The matters pertinent to a finding under Rule 23(b)(3) include: (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the

---

[20]    *See, e.g., Barel v. Bank of America*, 255 F.R.D. 393, 398-99 (E.D. Pa. 2009) (finding Francis & Mailman, P.C. "to be competent, experienced and well-qualified to prosecute class actions" and noting that class counsel "have done an excellent job in representing the class in the instant litigation.")

[21]    *See, e.g., White v. Experian Info. Solutions*, No. 05-01070, 2014 WL 1716154, at *13, 19, 22 (C.D. Cal. May 1, 2014) (finding Francis & Mailman "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."); *Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, No. 3:11-cv-754, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014) (finding Francis & Mailman, P.C. and its team adequate class counsel in contested settlement appeal).

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

particular forum; (d) the difficulties likely to be encountered in the management of a class action. *Id.*

The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency. *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 651 (N.D. Cal. 2007) (citing advisory committee notes). When common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. *Id.* Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved. *Romero v. Producers Dairy Foods, Inc.* 235 F.R.D. 474, 489 (E.D. Cal. 2006). The *Ramirez* court specifically found that Trans Union's use of name-only matching logic to associate consumers with terrorist records was a predominating issue, particularly in light of Trans Union's inability to identify a single instance in which its terrorist alerts were accurate. 301 F.R.D. at 422-23.

### 1.      Common Questions of Law and Fact Predominate

The predominance requirement of Rule 23(b)(3) necessitates that "the common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation marks and alterations omitted). The central issue for each class member's section 1681e(b) claim is whether Trans Union violated the FCRA by continuing to use name-only matching logic to generate terrorist alerts on SmartMove reports. The common question for each member of the subclass is whether Trans Union violated FCRA section 1681g by failing to include terrorist record information in its file disclosures to consumers. Just as in *Ramirez*, these common questions predominate over individualized concerns.

There are no individual damages issues. Plaintiff is seeking statutory damages for each member of the class, not actual damages. Statutory damages of $100 to $1,000 per plaintiff, plus unlimited punitive damages are available for willful violations of the FCRA. 15 U.S.C. § 1681n. Statutory damages compensate the class members for violation of their rights under these statutes. There is no need for any individual inquiry for damages. Damages issues will be common and predominate in cases such as the one at bar, where only statutory damages are claimed. *Ramirez,* 301 F.R.D. at 421. Moreover, FCRA statutory damages such as the ones that Plaintiff seeks for himself and the class here are available even without any proof of actual harm. *Id.* ("Under the

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

law of the Ninth Circuit, an FCRA claim for statutory damages 'does not require a showing of actual harm when a plaintiff sues for willful violations.'") (quoting *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014)).[22]

Furthermore, any issues related to TU and TURSS's respective responsibilities for the sale and disclosure of terrorist records present fundamental common questions. The case therefore presents overriding questions of law and fact common to the class and subclass, posed by Defendant's standard practices.  The issues of law and fact predominate over any individual issue.

### 2.    A Class Action is Superior to Other Available Means of Adjudication

The individual class members do not have an interest in controlling the prosecution of this case.  Most of them do not know that Trans Union violated these consumer protection statutes, in large part due to Trans Union's failure to disclose the terrorist alerts to them in their file disclosures.  Unless this case is certified as a class action, the class members will never be compensated for Trans Union's violations of the FCRA. Most importantly, without class certification of this case, Trans Union will continue to mislabel innocent consumers as terrorists without complying with the "maximum possible accuracy" standard of the FCRA, and fail to disclose these terrorist records to consumers.

Even in the unlikely event that all the proposed Class members become aware of their rights, and could locate counsel who will agree to represent them, a multiplicity of lawsuits will result in an inefficient administration of this controversy and needlessly expend a great deal of judicial resources.  Accordingly, certification of this class action is favored as the superior method of adjudicating this controversy.

### C.    The Class And Subclass Are Ascertainable

Finally, although ascertainability *per se* is not an enumerated requirement of Rule 23, here, the proposed class and subclass are readily ascertainable.  "An adequate class definition specifies 'a distinct group of plaintiffs whose numbers [can] be identified with particularity.'"

---

[22]    In addition to the *Ramirez* decision, multiple other federal courts have found no difficulty in certifying FCRA statutory damages class actions.  *Williams v. LexisNexis Risk Mgmt., Inc.*, 2007 WL 2439463, at *4-6 (E.D. Va. Aug. 23, 2007); *Chakejian v. Equifax Info. Servs., LLC*, 256 F.R.D. 492, 498, 500-01 (E.D. Pa. 2009); *Summerfield v. Equifax Info, Servs. LLC*, 264 F.R.D. 133, 139, 142 (D.N.J. Sept. 30, 2009).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). "The identity of class members must be ascertainable by reference to objective criteria." 5 James W. Moore, *Moore's Federal Practice,* § 23.21A [1] (2001).  A class definition is sufficient if the description of the class is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998); *see also Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356, 362 (N.D. Cal. 2010).

The proposed nationwide class here is readily ascertainable.  From its records, Defendant TURSS has identified the 11,048 consumers about whom it sold SmartMove reports from February 2, 2012 through July 31, 2014. Ex. 12 at Rog. 3.  As a consumer reporting agency, Trans Union should have in its databases further personal identifying information about these individuals, including any names, addresses, and social security numbers. *See, e.g.* Ex. 3, Klassen Dep. at 38:17-39:23 (describing database in which personal information regarding consumers who are the subjects of SmartMove reports is stored); https://mysmartmove.com/SmartMove-FAQs/renter-faq.html (noting that SmartMove requires consumers to provide a social security number).  From this group of 11,048, the consumers who were the subject of a SmartMove report produced after December 2013 would be subtracted.  Thus, the remaining group of consumers (which will number near 10,000), who were all subjected to the flawed name-only matching logic, will be sent notice once a class is certified.

The subclass of consumers who have a disclosure claim is likewise ascertainable.   TU maintains detailed records regarding consumer requests for file disclosures.  *See, e.g.* Ex. 16 (TU record of Plaintiff's file disclosure request).   These records can be searched using the identifying information of the members of the nationwide class to determine whether each class member made a file disclosure request to TU, and when such requests were made.  Therefore, the identities of the members of the class and subclass are readily ascertainable.

Case No. 3:14-cv-00522-LB

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion for an order certifying this action as a class action on behalf of the proposed national class and subclass defined herein, certifying Plaintiff Amit Patel as a proper representative of the class and subclass, and appointing the law firms of Francis & Mailman, P.C. and Evans Law Firm Inc. as class counsel.

Respectfully Submitted,

Dated: February 13, 2015        **FRANCIS & MAILMAN, P.C.**

By:  /s/     *James A. Francis*
James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Lauren KW Brennan (*pro hac vice*)
100 South Broad Street, 19th Floor
Philadelphia, PA  19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Ingrid M. Evans (CA State Bar No. 179094)
**EVANS LAW FIRM, INC.**
3053 Fillmore Street, #236
San Francisco, CA 94123
Ingrid@evanslaw.com
Tel: (415)-441-8669
Tel: (888) 503-8267

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MOTION FOR CLASS CERTIFICATION** was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by facsimile to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

Dated: February 13, 2015          _/s/ James A. Francis_
                                   Jams A. Francis

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**