United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AMIT PATEL,<br>Plaintiff,<br>v.<br>TRANS UNION, LLC, et al.,<br>Defendants. | Case No. 14-cv-00522-LB<br>**ORDER DENYING DECERTIFICATION**<br>Re: ECF No. 124 |

**INTRODUCTION**

This is a consumer suit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and counterpart California law.[1] The defendants have moved to decertify two plaintiff classes. (ECF No. 124.) The case in a nutshell is this: Named plaintiff Amit Patel alleges that the defendants (operating as a single "consumer reporting agency") disseminated a consumer-information report that wrongly described him as a terrorist, and that ascribed to him a criminal record that he did not have. For this failing, Mr. Patel brings a claim under § 1681e(b) of FCRA.[2]

---

[1] *See generally* (Am. Compl. – ECF No. 41.) Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations refer to the ECF-generated page number at the top of documents. All statutes cited or discussed in this order are within Title 15 of the United States Code, and specifically within FCRA, unless otherwise noted.

[2] "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure [*sic*] maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e(b).

Mr. Patel also alleges that, when he asked the defendants to provide him with the file that they maintained on him, they failed to send him his complete file. In particular, he claims that the defendants failed to send him the background check that they performed on him or the alert that had flagged him as a potential terrorist. This, Mr. Patel claims, violated § 1681g of FCRA.[3] The defendants generally deny these charges.

The court previously certified two national plaintiff classes: an "accuracy" class for the § 1681e(b) claim, and a "disclosure" subclass for the § 1681g claim. *See Patel v. TransUnion, LLC*, 308 F.R.D. 292, 310 (N.D. Cal. 2015). Fuller discussion of the parties' contentions, and the court's Rule 23 analysis, can be found in the certification order. This discussion assumes that the reader is familiar with that order. The court held a hearing on the defendants' motion on October 6, 2016 and now denies that motion.

**ANALYSIS**

The defendants' renewed challenge to the certified classes springs from the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). That case (which is more fully described below) elaborated upon the "concrete injury" that plaintiffs must allege to have Article III standing. *See id.* at 1546-50. The defendants argue that both the accuracy claim and class under § 1681e(b), and the disclosure claim and subclass under § 1681g, fail to allege a sufficiently concrete injury to give the named plaintiff standing — and that both claims thereby fail to invoke this court's subject-matter jurisdiction.

Of the defendants' arguments, however, only the direct "no concrete injury" challenge truly involves *Spokeo* or constitutional standing. The rest of the defendants' arguments, though laced with references to *Spokeo*, are really normal merits challenges: The defendants (in sum) deny that all absent class members can ultimately prove liability and they insist that this bars Rule 23 certification. In short, the rest of the defendant's "*Spokeo*" standing arguments are really Rule 23

[3] "Every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request . . . ." § 1681g(a)(1).

arguments. Those arguments also mostly rehash contentions that the court has already rejected. (The defendants do point to a group of cases that they had not previously discussed. *See infra*, Part 4.1.) Having weighed both the true post-*Spokeo* standing arguments, and the renewed Rule 23 arguments, for the reasons given below the court denies the motion to decertify. The class and subclass will remain certified under the court's order of June 26, 2015.

**1. *Spokeo***

*Spokeo* considered what kind of harm must be alleged, to give Article III standing, where a plaintiff claims that a defendant has violated a statute. *See Spokeo*, 136 S. Ct. at 1546-49. Is the "bare . . . violation" of a statute itself sufficient injury? *See id.* at 1549. Or must the plaintiff show "concrete harm" beyond the "bare" violation? *See id.* Judge Orrick of this court recently gave a digest of *Spokeo*. *See Larson v. TransUnion, LLC*, 2016 WL 367253 (N.D. Cal. Aug. 11, 2016). This discussion largely tracks Judge Orrick's explanation in *Larson*.

"*Spokeo* involved an appeal from a Ninth Circuit decision holding that the plaintiff had adequately alleged Article III standing, regardless of whether he had adequately alleged 'actual harm,' by merit of his claims under 15 U.S.C. § 1681n(a) for willful violations of" FCRA. *Larson*, 2016 WL 367253 at *1 (citing *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412-14 (9th Cir. 2014)). "The Ninth Circuit [had] reasoned that

> "a willful violation claim under section 1681n(a) 'does not require a showing of actual harm," and where a "statutory cause of action does not require proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages."

*Larson*, *supra*, at *1 (quoting *Robins*, 742 F.3d at 413). In the situation before it, the Ninth Circuit had held that the FCRA plaintiff alleged sufficient Article III injury because he claimed that the defendant had "violated *his* statutory rights, not just the rights of other people," and because his "personal interests in the handling of his credit information [were] individualized rather than collective." *Larson*, *supra*, at *1 (quoting *Robins*, 742 F.3d at 413) (emphasis in original).

"The Supreme Court held that this analysis was 'incomplete.'" *Larson*, *supra*, at *1 (quoting *Spokeo*, 136 S. Ct. at 1545). It reminded readers that Article III standing demands an injury that is

"both concrete *and* particularized." *Spokeo*, 136 S. Ct. at 1545 (emphasis in original). The Ninth Circuit had addressed the "particular" nature of the alleged injury but had "overlooked" the "concreteness" requirement. *See id.*

The heart of *Spokeo* elaborates that latter requirement. Most fundamentally,

> Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549. A "concrete injury," *Spokeo* explained, "is one that 'actually exist[s],' meaning that it is 'real, and not abstract,' but 'not . . . necessarily . . . tangible.'" *Larson*, *supra*, at *1 (quoting *Spokeo*, 136 S. Ct. at 1548-49) (quotation marks omitted in *Larson*). The *Spokeo* Court "identified two things that are 'instructive' in determining whether an intangible injury rises to the level of concrete injury":

> first, "whether [the] alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit," and second, "the judgment of Congress," in that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." The Court also emphasized that concreteness may be established by "the risk of real harm."

*Larson*, *supra*, at *1 (citations omitted) (quoting *Spokeo*, 136 S. Ct. at 1549). *Spokeo* then offered examples of sufficiently concrete (if intangible) harm. *See Spokeo*, 136 S. Ct. at 1549-50. It pointed to "libel" and "slander per se." *Id.* at 1549. It then cited cases in which a plaintiff's "inability to obtain information" whose disclosure Congress had mandated constituted "sufficient injury in fact to satisfy Article III." *Id.* at 1549-50 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) (voters' "inability to obtain information" that "Congress had decided to make public") and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989) (advocacy groups' "failure to obtain information subject to disclosure under the Federal Advisory Committee Act")). In cases like these, "the violation of a procedural right granted by statute" was deemed "sufficient . . . to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. "In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).

"Turning to the plaintiff's claims under the FCRA," *Spokeo* "acknowledged that Congress 'plainly sought to curb the dissemination of false information' in passing the FCRA." *Larson*, *supra*, at *2 (quoting *Spokeo*, 136 S. Ct. at 1550). Still, "a violation of one of the FCRA's procedural requirements may result in no harm." *Spokeo*, 136 S. Ct. at 1550. For

> not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* The *Spokeo* Court "express[ed] no view about any other types of false information." *Id.* at 1550 n. 8. It remanded the case to the Ninth Circuit so that the latter court could decide whether the *Spokeo* plaintiff had alleged an adequately concrete injury. *Id.* at 1550.

### 1.1 Accuracy Claim

We can now apply *Spokeo* to the certified claims and classes. Both, in this court's view, allege sufficiently concrete injuries-in-fact to yield Article III standing.[4] The court sees little difficulty in concluding that the alleged inaccuracies — being wrongly branded a potential terrorist, or wrongly ascribed a criminal record — are themselves concrete harms. This is fully in line with *Spokeo's* express analysis. There, in describing cases in which the violation of a statutory right "can be sufficient . . . to constitute injury in fact," the Court analogized to torts for which the law has "long permitted recovery" — picking out, specifically, the torts of "libel" and "slander per se." *Spokeo*, 134 S. Ct. at 1549. That these torts share something crucial with the inaccuracies alleged here, in terms of the operative injury to reputation, is what no one will deny. Conversely put, a report that misidentifies someone as a terrorist or criminal "is not as benign as an incorrect zip code." *See Larson*, 2016 WL 4367253 at *3 (quoting *Hawkins v. S2Verify*, 2016 WL 3999458, *5-6 (N.D. Cal. July 26, 2016)); *see Spokeo*, 134 S. Ct. at 1550.

---

[4] The defendants have not challenged the alleged injuries as insufficiently "particular." In the court's view, the harm that the plaintiffs allege is adequately particular to satisfy Article III. The named plaintiff, and the absent class, claim that the defendants failed to prevent errors in *their own* consumer information, and did not disclose *their own* information *to them*. *See Spokeo*, 136 S. Ct. at 1548 (discussing particularity requirement).

It does not matter that the defendants disseminated the mistaken information narrowly: only to users of their subscription service (like Mr. Patel's prospective landlord), rather than, say, to local newspapers or a publicly accessible website. The core harm is in the sharing of erroneous and inherently damning information about the plaintiff — regardless of how widely it is broadcast. How widely such information is shared may well affect the extent of the harm. But there is harm in the first passing on of such derogatory untruths. And, at least in this context, how widely the erroneous information was shared speaks in no obvious way to the threshold "concreteness" of the harm that such information caused, or "risk[ed]" causing. *See Spokeo*, 134 S. Ct. at 1549 (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) (suggesting that "risk of real harm" can "satisfy the requirement of concreteness")).

Nor does it matter to the question of standing that Mr. Patel's prospective landlord did not use the incorrect information to deny Mr. Patel's rental application. That may be a causation argument responsive to some aspect of Mr. Patel's claim. Whatever use the landlord did or did not make of the erroneous information, again, the error itself, wrongly branding someone a terrorist and criminal, constitutes concrete injury to trigger standing.

**1.2 Disclosure Claim**

The disclosure claim also satisfies Article III. It is true, as the defendants emphasize, that one cannot merely point to the alleged statutory violation — the failure to disclose information — and immediately conclude that the plaintiffs have standing. That "bare," reflexive assessment would miss *Spokeo's* whole point.

Yet *Spokeo* itself indicates that, in some contexts, failing to provide information whose disclosure Congress has mandated can alone embody "concrete injury" that yields standing. *Spokeo*, 136 S. Ct. at 1549 (citing *Akins*, 524 U.S. at 20-25 (voters' "inability to obtain information" that "Congress had decided to make public") and *Public Citizen*, 491 U.S. at 449 (plaintiffs' "failure to obtain information subject to [statutory] disclosure")). In such cases, "the violation of a procedural right granted by statute" can be "sufficient . . . to constitute injury in

fact." *Spokeo*, 136 S. Ct. at 1549. "In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).

This is not arbitrary, inconsistent, or conclusory. It reflects the fact that Article III standing "is a key part of the separation of powers principles that are fundamental to our republic." *See In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 923 (N.D. Cal. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)). More particularly, it recognizes that courts — without abandoning their own coordinate role or their responsibility to enforce a constitutional minimum —nonetheless take as "instructive and important" the "judgment of Congress" as to where constitutionally sufficient injury lies, both "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements," and because, ultimately, "'Congress has the power to define injuries . . . that will give rise to a case or controversy where none existed before.'" *See Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580) (in concurrence).

There is good reason to view the non-disclosure alleged here as within that family of claims in which *Spokeo* discerns "concrete" Article III harm. A main purpose of FCRA, after all, is "to ensure 'fair and accurate credit reporting.'" *Spokeo*, 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681(a)(1)). Toward that end, with FCRA, "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Spokeo*, 136 S. Ct. at 1550. Requiring consumer-reporting agencies to disclose, "upon request, . . . [a]ll information in [a] consumer's file," § 1681g(a)(1), empowers a consumer to monitor her file for incorrect data. Section 1681g's disclosure requirement thus seems exactly a device "designed to decrease [the] risk" that a credit-reporting agency will "disseminat[e] . . . false information." But a consumer cannot monitor her file for falsity if she is not given the relevant information. That impediment, that non-disclosure, is thus a real injury. At the very least, preventing a consumer from monitoring her file presents a "risk of real harm" of exactly the type that FCRA seeks to prevent (i.e., the dissemination of incorrect information); and this risk can itself "satisfy the requirement of concreteness." *See Spokeo*, 136 S. Ct. at 1549-50. So it is not simply the "bare . . . violation" that predicates Article III injury in this context; it is the hindering of a consumer's ability to monitor

and correct information about herself. Finally in this vein, the harms from non-disclosure and inaccuracy may be practically inseparable. Which is to say, a failure to disclose will seem all the more injurious where it is linked to undeniably harmful false information. If that is so, then it may be appropriate to finish this part of the inquiry by recalling that the information disseminated here was not "entirely accurate." *Id.* at 1550. And that, unlike an "incorrect zip code," the alleged inaccuracies were of a nature to "cause harm" themselves or at least to "present [a] material risk of harm." *Id.* at 1550.

Taking all this into view, the court holds that the § 1681g "disclosure" claim alleges a sufficiently "concrete injury" under Article III.

**2. Recent Cases: *Larson*; *Hawkins*; *Nokchan***

**2.1 *Larson***

The recent decision in *Larson*, *supra*, is instructive. Writing in light of *Spokeo*, Judge Orrick there held that a named plaintiff had Article III standing to sue TransUnion under FCRA § 1681g, where his credit report contained a "blank space" for "Possible OFAC Match" — which is one version of the same "terrorist alert" that is at issue here. *See Larson*, *supra*, at *1-2. Having reached that standing decision, Judge Orrick then certified a plaintiff class. *See id.* at *3-4. In so doing, Judge Orrick rejected the same standing and certification arguments that the TransUnion defendants make here. In this case, indeed, Mr. Patel has a stronger case for standing than did the *Larson* plaintiff.

Compared with Mr. Patel's claim, the *Larson* plaintiff's § 1681g claim rested on more uncertain factual ground. The *Larson* plaintiff claimed that TransUnion had violated § 1681g's "clear and accurate disclosure"[5] requirement by providing him with a credit report that contained an item called "Possible OFAC Match." *See Larson*, *supra*, at *2. More specifically, the *Larson* plaintiff alleged that this item violated § 1681g in two ways:

[5] Again, § 1681g's actual text requires consumer-reporting agencies to "clearly and accurately disclose" the consumer's file information.

> First, because the OFAC disclosure displayed *only a blank space* for the "Possible OFAC Match," it *left him "uncertain* as to whether [Trans Union] [was] reporting [him] as a match to an individual on the OFAC database," thereby causing him to suffer emotional distress. . . . Second, because the OFAC disclosure was described as "Additional Information" that was "provided as a courtesy" and that was not part of the credit report, the OFAC disclosure "le[ft] [Larson] and the class *confused* as to whether they had the right to dispute [the OFAC] information."

*Id.* at *2 (quoting record) (emphases added). TransUnion argued that Larson could "[]not establish standing under *Spokeo*, and that even if he could, class certification would still be inappropriate because *Spokeo* precludes him from establishing ascertainability, predominance, and superiority." *Larson*, *supra*, at *1.

Judge Orrick rejected both contentions. As to standing, Judge Orrick held that Larson's § 1681g claim was "based on something more than a 'bare procedural violation' — such as the 'dissemination of an incorrect zip code' — that cannot 'cause harm or present any material risk of harm.'" *Id.* at *3 (quoting *Spokeo*, 136 S. Ct. at 1549-50). "To the contrary,

> his claim is based on the sort of "informational" injury that the *Spokeo* Court implicitly recognized in citing *Public Citizen* and *Akins*, and that a number of other cases, from both before *Spokeo* and after, have found sufficient to support Article III standing.

*Larson*, *supra*, at *3 (citing cases). Agreeing that "the OFAC disclosure 'is not as benign as an incorrect zip code,'" Judge Orrick found it "not difficult to imagine how" that disclosure "could work . . . concrete harm." *Id.* (quoting *Hawkins*, *supra*, at *5-6 ["not as benign"], and *Spokeo*, 136 S. Ct. at 1550 ["imagine . . . concrete harm"]). Judge Orrick then turned aside TransUnion's certification arguments:

> Given that Larson continues to have Article III standing to bring this case despite *Spokeo*, Trans Union's challenges to . . . ascertainability, predominance, and superiority also fail. Each of those challenges is based on Trans Union's contentions that the class should not be certified because absent class members lack Article III standing for the same reasons as Larson, and, similarly, because individualized determinations will have to be made with respect to the concreteness of each absent class member's injury. In a class action, however, "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *accord Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978-79 (9th Cir. 2011).

*Larson*, *supra*, at *4.

For essentially the reasons that drove the *Larson* decision, Mr. Patel and the class have Article III standing in this case. If anything, Mr. Patel's allegations of harm from the erroneous "terrorist alert" and criminal record are more concrete than those in *Larson*. First, in this case, there was not "only a blank space" that that created "uncertain[ty]" about whether Mr. Patel was being identified as a possible terrorist. *See id.* at *2. He was indeed so identified. Second, unlike in *Larson*, the report here was not sent to Mr. Patel himself, but to a third party. This court thinks that, even more so than in *Larson*, in this case Mr. Patel has established "concrete injury" for purposes of Article III. (The Rule 23 aspect of *Larson* is discussed below. *Infra*, Part 3.)

**2.2 *Hawkins***

The post-*Spokeo* decision in *Hawkins*, *supra* — by Judge Alsup of this court — is also relevant. Judge Alsup there held that a plaintiff had standing where he alleged that the defendant consumer-reporting agency had disseminated (to a potential employer) his outdated criminal records in violation of FCRA. *Hawkins*, 2016 WL 3999458 at *1, 5-6.[6] Judge Alsup held that this was "in no way akin" to the "merely procedural" violations that *Spokeo* said would not yield Article III injury. *Id.* at *5-6. Having held that the named plaintiff had standing, and was therefore an "adequate" class representative, Judge Alsup also certified a nationwide plaintiff class. *Id.* at *2-7. In this case, Mr. Patel similarly claims that the TransUnion defendants included in his report, both criminal records that were not his, and a vacated misdemeanor conviction. *See Patel*, 304 F.R.D. at 295. As in *Hawkins*, that alleges concrete harm under *Spokeo*.

**2.3 *Nokchan***

By contrast, this case is unlike the recent decision in *Nokchan v. Lyft, Inc.*, 2016 WL 5815287 (N.D. Cal. Oct. 5, 2016). In *Nokchan*, Chief Magistrate Judge Spero held that a FCRA plaintiff

[6] "Under the FCRA, consumer reports may not contain information regarding . . . 'records of arrest that . . . antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.'" *Hawkins*, 2016 WL 3999458 at *1 (quoting 15 U.S.C. § 1681c(a)(2)).

lacked Article III standing. *Id.* at *1, *4-9. The *Nokchan* plaintiff had applied for a job with defendant Lyft. As part of his application, he was required to "fill out and sign a document requiring [a] background check." *Id.* at *1. He claimed that, in this process, Lyft violated FCRA in two ways. First, because "disclosures required under the FCRA were embedded in" the background-check authorization, rather than appearing in a "stand-alone document." *Id.* Second, because "Lyft failed to inform him . . . that he had a right to request a summary of his rights under the FCRA." *Id.* The defendant moved to dismiss the plaintiff's complaint for want of Article III standing. *Id.*

Magistrate Judge Spero thoroughly assessed post-*Spokeo* case law and concluded that the plaintiff indeed lacked standing. *See id.* at *4-9. Judge Spero wrote:

> [The plaintiff] has not alleged that he suffered any real harm as a result of the fact that he did not receive required disclosures in a separate document or that he did not receive a summary of his rights under the FCRA. In particular, he does not allege[] that as a result of Lyft's failure to provide the disclosures in a separate document or to notify him of his right to receive a summary of his legal rights he was confused about his rights or that he would not have consented to the background checks had he understood his rights. Nor does he allege that he was harmed by the background check in any way. Rather, based on the allegations in the complaint, [the plaintiff] was hired by Lyft after he successfully completed its background investigation and he continues to work for Lyft. Under these circumstances, the Court can find no real harm, or a threat of such harm, that gives [the plaintiff] standing under Article III . . . .

*Id.* at *4.

This court agrees that *Nokchan* reached the correct conclusion on the facts before it. The *Nokchan* plaintiff alleged "bare" failures to comply with "procedural" FCRA requirements that themselves carry no necessary injury. Nor, as the *Nokchan* court explained, had the plaintiff identified any concrete injury flowing from the raw procedural missteps. Mr. Patel's alleged injuries are substantively different. As described above, he alleges statutory violations that themselves are harmful, or that at least carry a "risk of real harm." He thus alleges sufficiently concrete injury and has constitutional standing.

United States District Court
Northern District of California

**3. The Defendants Conflate Jurisdictional and Merits Analyses**

The defendants also contend that, whatever the court's standing conclusion, *Spokeo* requires a new look at Rule 23 arguments that the court has already considered and rejected — in particular, under the "predominance" and "ascertainability" heads of Rule 23. (ECF No. 124 at 23.) The primary expression of this *Spokeo–cum–*Rule 23 approach may lie in the defendants' arguments about class "overbreadth" and the possibility that some absent class members will prove to be uninjured, or (more broadly stated) will not be able to establish liability. In one place the defendants thus write:

> [G]iven the definition and content of the classes, the *Spokeo* inquiry is determinative. As *Spokeo* now makes clear, and under established Rule 23 caselaw, the certified classes are overbroad because they include uninjured class members.

(ECF No. 124 at 23.)

This raises an overarching problem with the defendants' decertification analysis: Throughout their discussion, the defendants conflate Article III standing analysis with merits analysis. Whether the plaintiffs can prove liability is one question; whether they are claiming a sufficient Article III injury is another. *Spokeo* does not turn every Rule 23 issue into a standing issue; put differently, *Spokeo* does not infuse Article III considerations throughout Rule 23. In the end, *Spokeo* does not revive Rule 23 arguments that have already been rejected.

The defendants essentially invoke *Spokeo* to rehash Rule 23 arguments that they made before. The court could dispose of these arguments, to a degree, with a sweeping stroke. (As *Larson* did facing almost identical post-*Spokeo* certification arguments. *See Larson*, *supra*, at *4 ["Given that Larson continues to have Article III standing to bring this case despite *Spokeo*, Trans Union's challenges to . . . ascertainability, predominance, and superiority also fail."].) If, as the defendants say, its decertification arguments all follow from *Spokeo*, if they are "all premised upon the Supreme Court's ruling in *Spokeo*" (ECF No. 124 at 11), then it should also follow that, because the defendant's *Spokeo* analysis fails, so too fail its knock-on arguments to unwind the certified classes. At least, we should expect that those latter arguments will fail absent some good reason

explaining how *Spokeo* can both indicate the plaintiff's standing and yet, in some way, undermine certification. That latter argument, though, never materializes.

The court has nonetheless considered the defendants' present arguments in a more finely grained way, has weighed too the additional cases that the defendants point to, and has decided that nothing in this material warrants decertification. Nothing in the defendants' current Rule 23 arguments change the court's existing certification analysis.

**4. New Rule 23 Challenges Considered on Their Own**

The defendants raise genuine Rule 23 arguments mainly in identifying a batch of new cases that discuss "uninjured" plaintiffs and "overbroad" classes. (ECF No. 124 at 24-28; ECF No. 127 at 15-16.) More specifically, these cases, as the defendants use them, address the possibility that some absent plaintiffs may ultimately fail to prove liability. (Though, to a more limited degree, these cases also discuss classes that are overbroad because they contain members who, *by definition*, cannot be among those who may be entitled to recovery — and they discuss this topic in a way that *refutes* rather than supports the defendants' decertification arguments. *See Moore v. Apple, Inc.*, 309 F.R.D. 532, 541-43 (N.D. Cal. 2015).) Viewing these more through the lens of Rule 23 than from the perspective of Article III, the court considers these cases and the defendants' attendant analysis.

**4.1 New "Uninjured Absent Plaintiff" Cases**

Most of the defendants' new "uninjured absent plaintiff" cases predate *Spokeo*. *See* (ECF No. 124 at 24-28.) So, again — and perhaps especially in this part of their analysis — the defendants are not applying the lessons of *Spokeo*; they are simply taking another run at Rule 23 certification. (As they are certainly entitled to do.) These cases moreover mostly restate Rule 23 arguments that the court has already rejected. None of them convinces the court that it should overturn its earlier analysis and decertify the plaintiff classes.

Only one of the cases in this group — *Sandoval v. Pharmacare US, Inc.*, 2016 WL 3554919 (S.D. Cal. June 10, 2016) — warrants more extended treatment. In *Sandoval*, as the defendants

correctly write, the district court "denied class certification . . . where . . . the proposed class included uninjured class members." (ECF No. 124 at 26) (citing *Sandoval*, *supra*, at *4). Comparing the class definition with the scope of the class's claim, the *Sandoval* court held that there was a "substantial mismatch between [the named] Plaintiffs and the classes they propose to represent." *Sandoval*, *supra*, at *8. In *Sandoval*, that "mismatch" grew in crucial part from the named plaintiffs' bid to apply California law to a nationwide class of plaintiffs. *See id.* at *6-7. This case does not have such a problem. The certified claims here will apply federal law (FCRA) to nationwide classes. It is also important to recognize that the "overbreadth" problem in *Sandoval* thus grew, not from absent members purported inability to ultimately prove their claims — which is the problem that the defendants in this case identify — but rather from a more innate disjunction between the class definition and the claims that class would pursue. Which raises our next and final issue, one that pervades the defendants' decertification arguments, the question of the allegedly "overbroad" plaintiff classes.

**4.2 The "Overbroad" Disclosure Subclass**

Class "overbreadth" arises most pointedly in the defendants' treatment of the § 1681g disclosure subclass. The defendants argue that the disclosure subclass "is overbroad because it fails to account for the [subclass members'] varying requests for information, and [for] the fact that many sub-class members received all that they wanted and requested." (ECF No. 127 at 18.) "The § 1681g subclass, as currently defined," the defendants write, "clearly includes class members who were not injured," because they "sought separate information held by the separate [defendant] entities, and . . . received all that was requested of Trans Union." (ECF No. 124 at 29-30.) (The latter entity being "[t]he only Defendant facing the § 1681g claim." (*Id.* at 30.)) "Therefore, under *Spokeo*," these class members "suffered no concrete injury and thus are not properly part of the certified subclass." (*Id.*)

This argument does not warrant decertification. The defendants here slightly reword an argument that, under the heads of commonality and typicality, the court has already rejected. *See Patel*, 308 F.R.D. at 304-06. The first problem with this argument is that it rests on accepting the

United States District Court
Northern District of California

defendants' view of the merits of this case. In particular, the defendants assume the correctness of their position that, when a plaintiff asked for certain information from Trans Union, specifically, the defendants were not thereby obligated to turn over all the information that both Trans Union and TURSS had on that plaintiff. Even if the defendants prove to be correct in this view, it is a question that can be resolved uniformly for the whole disclosure subclass. The effect of that conclusion on segments of the disclosure subclass can — judging from what the court has seen — likewise be handled in a predominately uniform way. For example, if, as the defendants contend, a merits inquiry will show that plaintiffs who requested a credit report from annualcreditreport.com were entitled to only that report from Trans Union and nothing more (*see* ECF No. 124 at 30), that is a question that can be addressed fairly mechanically. The fraction of the subclass to which this defense applies — whether "significant" (*id.*) or trifling — can be denied recovery under § 1681g. In sum, the plaintiff has shown that the disclosure claim admits of mainly uniform adjudication; the defendants have not shown that it does not.

Furthermore, a class is not fatally "overbroad," and is not subject to being decertified, merely because, on the defendants' view of the merits, some absent class members may not be able to establish liability. Rule 23 does not demand that a whole proposed class prove its case prospectively — or else no class can be formed. Put differently, and perhaps put most directly, uninjured absent plaintiffs do not necessarily defeat certification. The court pointed this out in its previous certification order. *See Patel*, 308 F.R.D. at 308 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, *8-9 (N.D. Cal. June 20, 2013) (report and recommendation adopted 2013 WL 5391159 (N.D. Cal. Sept. 19, 2013) (citing cases) ("[A] class will often include persons who have not been injured by the defendant's conduct but [this] . . . does not preclude class certification.")).

The court also thinks that the defendants use the concept of class "overbreadth" in a way that confuses more than it clarifies. (Though, in fairness to the defendants, it is a term that the case law does not handle with precision.) Maybe it is a more a question of degree than of kind, but the notion of class overbreadth seems best reserved, not for cases (like this) in which some absent plaintiffs may ultimately fail to prove their case, but for those situations in which a class definition

United States District Court
Northern District of California

innately sweeps past even the conceivable bounds of liability. Such as where a nationwide class was certified gathering together "all persons whose source of [healthcare] payment is public assistance" — even though the "lawsuit was litigated and decided under" only one state's Medicaid program. *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997). Or where the plaintiffs' claims were against a public defender's office — but the class had been defined to include persons who had proceeded *pro se* or had been represented by attorneys other than public defenders. *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007).[7]

This distinction — between classes that are overbroad "by definition," and those in which "by happenstance" some absent members may ultimately fail to prove liability — is usefully brought out by Judge Koh's discussion in *Moore*, 309 F.R.D. at 541-43. The defendants cite *Moore* in their favor. (ECF No. 127 at 15.) As this court reads it, however, *Moore's* class-overbreadth analysis generally *refutes* the defendants' arguments in this case.

**CONCLUSION**

Nothing in the defendants' motion for decertification convinces the court that either: (1) the named plaintiff lacks constitutional standing — even in light of *Spokeo*; or (2) the existing plaintiff class and subclass should for any reason be decertified. The court therefore denies the defendants' decertification motion.

This disposes of ECF No. 124.

**IT IS SO ORDERED.**

Dated: October 21, 2016

LAUREL BEELER
United States Magistrate Judge

[7] Both these cases were drawn from W. Rubenstein et al., *Newberg on Class Actions* §§ 23:10, 25:7 (4th ed.).