UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AMIT PATEL,<br><br>    Plaintiff,<br><br>    v.<br><br>TRANS UNION, LLC, et al.,<br><br>    Defendants. | Case No. 14-cv-00522-LB<br><br>**ORDER APPROVING PRELIMINARY SETTLEMENT**<br><br>Re: ECF No. 145 |

## INTRODUCTION

This is a consumer suit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and counterpart California law.[1] Named plaintiff Amit Patel alleges that the defendants (operating as a single "consumer reporting agency") disseminated a consumer-information report that wrongly described him as a terrorist, and that ascribed to him a criminal record that he did not have.[2] For this alleged conduct, Mr. Patel brings a claim under § 1681e(b) of FCRA.[3] Mr. Patel

---

[1] *See generally* Am. Compl. – ECF No. 41. Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations refer to the ECF-generated page number at the top of documents.

[2] *Id.*

[3] "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure [*sic*] maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e(b).

ORDER – No. 14-cv-00522-LB

also alleges that, when he asked the defendants to provide him with the file that they maintained on him, they failed to send him his complete file, in particular, a background check that flagged him as a potential terrorist. This, Mr. Patel claims, violated § 1681g of FCRA.[4]

The court certified two national classes for the two class claims asserted under the FCRA: an "accuracy" class for the § 1681e(b) claim, and a "disclosure" subclass for the § 1681g claim. *See Patel v. TransUnion, LLC*, 308 F.R.D. 292, 310 (N.D. Cal. 2015). The two class claims are Counts I and VI (misnumbered "Count V") in the Amended Complaint. The court stayed the case until the Supreme Court decided *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and it denied the defendants' subsequent motion to decertify the class.[5]

The parties then settled their case. The settlement covers Counts I and VI (misnumbered as "Count V") in the Amended Complaint.[6] The parties stipulated to the dismissal with prejudice of Mr. Patel's individual claims against the defendants: Counts II, III, IV, V (misnumbered as second Count IV), and VII (misnumbered as count VI).[7] The plaintiff moves for preliminary approval of the proposed class-action settlement.[8] The court grants the motion.

## STATEMENT

**1. Other Information About the Lawsuit to Date**

In June 2015, the court certified the following class and subclass:

> All natural persons residing in the United States who, from February 2012 until December 2013, were the subjects of Trans Union Rental Screening Solutions SmartMove reports containing at least one item of "Alert List" information.
>
> All natural persons residing in the United States who, from February 2012 until December 2013, were the subjects of Trans Union Rental Screening Solutions

---

[4] "Every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request . . . ." § 1681g(a)(1).

[5] Order – ECF No. 116; Order – ECF No. 132.

[6] Stipulated Dismissal – ECF No. 142; Settlement Agreement – ECF No. 145-1.

[7] Stipulated Dismissal – ECF No. 142.

[8] Motion – ECF No. 145.

SmartMove reports containing at least one item of "Alert List" information who requested a file disclosure from, and were sent a disclosure by, Trans Union, LLC.[9]

After the court denied decertification in October 2016, the court approved notice — and notice was given — to the class and subclass.[10] The defendants provided a list of names for 10,505 class members and 2,193 subclass members.[11] RSM US LLP ("RSM"), a third-party claims administrator, determined that there were 10,501 class members and provided notice via first-class mail.[12] The United States Postal Service ("USPS") returned 16 notices with a forwarding address, and RSM mailed the notices to the updated addresses.[13] The USPS returned 2,027 notices without forwarding addresses, and RSM obtained new addresses and re-mailed notices to 1,849 addresses.[14] The USPS returned 243 addresses as undeliverable.[15] RSM calculates that notice reached 96% of the class.[16] Two class members requested exclusion.[17]

The parties engaged in substantial discovery, phased to address class issues first, and then — after the court certified the classes — merits issues.[18] They conducted written discovery and eleven depositions, including the defendants' witnesses, Mr. Patel, and two third parties.[19] They had two full-day JAMS mediation sessions, one in San Francisco in January 2015 and a second in Philadelphia in May 2017.[20] The second resulted in a term sheet reflecting the parties' agreement to settle the litigation.[21] In June 2017, the parties notified the court about their agreement.[22] The

---

[9] 308 F.R.D. at 310.

[10] ECF Nos. 133, 134.

[11] Motion – ECF No. 145 at 10.

[12] RSM Decl. – ECF No. 145-2, ¶ 3–4.

[13] *Id.* ¶ 5(b).

[14] *Id.* ¶ 5(a).

[15] *Id.*

[16] *Id.*

[17] ECF No. 145-3.

[18] Motion – ECF No. 145 at 8–9; *see* Scheduling Order – ECF No. 123.

[19] Motion – ECF No. 145 at 12.

[20] *Id.* at 11, 12.

[21] *Id.*

[22] ECF No. 139.

ORDER – No. 14-cv-00522-LB  3

parties exchanged drafts and engaged in additional settlement negotiations, and ultimately, they finalized the settlement agreement.[23] The plaintiff then filed an unopposed motion for preliminary approval.[24]

**2. Settlement Terms**

The settlement agreement resolves the claims of the certified class and subclass. In summary form, the settlement is as follows.

The defendants will establish a fund of $8 million, with $37,000 to be paid to the Settlement Administrator within ten business days of the preliminary approval order and the balance of $7,973,000 30 days after the settlement agreement's Effective Date.[25] There are two settlement pools that the plaintiff represents are consistent with class discovery: (1) the Automatic Payment Pool and (2) the Claims Made Pool.

**2.1 Automatic Payment Pool**

$4,202,000 is allocated to the Automatic Payment Pool. Class members automatically receive a $400 check without submitting a claim.[26] The check must be cashed within 60 days or it is null and void, and the funds then fall into the Claims Made Pool.[27]

**2.2 Claims Made Pool**

Class members can submit a claim to be paid a *pro rata* share of the Claims Made Pool.[28] After cost of notice and settlement administration, the parties estimate that the pool will be more than $1 million.[29]

---

[23] *Id.* at 11–12; Settlement Agreement – ECF No. 145-1.

[24] Motion – ECF No. 145; Statement of Non-Opposition – ECF No. 147.

[25] Settlement Agreement §§ 1.22, 4(a)(ii). Capitalized terms in this order are defined terms in the Settlement Agreement.

[26] *Id.* § 10(a); Motion – ECF No. 145 at 13.

[27] Settlement Agreement § 10(a).

[28] *Id.* §§ 8, 10(b).

ORDER – No. 14-cv-00522-LB   4

**2.3 Service Award, Attorney's Fees and Costs, Administration Costs, and *Cy Pres* Award**

The settlement provides for a service award to Mr. Patel of $10,000.[30] The plaintiff's counsel may apply for — and the defendants will not object to — attorney's fees and reimbursable expenses in an amount not to exceed one-third of the settlement fund.[31]

There is no reversion to the defendants. If any funds remain following payment of checks, up to $10,000 may be paid to the Settlement Administrator to defray reasonable Notice and Administration Expenses that the settlement administrator actually incurs.[32] Remaining amounts will be distributed to the *cy pres* recipients Consumer Federation of California, Credit Builders Alliance, and the Jump$tart Coalition for Personal Financial Literacy.[33]

**2.4 Release**

The settlement has a release limited to claims that were asserted or could have been asserted relating to the class claims only.[34] Mr. Patel will provide a general release.[35]

**2.5 Administration**

The settlement fund will fund all costs of notice and administration. After evaluating bids, RSM was chosen as the Settlement Administrator.[36] It handled the class-notice process after class certification. (*See supra*.) It will mail and re-mail the settlement notice, send out the CAFA notice, set up a settlement website and toll-free number, receive and process claims forms, handle the

---

[29] Motion – ECF No. 145 at 13.
[30] Settlement Agreement § 9(b).
[31] *Id.* §§ 1.24, 9(a).
[32] *Id.* § 4(b)(vi).
[33] *Id.* § 4(c).
[34] *Id.* § 11(a).
[35] *Id.* § 11(b).
[36] *Id.* § 1.43.

ORDER – No. 14-cv-00522-LB    5

payments to class members, and report to the parties and the court before the final approval hearing.[37]

## ANALYSIS

### 1. Jurisdiction

The court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### 2. Certification of Class

The court previously certified the class and subclass set forth in the Statement under Rule 23. Excluded from the class are the two individuals who submitted the requests for exclusion. (*See supra*.)

### 3. Preliminary Approval of Settlement and Leave to File Amended Complaint

The approval of a class-action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of

---

[37] *Id.* § 5.

ORDER – No. 14-cv-00522-LB        6

discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see, e.g., Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary approval is appropriate.

First, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with experienced mediators and after extensive settlement discussions involving sophisticated counsel for all parties.

Second, the parties engaged in substantial fact discovery regarding liability and damages.

Third, litigation poses risk. As the plaintiff's counsel points out, establishing liability entails risk.[38] Liability is not strict and depends on a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n and 1681o. Defendants contest liability. Even if the plaintiff establishes liability, there are issues about whether the plaintiff and class members have sustained damages and how to value any damages.[39] The risks are real and likely would be fought through trial and appeal.[40]

Fourth, settlement provides real cash benefits to the class. Statutory damages are between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A). Class members receive an automatic check of $400, and they can submit a claim for a *pro rata* share of the Claims Made Pool. The benefits are substantial,

---

[38] Motion – ECF No. 145 at 21.
[39] *Id.*
[40] *Id.*

especially given that unless there is a finding of willful noncompliance, the plaintiff and class must establish actual damages.[41]

Fifth, the settlement has no obvious deficiencies. There is no reversion. The *cy pres* distribution appears to account for and have a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011).

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that preliminary approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court thus approves the settlement agreement preliminarily and authorizes notice to the class.

The court will address the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five percent is a benchmark in common fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (twenty-five percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

.

**4. Appointment of Class Representative, Class Counsel, and Claims Administrator**

The court previously certified the class and subclass, appointed Mr. Patel as class representative, and appointed his lawyers as class counsel. *Patel*, 308 F.R.D.

The court designates and approves RMS as the claims administrator. It will administer the settlement subject to the oversight of the parties and this court, as described in the settlement agreement. Upon entry of this order, RMS will proceed with the Settlement Notice Plan.

---

[41] *Id.* at 21–22 (citing and analyzing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69 (2007)).

## 5. Class Notice

The court approves the class notice and plan. The court finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. The forms of notice (the post-certification notice and the proposed notice of the settlement) fairly, plainly, accurately, and reasonably provides class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[42] *See* Fed. R. Civ. P. 23(c)(2)(B).

## 6. Compliance with Class Action Fairness Act

The defendants prepared and mailed (on September 25, 2017) the notice that must be served under the Class Action Fairness Act of 200, 28 U.S.C. § 1715, to the appropriate federal and state officials.[43] The final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715. RMS will mail the CAFA notice, and the defendants' counsel will file the certificate of service with the court.[44]

* * *

---

[42] Notice – ECF No. 145-1 at 33–42.
[43] Notice – ECF No. 152.
[44] *Id.*

ORDER – No. 14-cv-00522-LB 9

## 7. Procedures for Final Approval Hearing

### 7.1 Deadlines and Hearing

The time frames are triggered by this order granting preliminary approval.

| Event | Date |
|---|---|
| Preliminary Approval Order | Day 0 |
| Settlement Fund Established (Initial $27,000) | 10 business days |
| Notice to Class, Claims Forms Mailed | Day 28 |
| Claims Submission Deadline | Day 118 |
| Objection Deadline | Day 118 |
| Deadline to file notice of intent to appear at Final Approval Hearing | 10 business days before final hearing |
| Deadline For Motion for Final Approval and Fees | 14 days before final hearing |
| Due Diligence Declaration for Administrator | 14 days before final hearing |
| Final Approval Hearing | Day 133 ( March 8, 2018, 9:30 a.m.) |

### 7.2 Final Approval Hearing

At the hearing, the court will consider whether to: (1) finally approve the settlement agreement and the releases in it; (2) finally approve the enhancement awards; and (3) award attorney's fees and costs to class counsel. The court may, for good cause, extend any of the deadlines in this order or continue the final approval hearing without further notice to the settlement-class members.

### 7.3 Objections To the Settlement

Under the terms of the settlement agreement, a Class Member must provide a Notice of Objection and send it via first-class mail to the Clerk of Court, Class Counsel, and the defendants' counsel. The Notice may be filed with the court at the following address: Clerk of the Court, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102. The Notice must be postmarked no later than the Objection Deadline (set forth in the chart above). The objector must personally sign the objection and state the following:

i. the caption of the Litigation;

ii. the full name, address and telephone number of the Class Member objecting to the Settlement;

iii. a detailed statement of each objection asserted, including the grounds for objection and reasons for appearing and being heard, together with any documents such Class Member wishes to be considered in support of the objection;

iv. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or Fee Petition;

v. any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

vi. the identity of all counsel representing the objector who will appear at the Final Approval Hearing; and

vii. all relief sought.

An objector who wants to be heard at the Final Approval Hearing must, no later than ten business days before the hearing, file a notice of intent to appear with the Clerk's Office and provide Class Counsel and the defendants' counsel with copies of the notice. An individual must exercise the right to object individually and — except in the case of a deceased or incapacitated Class Member — not through another person acting in a representative capacity.

### 7.4 Other Orders

The court retains exclusive jurisdiction over this action to consider all further matters arising out of or connected with the Settlement.

## CONCLUSION

The court (1) preliminarily approves the settlement and authorizes notice, (2) approves the notice plan, (3) appoints the claims administrator, (4) orders the procedures in this order (including all dates in the chart), and (5) orders the parties and the claims administrator to carry out their obligations in the settlement agreement. This disposes of ECF No. 145.

IT IS SO ORDERED.

Dated: October 26, 2017

_____
LAUREL BEELER
United States Magistrate Judge