EVANS LAW FIRM, INC.
Ingrid M. Evans (CA State Bar No. 179094)
3053 Fillmore Street, #236
San Francisco, CA 94123
Tel: (415)-441-8669
Tel: (888) 503-8267

FRANCIS & MAILMAN, P.C.
James A. Francis (*Pro Hac Vice*)
John Soumilas (*Pro Hac Vice*)
David A. Searles (*Pro Hac Vice*)
Lauren KW Brennan (*Pro Hac Vice*)
Land Title Building, Suite 1902
100 South Broad Street
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000

Attorneys for Plaintiff
AMIT PATEL and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMIT PATEL, on behalf of himself and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>TRANS UNION, LLC in its own name and t/a TRANS UNION RENTAL SCREENING SOLUTIONS, INC. and TRANSUNION BACKGROUND DATA SOLUTIONS, and TRANS UNION RENTAL SCREENING SOLUTIONS, INC. in its own name and t/a TRANSUNION BACKGROUND DATA SOLUTIONS,<br><br>          Defendants. | Case No. 3:14-cv-00522-LB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FOR APPROVAL OF *CY PRES* RECIPIENT AND FOR SERVICE AWARD TO CLASS REPRESENTATIVE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 8, 2018<br>Time: 9:30 a.m.<br>Place: Courtroom C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to the Court's Order Approving Preliminary Settlement (ECF No. 153), on March 8, 2018 at 9:30 a.m., in Courtroom C, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Laurel Beeler, Plaintiff Amit Patel will and hereby does move for an Order finally approving the proposed settlement as fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23; approving the Consumer Federation of California, Credit Builders Alliance and Jump$tart as *cy pres* recipients; granting Plaintiff a service award; finding that the Notice was the best practicable notice under the circumstances and satisfied all constitutional and other requirements; dismissing the action pursuant to the terms and conditions of the Settlement Agreement; retaining jurisdiction over the enforcement and implementation of the Settlement Agreement; and, issuing related orders as necessary in connection with the class action settlement proposed for final approval in this matter.

This Motion is made pursuant to Fed. R. Civ. P. 23 and is based upon this Notice of Motion and Motion; the accompanying Memorandum of Law; the accompanying Declaration of Frank Barkan of RSM US LLP in Connection With Notice Dissemination; the Settlement Agreement; and, such evidence and argument as the Court may consider at the hearing on this Motion.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

DATE: February 22, 2018     By:     */s/ James A. Francis*
James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Lauren KW Brennan (*pro hac vice*)
Land Title Bldg., Suite 1902
100 South Broad Street
Philadelphia, PA 19110
Telephone: (215) 735-8600
Facsimile: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Ingrid M. Evans (CA State Bar No. 179094)
**EVANS LAW FIRM, INC.**
3053 Fillmore Street, #236
San Francisco, CA 94123
Ingrid@evanslaw.com
Tel: (415)-441-8669
Tel: (888) 503-8267

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

I.      INTRODUCTION .......................................................................................... 1

II.     THE LITIGATION AND SETTLEMENT NEGOTIATIONS ........................ 2

        A.      Discovery Proceedings ....................................................................... 2

        B.      Motion Practice And Class Certification ............................................ 2

        C.      Notice Of The Litigation Sent To The Class ...................................... 3

        D.      Mediation and Documentation of Settlement ..................................... 4

III.    THE TERMS OF SETTLEMENT ................................................................. 5

        A.      The Class And Subclass ...................................................................... 5

        B.      The Consideration Provided To The Class Under The Agreement ..... 5

                1.      Automatic Payment Pool ......................................................... 6

                2.      Claims Made Pool ................................................................... 6

                3.      Service Award ......................................................................... 7

                4.      Attorneys' Fees and Expenses ................................................. 9

                5.      *Cy Pres* Recipients ................................................................ 9

                6.      Release .................................................................................... 9

IV.     ARGUMENT ............................................................................................... 10

        A.      Legal Standard ................................................................................. 10

        B.      Class Certification ............................................................................ 11

                1.      Rule 23(c) Requirements ....................................................... 11

                        a)      Notice ......................................................................... 11

                        b)      CAFA Compliance ..................................................... 11

        C.      Fairness, Adequacy and Reasonableness .......................................... 12

                1.      Strength of Plaintiff's Case ................................................... 12

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

|   |   |   |
|---|---|---|
| 2. | Risk, Expense, Complexity and Likely Duration of Further Litigation | 13 |
| 3. | Risk of Maintaining Class Action Status Throughout Trial | 13 |
| 4. | Amount Offered in Settlement | 14 |
| 5. | Extent of Discovery Completed and Stage of Proceeding | 15 |
| 6. | Experience and Views of Counsel | 15 |
| 7. | Presence of Governmental Participant | 16 |
| 8. | Reaction of Class Members | 16 |
| V. | CONCLUSION | 17 |

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Inter-Con Sec. Sys. Inc.*,
   2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ....................................................16

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ....................................................................10

*Barel v. Bank of America*,
   255 F.R.D. 393 (E.D. Pa. 2009)......................................................................8

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
   2014 WL 4403524 (E.D. Va. Sept. 5, 2014) .............................................8, 13

*Bogosian v. Gulf Oil Corp.*,
   621 F. Supp. 27 (E.D. Pa. 1985) ....................................................................8

*Chavez v. Lumber Liquidators, Inc.*,
   2015 WL 2174168 (N.D. Cal. May 8, 2015).............................................. 10-11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ......................................................................12

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)................................................................................14

*In re Dun & Bradstreet Credit Services Customer Litigation*,
   130 F.R.D. 366 (S.D. Ohio 1990)....................................................................8

*Flores v. Express Services, Inc.*,
   2017 WL 1177098 (E.D. Pa. March 29, 2017)..........................................8, 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................................10

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ....................................................................8

*In re High-Tech Employee Antitrust Litig.*,
   2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ................................................10

*Jaffe v. Morgan Stanley & Co., Inc.*,
   2008 WL 346417 (N.D. Cal. 2008) ..............................................................15

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Johnson v. General Mills, Inc.*,
   2013 WL 3213832 (C.D. Cal. June 17, 2013) ............................................7, 16

*Jones v. Halstead Mgt. Co.*,
   No. 14-3125, ECF 155 (S.D.N.Y. May 5, 2016) ...........................................8

*King v. General Information Services, Inc.*,
   C.A. No. 10-6850, ECF 125 (E.D. Pa. Nov. 14, 2014) ................................15

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .....................................................................14

*Marcum v. Dolgencorp, Inc.*,
   No. 12-cv-108, ECF 78 (E.D. Va. Oct. 16, 2014) .......................................15

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) .....................................................................13

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) .......................................................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................11, 15, 17

*Nelson v. Bennett*,
   662 F. Supp. 1324 (E.D. Cal. 1987) ............................................................15

*In re Netflix Privacy Litig.*,
   2012 WL 2598819 (N.D. Cal. July 5, 2012) ................................................16

*Officers for Justice v. Civil Service Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ................................................................13, 14

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) .................................................................10

*Opperman v. Kong Technologies, Inc.*,
   No. 13-453-JST, ECF 922 (N.D. Cal. Jan. 16, 2018) ....................................7

*Patel v. Trans Union, LLC*,
   308 F.R.D. 292 (N.D. Cal. 2015) ........................................................1, 3, 11

*Patrick v. Interstate Mgmt. Co, LLC*,
   No. 15-cv-1252, ECF 49 (M.D. Fla. Apr. 29, 2016) ...................................15

*Robins v. Spokeo, Inc.*,
   742 F.3d 409 (9th Cir. 2014) .........................................................................3

*Robinson v. General Info. Servs., Inc.*,
    No. 2:11-cv-07782-PBT, ECF 55 (E.D. Pa. Nov. 4, 2014) ...............................................8, 15

*Rodriguez v. Calvin Klein Inc, et. al*,
    No. 1:15-cv-2590-JSR, ECF 33 (S.D.N.Y. Mar. 21, 2016) .....................................................8

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................................................7, 15, 16

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007) ...............................................................................................................13

*Sapp v. Experian Info. Solutions*,
    2013 WL 2130956 (E.D. Pa. May 15, 2013) ........................................................................8

*Simons v. Aegis Commc'ns Group*,
    No. 2:14-cv-04012, ECF 29 (W.D. Mo. Oct. 15, 2014) ......................................................15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .....................................................................................................3, 12

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................................................10

*Stokes v. RealPage, Inc.*,
    C.A. No. 15-1520, ECF 63 (E.D. Pa. Feb. 6, 2018) .............................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................................14

*In re Warner Comms. Secs. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ......................................................................................16

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ..................................................................................................16

## <u>S</u>TATUTES

Class Action Fairness Act, 28 U.S.C. § 1715 ......................................................11, 12, 16

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x .....................1, 8, 9, 13, 14, 15

    15 U.S.C. § 1681e(b) .........................................................................................................2, 10

    15 U.S.C. § 1681g .................................................................................................................3

    15 U.S.C. § 1681i.................................................................................................................10

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## FEDERAL RULES

Fed. R. Civ. P. 23 ...............................................................................................11, 14

    Fed. R. Civ. P. 23(a) .....................................................................................11, 14

    Fed. R. Civ. P. 23(b) .....................................................................................11, 14

    Fed. R. Civ. P. 23(c) ...........................................................................................11

    Fed. R. Civ. P. 23(e) ...........................................................................................10

    Fed. R. Civ. P. 23(e)(2) ................................................................................10, 12

    Fed. R. Civ. P. 23(f) .............................................................................................3

## CONSTITUTIONAL PROVISIONS

Article III ..............................................................................................................12

# MEMORANDUM OF LAW

Plaintiff Amit Patel respectfully submits this Memorandum in support of his Motion for Final Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

Plaintiff Amit Patel brought this consumer protection class action against Defendants TransUnion LLC and TransUnion Rental Screening Solutions, Inc. ("Defendants" or "Trans Union") under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA").  As set forth in Mr. Patel's Amended Class Action Complaint (ECF 41) and this Court's Class Certification Order certifying a Class and Subclass (ECF 96), reported at *Patel v. Trans Union, LLC*, 308 F.R.D. 292 (N.D. Cal. 2015), this is a consumer class action brought on behalf of consumers who were the subjects of Trans Union SmartMove reports.

The Class Certification Order certified Class Claims asserted under the FCRA in Counts I and VI (misnumbered as "Count V") of the Amended Complaint arising out of the allegations set forth therein.  The other Counts in the Amended Complaint have been dismissed as to Plaintiff, and without prejudice to the class membership.  (ECF 142).

Plaintiff now seeks final approval of the class action settlement that was preliminarily approved by this Court on October 26, 2017 (ECF 153).  The Court preliminarily found the terms of the proposed settlement to be "fair, adequate and reasonable."  ECF 153 at 8.  Nothing that has occurred in the interim has disturbed that conclusion, and the overwhelmingly positive reaction of the Class Members confirms that the Settlement is "fair, adequate and reasonable."

Now, following notice to the Class of the settlement terms, and the opportunity to object, Plaintiff seeks this Court's final approval of the settlement, including disbursement of the settlement funds to the Class Members, approval of a service award to the Plaintiff and approval of *cy pres* organizations to receive any residual, undistributed funds.  By separate motion, Plaintiff

---

[1]    Unless otherwise defined herein, all capitalized terms herein have the same meaning as in the Settlement Agreement.

seeks approval of an award of fees and costs to Class Counsel.

## II.     THE LITIGATION AND SETTLEMENT NEGOTIATIONS

On February 4, 2014, Plaintiff filed a Complaint in the United States District Court for the Northern District of California challenging Defendants' alleged practice of misattributing "Alert List" records on reports delivered to potential landlords, and subsequently compounding such conduct by failing to disclose to the affected rental applicants the mis-attributed records that Trans Union was reporting about them. Plaintiff filed an Amended Complaint on October 14, 2014. (ECF 41). Defendants filed Answers on October 31, 2014. (ECF 45, 46).

### A.     Discovery Proceedings

The Parties conducted substantial discovery in this matter, beginning with a first phase of discovery limited to class action issues. During this initial phase, Plaintiff exchanged discovery requests and responses with each Defendant independently, and the Parties exchanged and reviewed several thousand pages of documents. The Parties conducted seven depositions, including the deposition of the Plaintiff, five of Defendants' corporate representatives, and a third party.

Following the Court's Class Certification Order, the Parties continued to a second phase of discovery targeted to the merits of the claims of Plaintiff and the Class. The Parties exchanged an additional set of interrogatories and document requests, and Plaintiff responded to requests for admissions served by each Defendant. The Parties conducted three additional depositions of the corporate representatives of Defendants, plus a deposition of an additional third party.

### B.     Motion Practice And Class Certification

In February 2015, Plaintiff filed his Motion for Class Certification. (ECF 56-4, 60). Plaintiff sought class certification for two classes and two claims: (1) a national class challenging the Defendants' willful failure to maintain and follow reasonable procedures to ensure the maximum possible accuracy of their information, in violation of 15 U.S.C. § 1681e(b), and (2) a national subclass challenging the Defendants' willful failure to provide consumers with all

information in their files, in violation of 15 U.S.C. § 1681g.  *Id.*  Defendants opposed class certification.  (ECF 70).

On June 26, 2015, the Court entered the Class Certification Order (ECF 96), reported at 308 F.R.D. 292 (N.D. Cal. 2015).  The Court certified a Class and a Subclass, defined as follows:

> All natural persons residing in the United States who, from February 2012 until December 2013, were the subjects of Trans Union Rental Screening Solutions SmartMove reports containing at least one item of "Alert List" information (the "Class").

> All natural persons residing in the United States who, from February 2012 until December 2013, were the subjects of Trans Union Rental Screening Solutions SmartMove reports containing at least one item of "Alert List" information who requested a file disclosure from, and were sent a disclosure by, Trans Union, LLC (the "Subclass").

308 F.R.D. at 310.

Defendants sought permission to appeal the Class Certification Order under Rule 23(f), which Plaintiff opposed.  Subsequently, the Court stayed the Litigation pending a decision by the Supreme Court in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2014).  After the *Spokeo* decision issued, remanding the case to the Ninth Circuit, *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Parties resumed the Litigation and a Revised Scheduling Order was entered on June 27, 2016 (ECF 123).  Thereafter, Defendants moved to decertify the Class, Plaintiff opposed the motion, and the Court denied decertification on October 21, 2016.  (ECF 132).

## C.  Notice Of The Litigation Sent To The Class

Following the denial of decertification, notice of the Litigation was provided to the certified Class and Subclass.  The notice was approved by the Court.  (ECF 133, 134).

On October 28, 2016, Defendants' Counsel provided Class Counsel with a list of names and addresses for 10,505 Class Members, and 2,193 Subclass Members.  Class Counsel provided this list to RSM US LLP ("RSM"), a third-party class action administrator.  *See* Exhibit A to Motion for Preliminary Approval (ECF 145-2), Declaration of RSM US LLP in Connection with

Notice Dissemination ("RSM Decl."). RSM determined that there were 10,501 Class Members. *Id*. at ¶ 3.

RSM mailed the approved notice to the Class Members, via first class mail. *Id*. at ¶ 4. Sixteen (16) notices were returned with a forwarding address provided by the USPS. *Id*. at ¶ 5(b). RSM re-mailed those notices to the updated addresses. *Id*.

Two thousand and twenty-seven (2,027) such notices were returned without a forwarding address. *Id*. at ¶ 5(a). RSM obtained new addresses for and then re-mailed one thousand eight hundred and forty-nine (1,849) of those notices. *Id*. Two hundred and forty-three (243) of those re-mailed notices were returned as undeliverable. *Id*. RSM calculates that the notice plan resulted in notice reaching ninety-six percent (96%) of the Class membership. *Id*. at ¶ 6.

In response to the notice, the Settlement Administrator received a total of two (2) requests by Class Members to be excluded from the Class. Those persons are identified on Exhibit B to the Preliminary Approval Motion (ECF 145-3), filed under seal.

**D.** **Mediation and Documentation of Settlement**

The Parties participated in a private mediation session with the Hon. James Larson of JAMS in San Francisco on January 28, 2015. The mediation did not result in a settlement.

After additional discovery and motion practice, the Parties continued their settlement discussions, and conducted in-person settlement discussions in Philadelphia on November 9, 2016. As a result of this meeting, the Parties agreed to proceed to mediation with the Hon. Diane Welsh of JAMS, in Philadelphia on May 15, 2017. The mediation resulted in a term sheet reflecting an agreement to settle the Litigation. The Parties notified the Court of the agreement in principle on June 12, 2017. ECF 139.

Documenting a formal settlement agreement and collateral documents took additional time to prepare and exchange drafts, and a series of telephone negotiations concerning the details of the terms and conditions of the agreement. The Parties eventually finalized their agreement as of September 15, 2017, resulting in the settlement document attached to the Motion for Preliminary

Approval as Appendix I (ECF 145-1).

On October 26, 2017, the Court preliminarily approved the proposed settlement without modification. ECF 153. By that Preliminary Approval Order, the Court explained the terms of the Settlement in detail (ECF 153 at 4-6) and noted that "the settlement has no obvious deficiencies." ECF 153 at 8.

## III.    THE TERMS OF SETTLEMENT

Plaintiff and the Defendants arrived at the settlement in this case after extensive briefing on class certification, a stay of the case, Defendants' unsuccessful attempt to decertify the certified Class and Subclass, written discovery and eleven depositions which included Defendants' witnesses, Mr. Patel and two third parties.

As noted above, the Parties also conducted arm's-length, contentious negotiations (with the participation of Defendants' insurance carrier) that included two separate full day mediation sessions with a professional mediator and a series of additional sessions involving counsel for the Parties. After several months of discussion following the mediation and numerous exchanges of draft documents, the Parties reached a class-wide settlement.

### A.    The Class And Subclass

Under the Agreement, the Parties agreed to resolve the claims of the certified Class and Subclass of natural persons as defined in the Class Certification Order, described above. The Court also appointed Mr. Patel as the Class Representative and his counsel as Class Counsel. (ECF 96).

### B.    The Consideration Provided To The Class Under The Agreement

The Agreement requires Defendants to establish a Settlement Fund of $8,000,000.00 to settle the Class Claims. An initial deposit of $27,000.00 was paid to the Settlement Administrator after entry of the Preliminary Approval Order, and the balance of $7,973,000.00 will be paid to the Settlement Administrator following Final Approval. Agreement, § 4(a)(ii). From the Settlement Fund, the Parties have agreed that payments will be made as described

below.  The allocation of compensation to Class Members is consistent with discovery produced by Defendants in the course of the Litigation.

### 1.    **Automatic Payment Pool**

The sum of $4,202,000.00 has been allocated for the Automatic Payment Pool.  Class Members will each be automatically sent a check for $400.00. *Id*., § 10(a).  There is no requirement that a Class Member submit a claim in order to be mailed the Automatic Payment.  The Automatic Payment Checks must be cashed within sixty days from the date of mailing.  To the extent an Automatic Payment Check is not presented for payment within that time period, it shall become null and void, and, under the Settlement, the proceeds of such checks shall waterfall into the Claims Made Pool. *Id*.

### 2.    **Claims Made Pool**

In addition to receiving an Automatic Payment, a Class Member also has the option of submitting a claim to be paid a *pro rata* share of the Claims Made Pool. *Id*., §§ 8, 10(b).  The Parties calculate that after the estimated costs of notice and settlement administration, and assuming the Court approves the agreed upon amounts for the Service Award to Mr. Patel and the Fee Petition (see below), the Claims Made Pool will be in excess of $1,000,000.00.  As mentioned above, the amount of funds in the Claims Made Pool is likely to increase as a result of uncashed Automatic Payments which waterfall into the Pool.  The exact amount of each Claimant's individual *pro rata* share will depend on how many Claimants submit Claim Forms As of the filing of this Motion, the Settlement Administrator had received 874 timely submitted Claim Forms from Class Members.  *See* simultaneously filed Declaration of Frank Barkan of RSM US LLP in Connection with Notice Dissemination ("Barkan Dec."), ¶ 11.  If this number were to remain unchanged, this would result in the Claimants receiving a minimum of approximately $1,100, subject to increase from any addition to the Claims Made Pool as a result

of uncashed Automatic Payments. *See* Settlement Agreement, § 10.[2]

### 3. <u>Service Award</u>

The Settlement Agreement provides for a service award for the Class Representative for his efforts in prosecuting this case including retaining and consulting with counsel, assisting in discovery, sitting for a deposition and keeping abreast of the litigation. Had it not been for Mr. Patel's efforts and perseverance, his fellow housing applicants would not have learned of Defendants' challenged background checking practices and would not have benefitted from the monetary compensation generated by Mr. Patel's suit. Defendants have agreed not to oppose the application for the award, which is sought in the amount of $10,000, also subject to the approval of the Court. *Id.*, § 9(b).

Such service awards "are fairly typical in class action cases, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk …, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted); *see also Johnson v. General Mills, Inc.*, 10-00061, 2013 WL 3213832, at *7 (C.D. Cal. June 17, 2013) (quoting same and awarding incentive payments to class representatives in false-advertising-of-

---

[2] The Settlement Administrator also received approximately 3,192 Claim Forms submitted by individuals whose names and addresses did not appear on the Class List. Barkan Dec., ¶ 11(b). A small number (122) of those forms may have been submitted by individuals who may be Class Members. Those individuals have been asked to provide additional information and, if they establish that they are Class Members, will receive checks from the Claims Made Pool. *Id.* The additional work required to analyze these improper claims from non-class members resulted in an additional $30,000 in costs incurred by RSM that was not in the original estimate. *Id.* As such, the accompanying proposed Final Approval Order provides that RSM be reimbursed for those unexpected costs and confirms that any legitimate claims are paid out of the Claims Made Pool.

Unfortunately, as described in the Barkan Dec., technology intended to provide notice to true class members has also provided an opportunity for wrongdoers to submit claims in cases where they are not class members. A recent example is a case from this District, *Opperman v. Kong Technologies, Inc.*, No. 13-453-JST (N.D. Cal. Jan. 16, 2018). In *Opperman*, the settlement administrator identified 5,924 potentially fraudulent claims. *Opperman* ECF 911. Based on that evidence, Judge Tigar referred the case to the U.S. Attorney for investigation of the fraudulent claims. *Opperman* ECF 922.

food case); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011). Further, service awards are common where the class representatives' personal claims alone would never justify the time and effort required to prosecute complex litigation on behalf of a class. *See, e.g., Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) ($20,000 awarded to two class representatives); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 376 (S.D. Ohio 1990) ($215,000.00 awarded out of a settlement fund of $18 million).

In this case, the service award sought is appropriate for several reasons. Mr. Patel assisted Class Counsel in gathering facts necessary for the prosecution of the case and in responding to discovery, including document requests, interrogatories and sitting for a deposition. He was always ready and willing to work on behalf of the Class, met with counsel, was kept abreast of the proceedings, and assisted counsel in making important decisions. Plaintiff assumed certain risks in filing litigation against a well-funded corporate defendant, such as being held responsible for Defendants' costs in the event that they prevailed. He also agreed to a full, comprehensive release of his claims. Settlement Agreement, §§ 11(b), (c). The amount requested here is well within the range of awards made in similar FCRA class cases.[3]

Under such circumstances, this Court should approve payment of the reasonable class

---

[3]     *See Stokes v. RealPage, Inc.*, C.A. No. 15-1520 (E.D. Pa. Feb. 6, 2018) (ECF 63) (awarding $10,000 to each of two FCRA class representatives); *Flores v. Express Services, Inc.*, 2017 WL 1177098 (E.D. Pa. March 29, 2017) (approving $10,000 award to FCRA class representative); *Jones v. Halstead Mgt. Co.*, No. 14-3125 (S.D.N.Y. May 5, 2016) (ECF 155) (approving $10,000 to FCRA class representative); *Rodriguez v. Calvin Klein Inc, et. al*, No. 1:15-cv-2590-JSR (S.D.N.Y. Mar. 21, 2016) (ECF 33) (final approval order awarding $15,000 to class representative in recognition of service in FCRA case); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc*., No. 3:11-CV-754, 2014 WL 4403524, *4 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) (awarding $5,000 to each of several class representatives); *Giddiens*, C.A. No. 12-2624 (ECF 55, at ¶ I) (awarding class representative $10,000); *Robinson v. General Info. Servs., Inc.*, No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) (ECF 55) (final approval order awarding $10,000 to class representative); *Sapp v. Experian Info. Solutions,* 2013 WL 2130956, *3 (E.D. Pa. May 15, 2013) (awarding $15,000 to class representative in FCRA settlement); *Barel v. Bank of America,* 255 F.R.D. 393, 402-403 (E.D. Pa. 2009) ($10,000).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

representative award as permitted by the Settlement Agreement.

### 4. **Attorneys' Fees and Expenses**

The Settlement Agreement also provides that Class Counsel shall request approval of reasonable attorneys' fees and costs not in excess of one-third of the Settlement Fund, subject to the approval of the Court, to which request Defendants will not object. Settlement Agreement, § 9(a). The motion seeking that approval is filed simultaneously herewith.

### 5. *Cy Pres* **Recipients**

The Agreement provides that there will be no reversion of any funds to the Defendants under any circumstances. *Id.*, § 4(b)(vii). To the extent money remains in the Settlement Fund following payment of checks from the Claims Made Pool, the Parties have agreed that up to $10,000.00 may be paid to the Settlement Administrator to defray reasonable Notice and Administration Expenses actually incurred by the Settlement Administrator. *Id.*, § 4(b)(vi). Any remaining amounts shall be distributed to the *cy pres* recipients proposed by the Parties: Consumer Federation of California (https://consumercal.org/), Credit Builders Alliance (https://www.creditbuildersalliance.org/) and the Jump$tart Coalition for Personal Financial Literacy (http://www.jumpstart.org/). *Id.*, § 4(c).

A *cy pres* distribution in a class action settlement should (1) address the objectives of the underlying statutes; (2) target the plaintiff class; or (3) provide reasonable certainty that any member will be benefited. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039-40 (9th Cir. 2011). The principles of the *cy pres* doctrine strongly support the proposed *cy pres* recipients as the appropriate beneficiaries of any residue of the Settlement Fund.

### 6. **Release**

The scope of the release to which each Class Member would be bound is narrowly limited to claims that were asserted or could have been asserted arising out of or related to the facts or claims alleged in the Litigation relating to the Class Claims. *Id.*, § 11(a). As such, Class Members would still be entitled to assert claims for violations of other sections of the FCRA,

such as section 1681i (right to dispute completeness or accuracy of information in a consumer's file) or section 1681e(b) (duty to assure maximum possible accuracy).  Plaintiff, on behalf of himself only, will provide Defendants with a general release.  *Id*., § 11(b).

## IV.  ARGUMENT

### A.  Legal Standard

The Ninth Circuit maintains "a strong judicial policy" that favors class action settlements. *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

Nevertheless, Rule 23(e) requires courts, only after first holding a hearing, to approve any class action settlement.  "[S]ettlement class actions present unique due process concerns for absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  As such, "the district court has a fiduciary duty to look after the interests of those absent class members." *Allen*, 787 F.3d at 1223 (collecting cases).  Specifically, courts must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026; *see* Fed. R. Civ. P. 23(e)(2).  In particular, where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Approval of a settlement is a two-step process.  Courts first "determine [ ] whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re High-Tech Employee Antitrust Litig.*, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014).  "At the fairness hearing, … after notice is given to putative class members, the court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014) (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)).  After the fairness hearing, the court determines whether the parties should be allowed to settle the class action pursuant to the agreed-upon terms. *Chavez v. Lumber*

*Liquidators, Inc.*, 2015 WL 2174168, at *3 (N.D. Cal. May 8, 2015) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

**B.     Class Certification**

In the Class Certification Order, the Court carefully reviewed the Rule 23 requirements and certified the Class and Subclass. *See Patel v. TransUnion, LLC*, 308 F.R.D. 292 (N.D. Cal. 2015). Consequently, there is no reason to revisit the analysis of Rule 23(a) and (b).

**1.     Rule 23(c) Requirements**

**a)     Notice**

As set forth in section II(C), *supra*, notice of the litigation was sent to the Class after the entry of the Class Certification Order.

Following the Court's Order of Preliminary Approval, the Settlement Administrator, RSM US LLP, sent notice of the Settlement to the Class. *See* Barkan Dec., filed herewith. RSM oversaw the mailing of the Court-approved Notice and Claim Form to the 10,501 Class Members on November 22, 2017 and established a settlement website. Barkan Dec., ¶ 4-6. As of February 21, 2018, 1,706 Notice packages were returned as undeliverable. Notice was re-mailed to 1,163 Class Members for whom RSM was able to locate addresses from a search service, and another 11 that had been returned with a forwarding address. *Id.*, ¶ 8. In summary, out of the 10,501 mailed Notice packages, only 650 were returned as undeliverable (with no forwarding address available), RSM calculated that 93.81% of the Class was reached with notice. *Id.*, ¶ 9.

As of the close of business February 21, 2018, as noted above, RSM had received 874 Claim Forms from individuals whose names and addresses appear on the initial mailing list of Class Members that had been provided by Defendants. *Id.*, ¶ 11(a).

**b)     CAFA Compliance**

The Class Action Fairness Act ("CAFA") provides that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate federal official, a notice of the proposed settlement[.]"

28 U.S.C. § 1715(b).  RSM mailed the CAFA notice and Defendants filed proof thereof on October 2, 2017 (ECF 152).

## C.    Fairness, Adequacy and Reasonableness

Courts assessing the fairness of a settlement under Rule 23(e)(2) generally weigh the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  *See also* ECF 153 at 6-7.

### 1.    Strength of Plaintiff's Case

Plaintiff believes his case was strong but also recognizes a number of obstacles in the way of achieving a successful result.  While achieving certification of the Class and Subclass, Plaintiff would now face the task of proving liability on the merits, which would require further risky litigation and expert work.  Even if Plaintiff successfully passed the liability hurdle, a battle would likely ensue concerning whether Plaintiff and other Class Members have sustained damages and, if so, the proper measure of those damages, requiring yet more expert testimony and entailing further risks to Plaintiff's and the Class's chances of recovery.  These battles would be fought not only at trial but also on appeal.

Another relevant factor was the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  Throughout the Litigation, Defendants asserted that *Spokeo* rulings on Article III standing and the requirement of injury in fact, 136 S. Ct. at 1547, required dismissal of Plaintiff's claims.   The effect of the decision, if any, was the subject of heated debate throughout the case. *See, e.g.,* Defendants' Motion to Stay (ECF 103); Motion to De-Certify Classes (ECF 124).  While Plaintiff was confident that *Spokeo* did nothing to undermine his case, it nonetheless presented another risk.

In addition, Defendants have asserted other defenses, such as that Plaintiff would be unable to prove willfulness, and therefore be unable to obtain statutory or punitive damages. While Plaintiff was confident he could defeat those arguments, they certainly also presented risks.

### 2. Risk, Expense, Complexity and Likely Duration of Further Litigation

As mentioned above, there were risks in proceeding with the litigation. As the Court acknowledged in its Preliminary Approval Order, "[t]he risks are real and likely would be fought through trial and appeal." ECF 153 at 7.

In the absence of settlement, the Parties would incur very significant expenses in preparing for and participating in a trial of this class action. It is likely that such a trial would last for a week or more, involve many witnesses, including perhaps experts hired by both sides. Included in such a trial would be the necessity to delve into the complexity of willfulness issues. For Plaintiff to obtain statutory or punitive damages for the Class, he would have to prove that Defendants' conduct was willful. *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007) (willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). The time and expense to try those issues would not be inconsiderable. There is a significant advantage of receiving a benefit now as opposed to later. *See Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

### 3. Risk of Maintaining Class Action Status Throughout Trial

Class certification always poses a risk and often involves prolonged and expensive battle between parties in connection with certification, merits and damages issues. While the Court issued its carefully considered Class Certification Order, Defendants obviously disagreed, as evidenced by their attempt to have the Court of Appeals review the Order. No. 15-80120 (9th Cir. July 10, 2015) (Dkt. Entry 1-1). Although Plaintiff believes he would have been successful in

maintaining class certification, in the absence of settlement, Defendants likely would have continued to press their argument that certification here is not appropriate under Rule 23. For example, Defendants would have continued to argue that the Class is not ascertainable, and that Plaintiff has otherwise failed to meet his burden under Rule 23(a) and (b). *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (requiring "rigorous analysis" to ensure requirements of "Rule 23(a) have been satisfied"); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (same). Overall, the Parties as well as this Court (ECF 153 at 7) have acknowledged these risks.

### 4. <u>Amount Offered in Settlement</u>

In assessing the consideration obtained by the class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to class members at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

That is not the case here. Defendants have agreed to pay a substantial settlement of $8,000,000 in cash for the benefit of the Class. In FCRA class actions such as this one, the monetary relief available may be severely limited in the absence of a finding of willful conduct on the part of a defendant. If the Court were to accept all of Defendants' arguments regarding damages then, even assuming a liability verdict in Plaintiff's favor, the Class might have received nothing.

Instead, the automatic payment of $400.00 to each Class Member, with the right to submit a claim for an additional payment from the Claims Made Pool, is at the higher end of the range of

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

payments made to consumers in other FCRA class settlements.[4]  As the Court acknowledged in its

Preliminary Approval Order, "[t]he benefits are substantial."  ECF 153 at 7.

### 5. Extent of Discovery Completed and Stage of Proceeding

"A settlement following sufficient discovery and genuine arms-length negotiation is

presumed fair." *Nat'l Rural Telecomms,* 221 F.R.D. at 528.  The court can look to whether a

plaintiff had "a good grasp on the merits of [his] case before settlement talks began." *Rodriguez,*

563 F.3d at 967; *see also Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *9 (N.D. Cal.

2008) (finding approval appropriate where parties had engaged in extensive discovery prior to

settlement).  "[P]ractical considerations obviously require that the evaluation be made on the basis

of information available at the time of settlement." *Nelson v. Bennett,* 662 F. Supp. 1324, 1327 n.

4 (E.D. Cal. 1987) (quoting the California Supreme Court in *Tech-Bilt, Inc. v. Woodward-Clyde*

*& Associates,* 38 Cal. 3d 488, 499, 213 Cal. Rptr. 256, 698 P. 2d 159 (1985)).

Here, Plaintiff and his counsel conducted significant investigation of the facts and law

during the prosecution of this action.  *See* tasks described in section II(A), *supra.*  Those efforts

were critical in assessing the risks of litigation, and informed the basis for settlement.

### 6. Experience and Views of Counsel

In evaluating the propriety of a proposed settlement, courts often look to the negotiating

process by which the settlement was reached to determine whether that process was genuinely

_____

[4]    *See, e.g., Flores,* 2017 WL 1177098 (approval of FCRA settlement with $50 automatic
payment  to 32,000 member class, with option to seek additional payment from damages fund);
*Patrick v. Interstate Mgmt. Co, LLC*, No. 15-cv-1252 (M.D. Fla. Apr. 29, 2016) (ECF 49)
(approving settlement of FCRA disclosure claim where class members received $9 each); *King v.
General Information Services, Inc*., C.A. No. 10-6850 (E.D. Pa. Nov. 14, 2014) (ECF 125)
(challenging practice of reporting outdated adverse non-conviction records; class members paid
$49.68 each); *Robinson v. General Information Services, Inc*., C.A. No. 11-7782 (E.D. Pa. Nov. 4,
2014) (ECF 55) (challenging practice of failing to notify consumers that consumer reporting
agency was reporting to prospective employers; class members paid $49 each); *Marcum v.
Dolgencorp, Inc.*, No. 12-cv-108 (E.D. Va. Oct. 16, 2014) (ECF 78) (approving settlement that
pays inadequate disclosure class members $53 each); *Simons v. Aegis Commc'ns Group*, No. 2:14-
cv-04012 (W.D. Mo. Oct. 15, 2014) (ECF 29) (approving improper disclosure settlement with
payment of $35 per class member).

adversarial. *E.g.*, *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). Thus, the fairness of a settlement depends in part on "whether the settlement was achieved through 'arms' length negotiations' by counsel who have 'the experience and ability … necessary to effective representation of the class's interests.'" *In re Warner Comms. Secs. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985). Typically, there is at least an initial presumption that a proposed settlement is fair and reasonable when it was the product of arms'-length negotiations between counsel. *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]").

The settlement here is the result of extensive litigation as well as such arms' length negotiations by counsel experienced in consumer and other complex class action litigation, as set forth in Class Counsels' background and experience previously presented to the Court. *See* ECF 60, p. 18 of 28; ECF 56-32; ECF 56-33. Moreover, the case was resolved through several mediation sessions, first unsuccessfully with Judge Larson in January 2015, and eventually successfully with Judge Welsh in 2017. There was no collusion in conjunction with the settlement, and the involvement of an experienced mediator confirms the settlement was not collusive. *See, e.g.*, *Johnson v. General Mills*, 2013 WL 3213832, at *3; *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2012 WL 2598819, at *1, 2 (N.D. Cal. July 5, 2012).

### 7.  **Presence of Governmental Participant**

Here, no governmental agency engaged in previous litigation against the Defendants that might have benefitted the Class. This factor favors approval of the settlement. *Rodriguez*, 563 F.3d at 966. Moreover, the appropriate federal and state authorities have been notified of the proposed settlement pursuant to CAFA, 28 U.S.C. § 1715, and to date no governmental entity has raised objections or concerns.

### 8.  **Reaction of Class Members**

The reaction of the Class supports approval of the settlement. Out of the 10,501 Class

Members that were reached, only two opted out, and only one objected (and later withdrew his objection).[5]  It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.  *Nat'l Rural Telecomms.*, 221 F.R.D. at 528-29.

Overall, the implementation of the Settlement following preliminary approval occurred as expected.  Nor has any reason to delay or deny final approval been identified.  This confirms the Court's prior conclusion that "the settlement has no obvious deficiencies."  ECF 153 at 8.

## V.     CONCLUSION

For the reasons set forth above, Plaintiff Amit Patel respectfully requests that this Court grant final approval to the Parties' proposed Settlement as fair, reasonable and adequate, approve a service award to the Class Representative, approve the proposed *cy pres* recipients and enter final judgment in this case.

Respectfully submitted,

DATE:  February 22, 2018                 **FRANCIS & MAILMAN, P.C.**

By:      */s/ James A. Francis*
         James A. Francis (*pro hac vice*)
         John Soumilas (*pro hac vice*)
         David A. Searles (*pro hac vice*)
         Lauren KW Brennan (*pro hac vice*)
         Land Title Bldg., Suite 1902
         100 South Broad Street
         Philadelphia, PA  19110
         Telephone:  (215) 735-8600
         Facsimile:  (215) 940-8000
         jfrancis@consumerlawfirm.com
         jsoumilas@consumerlawfirm.com
         dsearles@consumerlawfirm.com
         lbrennan@consumerlawfirm.com

---

[5]      The sole objection was filed December 1, 2017 (ECF 155).  The objection criticized the Settlement as "easy," but did not cite to any specific provision of the Settlement that the objector considered unfair or unreasonable.  The objector later withdrew his objection (ECF 156).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Ingrid M. Evans (CA State Bar No. 179094)
**EVANS LAW FIRM, INC.**
3053 Fillmore Street, #236
San Francisco, CA 94123
Ingrid@evanslaw.com
Tel: (415) 441-8669
Tel: (888) 503-8267

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this day, a true and correct copy of the foregoing has been filed

3

electronically and is available for viewing and downloading from the federal courts' Electronic

4

Cases Filing ("ECF") system.  A copy of the foregoing has been served on counsel of record via

5

the ECF system.

6

7

DATE:   February 22, 2018               _/s/ James A. Francis_____
                                         James A. Francis (*pro hac vice*)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25