# Exhibit C



2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
Tel (215) 299-2000  Fax (215) 299-2150
www.foxrothschild.com

ABRAHAM C. REICH
Direct No:  215-299-2090
Email: AReich@FoxRothschild.com

December 12, 2017

James A. Francis, Esquire
Francis & Mailman, PC
100 S. Broad Street
19th Floor
Philadelphia, PA 19110

Re:   **Billing Rates at Francis & Mailman, P.C.**

Dear Mr. Francis:

I.   **INTRODUCTION**

By letter dated February 27, 2017, I gave you my expert opinion with regard to the proposed range of reasonable hourly billing rates for the lawyers at Francis & Mailman, P.C. ("Francis & Mailman") and, specifically, whether such rates were consistent with the Pennsylvania Rules of Professional Conduct and the Philadelphia market for legal services.  I now submit this opinion in conjunction with the opinion of my partner, Jeffrey D. Polsky, in support of Francis & Mailman's proposed reasonable rates in the San Francisco, California legal market.

II.   **QUALIFICATIONS**

I am a partner at the law firm of Fox Rothschild LLP ("Fox Rothschild" or "the Firm").  I have been at Fox Rothschild since 1974 as a member of its Litigation Department.  From 2005 through 2017, I served as Co-Chair of Fox Rothschild and now hold the title of Chair Emeritus.  For five years prior to becoming Co-Chair, I was the Managing Partner of the Philadelphia office.  I have been a member of the management group at the Firm since 1985.  I was the founding member of Fox Rothschild's Professional Responsibility Committee (in 1988) and served as Chair of the Committee for eight years.

A Pennsylvania Limited Liability Partnership

California    Colorado    Connecticut    Delaware    District of Columbia    Florida
Illinois    Minnesota    Nevada    New Jersey    New York    Pennsylvania    Texas



James A. Francis, Esquire
December 12, 2017
Page 2

As part of the management of my Firm over the past thirty-two years, I have participated in the review and analysis of the hourly rates that we charge for our lawyers. This review is completed at least once a year and involves a review and analysis of the markets in which we participate to ensure that we set competitive rates and that the rates we charge are consistent with the Rules of Professional Conduct (or its predecessor, the Code of Professional Responsibility).

The process of setting hourly billable rates encompasses a number of steps. Initially, the Firm obtains public data of national, regional and local law firms' hourly billing rates. In addition, Firm management often speaks with consultants with expertise in this area to ensure that the Firm's rates are within the range of its competitors in the market. The management team, which comprises leaders from each of our offices, discuss the hourly billing rates in each of our markets. We try to establish rates that are fair and competitive.

I have had an active litigation practice for more than forty years. The majority of my practice involves commercial litigation matters, in which I represent plaintiffs and defendants. I have also been active for many years representing lawyers and law firms in a myriad of issues involving professional responsibility and legal ethics, including the defense of legal malpractice claims. I have also been involved in dealing with fee disputes between and among lawyers and their clients. In 1998, I was selected to be a Fellow of the American College of Trial Lawyers.

In Fox Rothschild's litigation practice, we have handled matters in the area of consumer law. Our Firm has represented large financial institutions, which have been sued for violations of the Fair Credit Reporting Act ("FCRA"), the Consumer Credit Protection Act ("CCPA") and the Fair Debt Collection Protections Act ("FDCPA"). We have defended some of the parties sued by clients of Francis & Mailman.

For over thirty years, I have been active in the area of legal ethics and the interpretation and application of the Pennsylvania Rules of Professional Conduct (and its predecessor, the Code of Professional Responsibility). I have been a member of the Philadelphia Bar Association's Professional Responsibility Committee and Professional Guidance Committee. In 1983 and 1984, I served as Chair of the Professional Responsibility Committee. In 1987 and 1988, I served as Chair of the Professional Guidance Committee. I have also served as a member of a Hearing Committee for the Disciplinary Board of the Supreme Court of Pennsylvania for six years. For a portion of that time, I chaired the Hearing Committee. From approximately 1988 to 1995, I have also served as one of two appointed lawyers (non-judicial) liaisons to the Judicial Ethics Committee of the Pennsylvania Conference of State Trial Judges.

I have, for many years, served on the Legal Ethics and Professional Responsibility Committee of the Pennsylvania Bar Association. For the past twelve years, I have taught legal ethics and professional responsibility at the University of Pennsylvania Law School.



James A. Francis, Esquire
December 12, 2017
Page 3

In 1995, I served as Chancellor of the Philadelphia Bar Association. I was a member of the House of Delegates of the American Bar Association for twenty years and the Pennsylvania Bar Association for over twenty years. I participated in the debates surrounding the enactment of the Model Rules of Professional Conduct and many of the Amendments.

I have spoken and written on issues of trial practice and legal ethics over many years in many different forums. I have counseled hundreds of lawyers on issues of legal ethics and professional responsibility.

### III. DISCUSSION

#### A. The Firm's Accomplishments

Francis & Mailman is one of the leading law firms representing clients in consumer-related litigation in both individual and class action suits. When the firm was founded in 1998, few firms were actively litigating cases under the CCPA. In addition, Francis & Mailman was one of the first firms to have a significant legal practice concentrating in federal fair credit reporting, fair debt collection and consumer class actions. Over the past 19 years, Francis & Mailman has become a well-known and highly regarded firm in the area of consumer law. The firm and its clients have been the subject of numerous published legal decisions, many of which have been groundbreaking in the area of consumer law.

Most recently, in *Ramirez v. Trans Union*, C.A. No. 12-cv-000632-JSC (N.D. Cal.), the firm tried a class action case against Trans Union (one of the country's "big three" credit reporting agencies) and obtained a $60 million verdict on behalf of a class of 8,000 people who were mislabeled as Office of Foreign Assets Control (OFAC) criminals by Trans Union on credit reports in a claim brought under the FCRA. The decision in *Ramirez* is a record FCRA verdict and a rare class verdict.

In *Beach v. American Heritage Federal Credit Union*, C.A. No. 15-5942 (E.D. Pa. July 26, 2017), the firm obtained a verdict exceeding $1 million against American Heritage Federal Credit Union ("AHFCU") for AHFCU having generated a cash advance from consumers' accounts to pay fees, interest, charges or attorney fees. The court in *Beach* noted the firm's experience in consumer class actions and found that "[t]he settlement agreement in this matter resulted from Class Counsel's vigorous advocacy and contested, protracted settlement negotiations."

In *Flores v. Express Services, Inc., et al.*, C.A. No. 14-3298 (E.D. Pa. March 30, 2017), the firm brought an action against Express Services, Inc. and Express Personnel – Philadelphia for violations of the FCRA and obtained a $5.75 million settlement on behalf of the class. The court found that the skill and efficiency of the firm was apparent, having "achieved a significantly



James A. Francis, Esquire
December 12, 2017
Page 4

favorable result on behalf of plaintiffs at the expense of the inherent risk that accompanies undertaking a contingency fee action" and also noted that Francis & Mailman has extensive experience in consumer class action litigation.

In *White v. Experian Info. Solutions*, C.A. No. 05-01070, 2014 WL 1716154 (C.D. Cal. May 1, 2014), the court found Francis &Mailman "FCRA specialists" and appointed the firm and its team as interim class counsel over objections from competing groups (including Boise Schiller) because the Francis & Mailman team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation"; affirmed sub nom *Radcliffe v. Experian Information Solutions, Inc*., 818 F.3d 537 (9th Cir. 2016).

In *Henderson v. Acxiom Risk Mitigation, Inc*., C.A. No. 12-589 (E.D. Va. Aug. 7, 2015), Francis & Mailman was appointed class counsel in a national FCRA class action and obtained a $20.8 million settlement against one of the largest data sellers and background screening companies in the world.  And, in *Thomas v. BackgroundChecks.com*, C.A. No. 13-029 (E.D. Va. Aug. 11, 2015), Francis & Mailman was appointed class counsel in an FCRA national class action and obtained $18 million against another one of the largest background screening companies in the world, in addition to significant injunctive and remedial relief.

In addition to obtaining substantial and favorable verdicts, the Firm has also made significant contributions to public policy.  The firm set legal precedent and clarified legal issues, including: (i) the proper standard for the investigation of a consumer dispute by credit reporting agencies and furnishers of information; (ii) the standard for proving willfulness under the FCRA; (iii) the accuracy standard for credit reports; (iv) the types of information permitted to be included in credit reports; (iv) the types of cognizable actual damages available in an FCRA action; (v) the consumer's burden of proof in an FCRA action; and, (vi) proper jury charges.  Francis & Mailman has also been counsel to some of the largest FCRA settlements in history, such as *Hireright*, ($29 million) and *White/Hernandez* ($45 million).

Through Francis & Mailman's jury verdicts and class settlements, the Firm has established the "market value" for class and individual cases under the FCRA and the FDCPA.  I have been informed that there were no reported plaintiff FCRA verdicts prior to the Firm's victories.  Moreover, Francis & Mailman has helped establish the standards for obtaining class certification in an FCRA and an FDCPA case.  To date, the firm has been certified as counsel in 54 cases throughout the country.

The attorneys at Francis & Mailman are very active and well known in the legal community.  They regularly share their expertise at local and national conferences.  By way of example, attorneys from the firm spoke at the Fair Credit Reporting Act Conference, National Association of Consumer Advocates, in Las Vegas, NV in May 2015.  They also served on the faculty for the



James A. Francis, Esquire
December 12, 2017
Page 5

21st Annual Consumer Financial Services Litigation Institute (which was CLE accredited) on "Fair Credit Reporting and Debt Collection Litigation," which took place in March and April 2016 in New York City and Chicago. They also presented at the 2014, 2015, and 2016 Consumer Rights Litigation Conference, National Consumer Law Center.

One of the founding partners, James Francis, was featured on LAW360 in October 2014 as one of a small handful of American plaintiff's lawyers to be selected from a national pool and featured as part of the "Titans of the Plaintiff's Bar" series. *See* https://www.law360.com/articles/583536/titan-of-the-plaintiffs-bar-jim-francis. Mr. Francis currently serves on the Board of Directors of the National Association of Consumer Advocates. Further, attorneys at the firm have published articles and appeared on television programs discussing developments in consumer law.

### B.      Methodology for Determining Rates

**There are two complimentary approaches for determining reasonable hourly rates.**

The **first approach** is to consider the rates for comparably skilled practitioners in the relevant market. To determine rates under this approach, I refer to and incorporate the opinion of my partner, Jeffrey D. Polsky, which is submitted herewith.

A **second approach** to determine a reasonable hourly rate would look at the relevant factors set forth in Rule 1.5(a) of the Rules of Professional Conduct.

While the Model Rules of Professional Conduct do not specifically address the reasonableness of a specific hourly rate, they do address the considerations for assessing "the reasonableness of a fee" in Rule 1.5. In my opinion, some of those considerations can provide a useful analytical checklist when trying to determine a reasonable hourly rate.

The factors set forth in Rule 1.5(a) are:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3. The fee customarily charged in the locality for similar legal services;

4. The amount involved and the results obtained;

5. The time limitations imposed by the client or by the circumstances;



James A. Francis, Esquire
December 12, 2017
Page 6

> 6. The nature and length of the professional relationship with the client;
>
> 7. The experience, reputation and ability of the lawyer or lawyers performing the services; and
>
> 8. Whether the fee is fixed or contingent.

Factor Number 3 ["the fee customarily charged in the locality for similar legal services"] is separately addressed in Mr. Polsky's letter. This is a comparative review of rates charged by other lawyers in the market.

Factor Number 8 ["whether the fee is contingent on fixed"] suggests that higher rates may be justified when fees are contingent. Francis & Mailman handles its cases on a contingent fee basis. As a result, the firm bears all the risk of the cost of litigation until resolution. In some instances, the firm may not receive payment of its fees for several years. Further, most of the defendants are large companies with substantial financial resources and lawyers equipped to defend the actions. Many of the lawsuits address novel areas of law. In order to obtain favorable outcomes, the attorneys at Francis & Mailman spend numerous hours conducting research, conducting discovery, and crafting innovative legal arguments to overcome attempts to have their clients' cases dismissed before trial. The firm's investment of time and resources prevent it from litigating numerous matters at the same time.

Factor Number 1 ["The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly"], also supports the notion that a higher rate would be justified for lawyers at Francis & Mailman, who have distinguished themselves in their area of expertise. Factor Number 7 ["The experience, reputation and ability of the lawyer or lawyers performing the services"], likewise provides another reason to justify the higher rates recommended for the lawyers at Francis & Mailman.

Finally, Factor Number 4 ["The amount involved and the results obtained"] certainly supports a higher rate for the lawyers of Francis & Mailman, who regularly obtain record-setting verdicts on behalf of consumers, including in the *Ramirez* case.

### IV. <u>CONCLUSION</u>

In accordance with the foregoing analysis, and based upon my review of Mr. Polsky's opinion regarding the prevailing market hourly billing rates, it is my opinion, within a reasonable degree of professional certainty, that the following range of hourly billing rates at Francis & Mailman is consistent with the hourly billing rates charged in the San Francisco market and within the considerations outlined in the Rules of Professional Conduct. The level of hourly billing rates



James A. Francis, Esquire
December 12, 2017
Page 7

within the range will depend on the complexity of the matter, the duration of the dispute and the result obtained.

| Attorney/Paralegal | Range of hourly billing rates |
|---|---|
| James Francis | $725-775 |
| Mark D. Mailman | $725-775 |
| David A. Searles | $875-925 |
| John Soumilas | $675-725 |
| Geoffrey H. Baskerville | $675-725 |
| Greg Gorski | $400-450 |
| Erin A. Novak | $375-425 |
| Lauren KW Brennan | $350-400 |
| Alexis Lehman | $325-375 |
| Jordan Sartell | $300-350 |
| Joseph Gentilcore | $250-300 |
| Experienced paralegal | $225 |
| Inexperienced paralegal | $200 |

## V.     SUPPLEMENTAL INFORMATION

Attached as Exhibit A is a copy of my curriculum vitae.  It contains is a list of all publications that I have authored in the past 10 years.  I have not testified as an expert at trial or by depositions in the past 4 years.  My current hourly rate is $780.  I have been assisted in preparing this opinion by my partner, Beth Weisser, whose hourly rate is $500.  We spent approximately $4,000.00 in preparing this opinion.

If I am provided with additional information, I reserve the right to supplement or amend my opinion.

Very truly yours,

Abraham C. Reich

ACR:cah

# Exhibit A

# ABRAHAM C. REICH

2000 Market Street | 20th Floor | Philadelphia, PA  19103-3291
(215) 299-2090 | Fax:  (215) 299-2150 | Email:  areich@foxrothschild.com

## PROFESSIONAL ASSOCIATION

### FOX ROTHSCHILD LLP

- Chair Emeritus, Fox Rothschild LLP (April 2017 to Present)
- Co-Chairman, Fox Rothschild LLP (April 2005 to March, 2017)
- Partner, Litigation Department
- Former Managing Partner, Philadelphia Office (2000- April 2005)
- Professional Responsibility Committee (1998-2008), (Founding Member and Former Chair)

Abe has been with the firm since 1974.  His area of practice involves all aspects of business litigation and counseling, including representation of lawyers and law firms in defense of legal malpractice claims and other disputes.  Abe has taught professional responsibility at Penn Law School since 2007.  He also provides expert testimony in connection with legal ethics and professional responsibility and business litigation matters.

### EDUCATION

The Beasley School of Law at Temple University, J.D. 1974, Editor, Law Review

University of Connecticut, B.A., magna cum laude; 1971,
 Elected to  Phi Beta Kappa and Phi Kappa Phi

### ADMISSIONS

- Pennsylvania
- United States Supreme Court
- United States Courts of Appeal for the Third, Fourth, Seventh and Eighth Circuits

## PROFESSIONAL ASSOCIATIONS

- Fellow, American College of Trial Lawyers
- American Bar Association, House of Delegates (1995-2015)
- American Bar Foundation
- American Association for Justice (formerly American Trial Lawyers Association)
- Association of Professional Responsibility Lawyers
- Pennsylvania Bar Association, House of Delegates; First Statewide Bench Bar Conference, Chair, 1986; Legal Ethics and Professional Responsibility Committee; Co-Chair, Task Force to Revise the Code of Judicial Conduct, 2012- 2013
- Pennsylvania Association for Justice (Formerly Pennsylvania Trial Lawyers Association) Board of Governors, 1985-1990; Commercial Litigation Committee, Former Co-Chair
- The Beasley School of Law at Temple University, Board of Overseers

## PHILADELPHIA BAR ASSOCIATION ACTIVITY

- Chancellor, 1995
- Board of Governors, 1987-1999; Chair, 1989
- Commission on Judicial Selection and Retention, 1986-1989, 1993-1994; Vice-Chair, 1989; Chair, Investigative Division, 1988-1989
- Professional Guidance Committee; Chair, 1987-1988
- Professional Responsibility Committee; Chair, 1983-1984
- Annual Conference Committee (Bench Bar Conference), Vice-Chair, 1984; Chair, 1985
- Trustee, Philadelphia Bar Foundation, 1993-1996
- Trustee, Philadelphia Bar Education Center, 1993-1999
- Trustee, International Human Rights Fund, 1993-1995
- Federal Courts Committee
- State Civil Judicial Procedures Committee
- Editorial Board, the Philadelphia Lawyer, 1975-1987 (Former Publication of Business Law Section)
- Counsel to Philadelphia Bar Association in Restifo v. Philadelphia Bar Association, 1991-1994

## OTHER ORGANIZATIONAL ACTIVITY

- Lecturer in Law, University of Pennsylvania School of Law, "Ethics and Advocacy – From the Boardroom to the Courtroom"; Spring Semesters 2007-2017.
- The Continuing Legal Education Board of the Supreme Court Of Pennsylvania, Board Member 2005 – 2010; Chair, 2011
- The Disciplinary Board of the Supreme Court of Pennsylvania, Former Hearing Committee Member and Chair, 1985-1991
- Pennsylvania Committee of State Trial Judges, Lawyer Liaison, Judicial Ethics Committee, 1988-1995
- Campaign for Qualified Judges, Former Trustee
- Pennsylvania Law Journal-Reporter, Former Member of Corporate Law Advisory Board
- The Legal Intelligencer, Former Editorial Board Member, 1992
- Lawyers Club of Philadelphia, Former Member of Board of Directors
- United States Court of Appeals for the Third Circuit, Task Force on Equal Treatment in the Courts, 1996
- Lawyer's Advisory Committee, United States Court of Appeals for the Third Circuit, Chair, 1998
- Jenkins Law Library, Board Member and President (1995-2015)
- Pennsylvanians for Modern Courts, Advisory Board Member
- Brandeis Law Society Foundation, Director

**PUBLICATIONS**

- Contributing Author, *Successful Partnering Between Inside and Outside Counsel – Ethics*, Chapter 31 (Thomson Reuters 2009-2016)
- Contributing Author, *Pennsylvania Ethics Handbook*, Pennsylvania Bar Institute, 2008, 2011, 2014
- Co-Author, *Attorney Self-Governance, Federal Oversight Clash in Dodd-Frank Act*, The Legal Intelligencer, November 15, 2010
- Co-Author: *The Lawyer's Duty of Disclosure: Ethics and Sarbanes-Oxley – The New Conundrum for Patent Lawyers*, Akron Intell. Prop. 43-63, 2007
- *"The IP Lawyer's Duty of Disclosure Under Sarbanes-Oxley,"* The Legal Intelligencer – May 8, 2006
- Co-Author: *When Competition Crosses The Line, Mid-Atlantic Executive Legal Advisor*, Winter 2005
- Co-Author: *What Do You Do When Confronted With Client Fraud, Business Law Today*, Vol. 12, Number 1, September/October 2002
- Co-Author: *Screening Mechanisms: A Broader Application? Balancing Economic Realities and Ethical Obligations*, Vol. 72, Temple Law Review 1023, 2000
- *Lawyer Controlled MDPs: Critical to the Future Economic Vitality Of Our Profession*, American Bar Association Section of Environment Energy and Resources, Ethics Committee Newsletter, Vol. 1 No. 1, November 2000
- Co-Author: *The Private Securities Litigation Reform Act of 1995; An Overview, The Barrister*, Vol. XXVII, No. 2, Fall, 1996
- Co-Editor: *Commercial Litigation Case Notes, Pennsylvania Trial Lawyers Association*, 1985-1995
- Co-Author: *Time Out – A Time for Reflection on Statutes of Limitation in Federal Securities Laws and RICO Claims, The Barrister*, Vol. XVIII, No. 1, Spring 1987
- Co-Author: *Getting Even, Litigation*, Vol. 13, No. 2, Winter, 1987
- Book Review, *Newberg on Class Actions, (Second), The Barrister*, Vol. XVL No. 4, Winter 1985/1986
- Co-Author: *Mandamus Used as Pretrial Appeal, Pennsylvania Law Journal Reporter*, Vol. VI, No. 10, March 1983
- Co-Author: *Derivative Action Requirements Eased, Pennsylvania Law Journal Reporter*,
- Vol. V., No. 46, December 1982
- Co-Author: *Non-Parties May Recover Discovery Costs, Pennsylvania Law Journal Reporter,* Vol. V, No. 39, October 1982
- *Action in Restraint of Trade: What Constitutes Conspiracy?, Pennsylvania Law Journal Reporter*, Vol. IV, No. 15, April 1981

- *A Shot in the Arm for Dissenting Shareholders, The Philadelphia Lawyer*, Vol. 17, No. 2, March 1980
- *The New Judicial Code as Part of Pennsylvania's Consolidated Statutes, The Philadelphia Lawyer*, Vol. 16, No. 2, June 1979
- *Equal Fault Revisited; The Philadelphia Lawyer*, Vol. 14, No 4, December 1977
- Co-Author: *Individual Issues in Securities Class Actions, The Philadelphia Lawyer*, Vol. 13, No. 3, October 1976
- *United States v. Byrum: The Troubled Application of Section 2036, Vol. 46, Temple Law Quarterly* 498, 1973

## LECTURES

- **American Association for Justice** (Formerly American Trial Lawyers Association): Commercial Litigation, 1986
- **American Bar Association**: Section of Business Law, *Client Fraud: To Disclose or Not to Disclose*, October 2002 (National Teleconference)
- **American Conference Institute Forum On Reduced Legal Costs**, The Ethics of Alternative Fee Arrangements and Cost Reduction Strategies, Nov. 2009
- **American Intellectual Property Law Association**: *Advanced Computer & Electronic Patent Practice Seminar, The Lawyers Duty of Disclosure – Ethics and Sarbanes-Oxley – The New Conundrum for Patent Attorneys*, Boston, June 2006
- **Berks County Bar Association**: Legal Ethics, 1993
- **Delaware Valley Corporate Counsel Association**: Legal Ethics, 1987
- **Dickinson Law School**: Intellectual Property Forum, Trade Secrets, 1983 and 1985
- **DuPont Chemical CLE Series**, Ethics and the Federal Circuit, September 2007
- **Federal Bar Association**: Federal Class Actions, 1986
- **Frankford's Rotary Club**: Legal Ethics, 1987
- **Intellectual Property Owners Association**: Annual Meeting "Sarbanes-Oxley and the Duty of Disclosure for IP Lawyers", Seattle, September 2005
- **Lorman Seminars, Ethics and Social Media**, 2013, 2014, 2015, 2016
- **Minnesota Institute of Legal Education**: Securities/Commercial Litigation, 1986;
- **Antitrust/Unfair Competition,** 1987; Securities/Commercial Litigation, 1989
- **Montgomery County Trial Lawyers Association**: Legal Ethics/Fee Disputes, 1991

5

- **Pennsylvania Association for Justice** (Formerly Pennsylvania Trial Lawyers Association)
    - Broker/Dealer Litigation, 1984;
    - Commercial Litigation Update, 1986-1989;
    - Antitrust/Health Care, 1989;
    - Legal Ethics/Professional Responsibility, 1992/1993 (Multiple Seminars);
    - Winning with Expert Testimony, April 2002;
    - "What's It Worth" Seminar (Ethics Component), November 2002; March 2010
- **Pennsylvania Bar Association: Young Lawyers Section**, The Transition from Associate to Partner, 1986
- **Pennsylvania Bar Institute**
    - Directors and Officers Insurance, 1987;
    - Legal Ethics/Professional Responsibility, 1988;
    - Legal Ethics/Professional Responsibility – Bucknell University, 1992;
    - Legal Ethics/Professional Responsibility, 1993;
    - Alternative Dispute Resolution, 1994;
    - Legal Ethics/Professional Responsibility, 1997;
    - Alternative Dispute Resolution, 1997;
    - Recent Developments in Federal Practice/Federal Evidence, 1998;
    - The Ethics of Law Firm Governance, 2000;
    - Intellectual Property Issues for Business Lawyers, April 2002;
    - Accounting Litigation After Enron, WorldCom. (Ethics Component), November 2002;
    - Attorney Fees, June 2003;
    - My First Federal Court Trial, October 2004;
    - Tortious Interference in Business/Professional Relationships, August 2005;
    - Ethical Considerations in Litigating Employment Discrimination Cases, December 2005;
    - Best Practices in Pretrial Litigation in Federal Courts, 2012, 2013, 2014; 2015, 2016
    - Annual Labor Law Update (Ethics Component) 2014

- **Philadelphia Bar Association**
    - Bench Bar Conference, Commercial Litigation, 1979
    - Commercial Litigation, 1982
    - Professional Responsibility, 1983
    - Federal Bench Bar Conference
    - Client Confidentiality/Duty of Disclosure, 1985
    - Professional Responsibility Committee, May 2004; September 2004 (New Rules of of Professional Conduct)
    - Federal Bench Bar Conference "The Rocket Docket", 2005
- **Philadelphia Bar Education Center**
    - Legal Ethics/Solicitation, October 1992;
    - Legal Ethics/Pro Bono Representation, November 1992; November 1993
    - "Client Conflicts: Charting Safe Courses After Maritrans", April 1993;
    - Legal Ethics: "Attorney/Accountant Ethical Clashes in the 90's: How to Bridge the Gap", January 1994;
    - Ethics of Pro Bono, 1992, 1994, 1996
- **Philadelphia Business Journal**, Roundtable: The Future of Law Firms (May 22-28, 2009)
- **Pennsylvania Law Journal-Reporter**: Antitrust Law Seminar, 1981 – Course Planner
- **Philadelphia Trial Lawyers Association**
    - Commercial Litigation, 1985
    - Legal Ethics/Fee Disputes, 1991
    - Legal Ethics/Trial Practice, 1997
    - Legal Ethics and Attorney Malpractice, 2016
- **Philadelphia Intellectual Property Law Association**
    - Legal Ethics and Professional Responsibility for the Intellectual Property Lawyer, 1996;
    - ADR in IP Cases, 2005
    - IP Lawyers and the Duty of Disclosure under the Sarbanes-Oxley Act, May 2006
    - Ethics, May 2010.
- **Smithsonian Institution/American Association of Museums**: Legal Ethics: Who is the Client? – The Museum Board, Officers, Employee, or the "Public" - 2007
- **Temple University School of Law**: Legal Ethics, 1995; Rome Program, Visiting Professor, International Civil Litigation, June 2004; Legal Ethics and Social Media 2013; 2014

7

- **Third Circuit Judicial Conference**: Litigating Federal Civil Cases in the 21st Century: Changes and Challenges (Course Planner) 1997; Ethics in a Digital Age (Panelist), 2011
- **Thomson Reuters**: *Conflicts and Ethical Duties to Clients and the Public: Are They Reconcilable?*, Speaker, June 25, 2013
- **University of Akron School of Law**, Eighth Annual Richard C. Sughrue Symposium: The New Conundrum for Patent Lawyers: Sarbanes-Oxley, March 2006
- **University of Pennsylvania School of Law**: Social Media and Ethics, 2012
- **Villanova School of Law**: Professional Responsibility, 1983

## AWARDS

- Named as one of the Leading Litigation Attorneys in Pennsylvania, Chambers USA (2008 through 2016)
- Philadelphia Magazine Super Lawyers, "The Top Ten", 2006; 2011-2016 "The Top 100", 2006-2016
- Most Admired CEO Award by *Philadelphia Business Journal*, 2014
- Brandeis Society Community Achievement Award (Ben Levy), 2014
- Pennsylvania Bar Association, Award for Service as Co-Chair of Task Force on Code of Judicial Conduct, 2014
- Learned Hand Award, American Jewish Committee, 2012
- Temple University, Founder's Day Award, 2009
- Wachovia Fidelity Award, 2007
- Fund for Religious Liberty Award, American Jewish Congress, 1997
- Outstanding Leadership Award by Pennsylvania Legal Services, 1996
- IOLTA Leadership Award, 1993
- Equal Justice Award by Community Legal Services, 1991

## PERSONAL

Born:      April 17, 1949, Waterbury, Connecticut

Married:   Sherri Engelman Reich

Children:  Two sons, Spencer and Alexander; Daughter-in-Law,
           Elena Steiger Reich (lawyer),
           Two grandchildren, Gabriella and Levi

8