United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AMIT PATEL,<br><br>    Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC, et al.,<br><br>    Defendants. | Case No. 14-cv-00522-LB<br><br>**ORDER APPROVING CLASS-ACTION SETTLEMENT AND AWARDING FEES AND COSTS**<br><br>Re: ECF Nos. 159 and 160 |

## INTRODUCTION

This is a consumer suit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and counterpart California law.[1] Named plaintiff Amit Patel alleges that the defendants (operating as a single "consumer reporting agency") disseminated a consumer-information report that wrongly described him as a terrorist, and that ascribed to him a criminal record that he did not have.[2] For this alleged conduct, Mr. Patel brings a claim under § 1681e(b) of FCRA.[3] Mr. Patel

---

[1] *See generally* Am. Compl. – ECF No. 41. Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations refer to the ECF-generated page number at the top of documents.

[2] *Id.*

[3] "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure [*sic*] maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e(b).

ORDER – No. 14-cv-00522-LB

also alleges that, when he asked the defendants to provide him with the file that they maintained on him, they failed to send him his complete file, in particular, a background check that flagged him as a potential terrorist. This, Mr. Patel claims, violated § 1681g of FCRA.[4]

The court certified two national classes for the two class claims asserted under the FCRA: an "accuracy" class for the § 1681e(b) claim, and a "disclosure" subclass for the § 1681g claim. *See Patel v. TransUnion, LLC*, 308 F.R.D. 292, 310 (N.D. Cal. 2015). The two class claims are Counts I and VI (misnumbered "Count V") in the Amended Complaint. The court stayed the case until the Supreme Court decided *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and it denied defendants' subsequent motion to decertify the class.[5]

The parties then settled their case. The settlement covers Counts I and VI (misnumbered as "Count V") in the Amended Complaint.[6] The parties stipulated to the dismissal with prejudice of Mr. Patel's individual claims against the defendants: Counts II, III, IV, V (misnumbered as second Count IV), and VII (misnumbered as count VI).[7] The court previously granted the plaintiff's motion for preliminary approval of the proposed class-action settlement.[8] The plaintiff then moved for final approval of the settlement.[9] The court held a fairness hearing on March 8, 2018. The court finds the settlement fair, adequate, and reasonable and approves the final settlement, including fees, costs, and a service award to Mr. Patel.

---

[4] "Every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request . . . ." § 1681g(a)(1).

[5] Order – ECF No. 116; Order – ECF No. 132.

[6] Stipulated Dismissal – ECF No. 142; Settlement Agreement – ECF No. 145-1.

[7] Stipulated Dismissal – ECF No. 142.

[8] Order – ECF No. 153.

[9] Mot. – ECF No. 159.

## STATEMENT

### 1. Other Information About the Lawsuit to Date

In June 2015, the court certified the following class and subclass:

> All natural persons residing in the United States who, from February 2012 until December 2013, were the subjects of Trans Union Rental Screening Solutions SmartMove reports containing at least one item of "Alert List" information.

> All natural persons residing in the United States who, from February 2012 until December 2013, were the subjects of Trans Union Rental Screening Solutions SmartMove reports containing at least one item of "Alert List" information who requested a file disclosure from, and were sent a disclosure by, Trans Union, LLC.[10]

After the court denied decertification in October 2016, the court approved notice — and notice was given — to the class and subclass.[11] The defendants provided a list of names for 10,505 class members and 2,193 subclass members.[12] RSM US LLP ("RSM"), a third-party claims administrator, determined that there were 10,501 class members and provided notice via first-class mail.[13] The United States Postal Service ("USPS") returned 16 notices with a forwarding address, and RSM mailed the notices to the updated addresses.[14] The USPS returned 2,027 notices without forwarding addresses, and RSM obtained new addresses and re-mailed notices to 1,849 addresses.[15] The USPS returned 243 addresses as undeliverable.[16] RSM calculates that notice reached 96% of the class.[17] Two class members requested exclusion.[18]

The parties engaged in substantial discovery, phased to address class issues first, and then — after the court certified the classes — merits issues.[19] They conducted written discovery and

---

[10] 308 F.R.D. at 309.

[11] ECF Nos. 133, 134.

[12] Mot. – ECF No. 145 at 10.

[13] RSM Decl. – ECF No. 145-2 at 3 (¶¶ 3–4).

[14] *Id.* (¶ 5(b)).

[15] *Id.* (¶ 5(a)).

[16] *Id.*

[17] *Id.*

[18] ECF No. 145-3.

[19] Mot. – ECF No. 145 at 8–9; *see* Scheduling Order – ECF No. 123.

eleven depositions, including the defendants' witnesses, Mr. Patel, and two third parties.[20] They had two full-day JAMS mediation sessions, one in San Francisco in January 2015 and a second in Philadelphia in May 2017.[21] The second resulted in a term sheet reflecting the parties' agreement to settle the litigation.[22] In June 2017, the parties notified the court about their agreement.[23] The parties exchanged drafts and engaged in additional settlement negotiations, and ultimately, they finalized the settlement agreement.[24] The court granted the plaintiff's unopposed motion for preliminary approval.[25]

2. **Settlement Terms**

The settlement agreement resolves the claims of the certified class and subclass. In summary form, the settlement is as follows.

The defendants established a fund of $8 million, with $37,000 paid to the Settlement Administrator after the court entered its preliminary approval order and the balance of $7,973,000 to be paid 30 days after the settlement agreement's Effective Date following final approval.[26] There are two settlement pools that the plaintiff represents are consistent with class discovery: (1) the Automatic Payment Pool and (2) the Claims Made Pool.

---

[20] Mot. – ECF No. 145 at 12.

[21] *Id.* at 11, 12.

[22] *Id.*

[23] ECF No. 139.

[24] *Id.* at 11–12; Settlement Agreement – ECF No. 145-1.

[25] Mot. – ECF No. 145; Statement of Non-Opposition – ECF No. 147; Mot. – ECF No. 159 at 14; Order – ECF No. 153.

[26] Settlement Agreement §§ 1.22, 4(a)(ii). Capitalized terms in this order are defined terms in the Settlement Agreement.

ORDER – No. 14-cv-00522-LB       4

**2.1 Automatic Payment Pool**

$4,202,000 is allocated to the Automatic Payment Pool. Class members automatically receive a $400 check without submitting a claim.[27] The check must be cashed within 60 days or it is null and void, and the funds then fall into the Claims Made Pool.[28]

**2.2 Claims Made Pool**

Class members can submit a claim to be paid a *pro rata* share of the Claims Made Pool.[29] After costs of notice and administration, the parties estimate that the pool will be more than $1 million.[30]

**2.3 Service Award, Attorney's Fees and Costs, Administration Costs, and *Cy Pres* Award**

The settlement provides for a service award to Mr. Patel of $10,000.[31] The defendants do not object to the plaintiff's motion for attorney's fees and reimbursable expenses in an amount not to exceed one-third of the settlement fund.[32]

There is no reversion to the defendants. If any funds remain following payment of checks, up to $10,000 may be paid to the Settlement Administrator to defray reasonable Notice and Administration Expenses that the settlement administrator actually incurs.[33] Remaining amounts will be distributed to the *cy pres* recipients Consumer Federation of California, Credit Builders Alliance, and the Jump$tart Coalition for Personal Financial Literacy.[34]

**2.4 Release**

The settlement has a release limited to claims that were asserted or could have been asserted relating to the class claims only.[35] Mr. Patel has a general release.[36]

---

[27] *Id.* § 10(a); Mot. – ECF No. 145 at 13.

[28] Settlement Agreement § 10(a).

[29] *Id.* §§ 8, 10(b).

[30] Mot. – ECF No. 145 at 13.

[31] Settlement Agreement § 9(b).

[32] *Id.* §§ 1.24, 9(a).

[33] *Id.* § 4(b)(vi).

[34] *Id.* § 4(c).

[35] *Id.* § 11(a).

[36] *Id.* § 11(b).

**2.5 Administration**

The settlement fund will fund all costs of notice and administration. After evaluating bids, RSM was chosen as the Settlement Administrator.[37] It handled the class-notice process after class certification. (*See supra*.) The notice procedures required it to mail and re-mail the settlement notice, send out the CAFA notice, set up a settlement website and toll-free number, receive and process claims forms, handle the payments to class members, and report to the parties and the court before the final approval hearing.[38]

RSM complied with these procedures, including setting up the website.[39] As of February 21, 2018, the website has received 168 email inquiries.[40] On November 22, 2017, RMS mailed the notice and claim forms (prepopulated with the name and address of the class member and with a unique identification number) to the 10,501 Settlement Class Members, first updating the list through the National Change of Address database.[41] 1,706 packets were returned undeliverable: (1) 1,695 had no forwarding address, but RMS identified 1,163 addresses through Accurint, a LexisNexis address-search service and re-mailed the notices; 129 notices were returned undeliverable with no forwarding address; and (2) 11 packets had forwarding addresses, and RMS re-mailed them.[42] RMS thus presumes that 9,851 notices were delivered, which is 93.81% of the class.[43]

One class member objected and subsequently withdrew the objection.[44] As of February 21, 2018, RMS has received and accepted 874 Claims Forms from individuals on the initial mailing

---

[37] *Id.* § 1.43.

[38] *Id.* § 5.

[39] RSM Decl. – ECF No. 159-1 at 2–5.

[40] *Id.* at 3 (¶ 7).

[41] *Id.* at 2–3 (¶¶ 3–5).

[42] *Id.* at 3 (¶ 8).

[43] *Id.* at 4 (¶ 9).

[44] ECF Nos. 155 (Dec. 1, 2017), 156 (Dec. 14, 2017). Pursuant to Federal Rule of Civil Procedure 23(e)(5) and for good cause shown, the court approves the withdrawn objection.

list; 872 were submitted on the prepopulated forms.[45] RMS has received an additional 3,314 Claims Forms that were the unpopulated Claims Forms available on the website. 122 were submitted by persons whose names matched a name on the Class List but who provided a different address. RMS mailed letters to the 122 persons to confirm their current and prior addresses to match the information to the Class List.[46] As of March 9, 2018, the total approved claims (considering verified additional claims) is 884. The claims include the two claims filed with the court at ECF No. 147 and 158. The remaining 3,191 handwritten forms were submitted by persons who are not on the Class List. RMS declares that it is a trend for non-class members to try to receive a share of the settlement funds, and it identified several claimants who were non-class members and filed claims in an unrelated settlement that it administered recently. It rejected the 3,191 claims as fraudulent. As a result, it has incurred additional fees of $30,000 above its original estimate for costs of notice and claims administration.[47]

# ANALYSIS

1. **Jurisdiction**

    The court has jurisdiction under 28 U.S.C. § 1332(d)(2).

2. **Certification of Class**

    The court previously certified the class and subclass set forth in the Statement under Rule 23. Excluded from the class are the two individuals who submitted the requests for exclusion.

3. **Approval of Settlement**

    Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th

---

[45] *Id.* (¶ 11a).

[46] *Id.* at 4–5 (¶ 11b).

[47] *Id.* Class counsel points to another case in this district where a claims administrator identified 5,924 fraudulent claims. Mot. – ECF No. 159 at 16 n.2.

ORDER – No. 14-cv-00522-LB 7

Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that approval is appropriate.

First, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with experienced mediators and after extensive settlement discussions involving sophisticated counsel for all parties.

Second, the parties engaged in substantial fact discovery regarding liability and damages.

Third, litigation poses risk. As the plaintiff's counsel points out, establishing liability entails risk.[48] Liability is not strict and depends on a finding of negligence or willful failure to comply. 15

---
[48] Mot. – ECF No. 145 at 21.

U.S.C. §§ 1681n and 1681o. Defendants contest liability. Even if the plaintiff establishes liability, there are issues about whether the plaintiff and class members have sustained damages and how to value any damages.[49] The risks are real and likely would be fought through trial and appeal.[50] There are also the risks that attend the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

Fourth, settlement provides real cash benefits to the class. Statutory damages are between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A). Class members receive an automatic check of $400, and they can submit a claim for a *pro rata* share of the Claims Made Pool. The benefits are substantial, especially given that unless there is a finding of willful noncompliance, the plaintiff and class must establish actual damages.[51]

Fifth, the settlement has no obvious deficiencies. There is no reversion. The *cy pres* distribution accounts for and has a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011).

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

### 4. Appointment of Class Representative, Class Counsel, and Claims Administrator

The court previously certified the class and subclass, appointed Mr. Patel as class representative, and appointed his lawyers as class counsel. The court confirms its prior appointment of RMS as the claims administrator.

---

[49] *Id.*

[50] *Id.*

[51] *Id.* at 21–22 (citing and analyzing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69 (2007)).

ORDER – No. 14-cv-00522-LB         9

### 5. Class Notice

As described above, the claims administrator provided notice to the members of the class in the form that the court had approved. The notice met all legal requisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding notice.[52]

### 6. Compliance with Class Action Fairness Act

The defendants prepared and mailed (on September 25, 2017) the notice that must be served under the Class Action Fairness Act of 200, 28 U.S.C. § 1715, to the appropriate federal and state officials; the defendants filed the proof of notice on October 2, 2017.[53] The final settlement approval is more than 90 days after service as required by 28 U.S.C. § 1715.

### 7. Cy Pres Award

Any remaining amount of the net settlement fund will be split equally between the *cy pres* beneficiaries identified in the settlement agreement: Consumer Federation of California, Credit Builders Alliance, and the Jump$tart Coalition for Personal Financial Literacy. As discussed above, this distribution accounts for and has a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011).

### 8. Attorney's Fees and Costs

Class counsel asks for $2,666,666.66, or one-third of the settlement fund, for attorney's fees

---

[52] *See* Order – ECF No. 153 at 9.

[53] Notice – ECF No. 152.

ORDER – No. 14-cv-00522-LB    10

and expenses.[54]

Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fee provisions included in proposed class-action settlements must be reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of attorney's fees. *See id.* at 942–43. The Ninth Circuit has instructed district courts to review class fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, although courts diverge from the benchmark based on a variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific Enterprises*, 47 F.3d at 379 (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th

---

[54] Mot. for Fees and Costs – ECF No. 161-1 at 6..

Cir. 1990); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers. *See, e.g.*, *Staton*, 327 F.3d at 972–74; *Pokorny v. Quixtar, Inc.*, No. C-07-0201-SC, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, No. 5:11-CV-0379-EJD, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief").

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4547-VRW, 2007 WL 951821, *5–*6 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available) (quoted language from *Young*)).

If the court applies the percentage method, it then typically roughly calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980); *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 624 (1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (1970). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*.

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters);

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Based on the declarations submitted by the plaintiff's counsel establishing a lodestar amount $1,273,572.45 with an additional $90,935.56 in litigation expenses,[55] the court finds that that requested fee award is appropriate and is supported by a lodestar cross-check. The billing rates are within normal and customary ranges for timekeepers with similar qualifications and experience in the San Francisco market. The rates counsel used are appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment . . . .") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989)); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement."). Counsel also submitted a sufficient breakdown of the attorneys' billing efforts for the court to reach its conclusion about the lodestar.

The court concludes that a fee award at the requested amount is justified. *See Hanlon*, 150 F.3d at 1029. It is appropriate based on counsel's efforts and the substantial benefits to the class. It is similar to awards in other cases.[56] It is supported by the lodestar cross-check, the efficiency of the litigation, the quality of the representation, and the contingent risk.

The court also increases the amount that can be paid to RMS for its actual administration costs by $30,000.

---

[55] ECF No. 161-1 at 13.

[56] Mot. – ECF No. 160-1 at 8–10 (collecting cases).

**9. Service Award**

District courts must evaluate proposed incentive awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

Counsel described sufficiently the efforts of the named plaintiff, including consulting with counsel, assisting in discovery, and otherwise participating in the litigation.[57] The court approves the service award of $10,000.

## CONCLUSION

The court approves the class-action settlement. The two people listed in Exhibit B to the Preliminary Approval Motion have validly excluded themselves from the Class and will not be bound by the Settlement.[58] From the total settlement fund of $8 million, and pursuant to the settlement terms, the court allocates (1) $2,666,666 to attorney's fees and costs, (2) up to $57,000 for reimbursement of actual administration costs by RSM, and (3) a $10,000 service award to the named plaintiff. The court further orders the following:

---

[57] Mot. – ECF No. 159 at 17.
[58] *See* ECF No. 145-3.

ORDER – No. 14-cv-00522-LB     14

1. As allowed by Section 8(b)(ii) of the Settlement Agreement (providing that, with the Parties' agreement, the Settlement Administrator may allow untimely Claim Forms), the Settlement Administrator may allow Damages Claims submitted by any of the 122 individuals identified in Paragraph 11b of the RSM Declaration[59] (and described above) who resubmit valid Claim Forms;

2. This court dismisses the action on the merits with prejudice and without an award of costs or fees to any party (except as provided in this order).

3. Pursuant to the releases contained in Section 11 of the Agreement, the claims of the Class Representative and the Class Members are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this Final Approval Order. The Plaintiff, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the released claims against any of the Released Parties, as set forth in the Agreement.

4. Without affecting the finality of this judgment, the court hereby reserves and retains jurisdiction over the interpretation, implementation, and performance of the Settlement and this Final Approval Order.

5. All Class Members are bound by all of the terms, conditions and obligations of the Agreement, and all determinations and judgments in the Litigation concerning the Settlement. Neither the Settlement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, may be construed as an admission or concession by any party of the truth of any allegation in the Litigation or of any liability, fault or wrongdoing of any kind.

6. The court hereby enters final Judgment in this action, consistent with the terms of the Agreement, which is a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure. The court finds that no reason exists for delay in ordering final judgment pursuant to Federal Rule of Civil Procedure 54(b) and thus directs the Clerk of Court to enter the judgment forthwith. The court also directs the Clerk to close the file.

---

[59] RSM Decl. – ECF No 159-1 at 4 (¶ 11b).

This disposes of ECF Nos. 159 and 160.

**IT IS SO ORDERED.**

Dated: March 11, 2018



_____
LAUREL BEELER
United States Magistrate Judge